# EXHIBIT A
# (Part 2 of 3)

**APPENDIX A**

PROVISIONS RELATING TO NOTES

Section 1.1   <u>Definitions</u>.

    (a)    <u>Capitalized Terms</u>.

    Capitalized terms used but not defined in this Appendix A have the meanings given to them in this Indenture. The following capitalized terms have the following meanings:

    "<u>Applicable Procedures</u>" means, with respect to any transfer or transaction involving a Global Note or beneficial interest therein, the rules and procedures of the Depositary for such Global Note, Euroclear or Clearstream, in each case to the extent applicable to such transaction and as in effect from time to time.

    "<u>Clearstream</u>" means Clearstream Banking, Société Anonyme, or any successor securities clearing agency.

    "<u>Distribution Compliance Period</u>," with respect to any Note, means the period of 40 consecutive days beginning on and including the later of (a) the day on which such Note is first offered to Persons other than distributors (as defined in Regulation S) in reliance on Regulation S, notice of which day shall be promptly given by the Issuer to the Trustee, and (b) the date of issuance with respect to such Note or any predecessor of such Note.

    "<u>Euroclear</u>" means Euroclear Bank S.A./N.Y., as operator of Euroclear systems Clearance System or any successor securities clearing agency.

    "<u>IAI</u>" means an institution that is an "accredited investor" as described in Rule 501(a)(1), (2), (3) or (7) under the Securities Act and is not a QIB.

    "<u>QIB</u>" means a "qualified institutional buyer" as defined in Rule 144A.

    "<u>Regulation S</u>" means Regulation S promulgated under the Securities Act.

    "<u>Rule 144</u>" means Rule 144 promulgated under the Securities Act.

    "<u>Rule 144A</u>" means Rule 144A promulgated under the Securities Act.

    "<u>Unrestricted Global Note</u>" means any Note in global form that does not bear or is not required to bear the Restricted Notes Legend.

    "<u>U.S. Person</u>" means a "U.S. person" as defined in Regulation S.

Case 1:20-cv-02043-LJL    Document 1-3    Filed 03/06/20    Page 3 of 78

(b)    Other Definitions.

| Term: | Defined in Section: |
|---|---|
| "Agent Members" | 2.1(b) |
| "Definitive Notes Legend" | 2.2(e) |
| "ERISA Legend" | 2.2(e) |
| "Global Notes" | 2.1(a) |
| "Global Notes Legend" | 2.2(e) |
| "IAI Global Note" | 2.1(a) |
| "Regulation S Global Note" | 2.1(a) |
| "Restricted Notes Legend" | 2.2(e) |
| "Rule 144A Global Note" | 2.1(a) |

Section 2.1    Form and Dating

(a)    *Global Notes.*  Rule 144A Notes shall be issued initially in the form of one or more permanent global Notes in definitive, fully registered form, numbered RA-1 upward (collectively, the "Rule 144A Global Note") and Regulation S Notes shall be issued initially in the form of one or more global Notes, numbered RS-1 upward (collectively, the "Regulation S Global Note"), in each case without interest coupons and bearing the Global Notes Legend and Restricted Notes Legend, which shall be deposited on behalf of the purchasers of the Notes represented thereby with the Custodian, and registered in the name of the Depositary or a nominee of the Depositary, duly executed by the Issuer and authenticated by the Trustee as provided in the Indenture.  One or more global Notes in definitive, fully registered form without interest coupons and bearing the Global Notes Legend and the Restricted Notes Legend, numbered RIAI-1 upward (collectively, the "IAI Global Note") shall also be issued at the request of the Trustee, deposited with the Custodian, and registered in the name of the Depositary or a nominee of the Depositary, duly executed by the Issuer and authenticated by the Trustee as provided in this Indenture to accommodate transfers of beneficial interests in the Notes to IAIs subsequent to the initial distribution.  The Rule 144A Global Note, the IAI Global Note, the Regulation S Global Note and any Unrestricted Global Note are each referred to herein as a "Global Note" and are collectively referred to herein as "Global Notes."  Each Global Note shall represent such of the outstanding Notes as shall be specified in the "Schedule of Exchanges of Interests in the Global Note" attached thereto and each shall provide that it shall represent the aggregate principal amount of Notes from time to time endorsed thereon and that the aggregate principal amount of outstanding Notes represented thereby may from time to time be reduced or increased, as applicable, to reflect exchanges, redemptions or increases due to any PIK Payments.  Any endorsement of a Global Note to reflect the amount of any increase or decrease in the aggregate principal amount of outstanding Notes represented thereby shall be made by the Trustee or the Custodian, at the direction of the Trustee, in accordance with instructions given by the Holder thereof as required by Section 2.06 of this Indenture and Section 2.2(c) of this Appendix A.

(b)    *Book-Entry Provisions.*  This Section 2.1(c) shall apply only to a Global Note deposited with or on behalf of the Depositary.

#4834-6333-0618

The Issuer shall execute and the Trustee shall, in accordance with this Section 2.1(c) and Section 2.02 of this Appendix A and pursuant to an Authentication Order, authenticate and deliver initially one or more Global Notes that (i) shall be registered in the name of the Depositary for such Global Note or Global Notes or the nominee of such Depositary and (ii) shall be delivered by the Trustee to such Depositary or pursuant to such Depositary's instructions or held by the Trustee as Custodian.

Members of, or participants in, the Depositary ("Agent Members") shall have no rights under the Indenture with respect to any Global Note held on their behalf by the Depositary or by the Trustee as Custodian or under such Global Note, and the Depositary may be treated by the Issuer, the Trustee and any agent of the Issuer or the Trustee as the absolute owner of such Global Note for all purposes whatsoever. Notwithstanding the foregoing, nothing herein shall prevent the Issuer, the Trustee or any agent of the Issuer or the Trustee from giving effect to any written certification, proxy or other authorization furnished by the Depositary or impair, as between the Depositary and its Agent Members, the operation of customary practices of such Depositary governing the exercise of the rights of a holder of a beneficial interest in any Global Note.

(c)     *Definitive Notes.*  Except as provided in Section 2.2 or Section 2.3 of this Appendix A, owners of beneficial interests in Global Notes shall not be entitled to receive physical delivery of Definitive Notes.

Section 2.2     Transfer and Exchange.

(a)     *Transfer and Exchange of Definitive Notes for Definitive Notes.*  When Definitive Notes are presented to the Registrar with a request:

(i)     to register the transfer of such Definitive Notes; or

(ii)     to exchange such Definitive Notes for an equal principal amount of Definitive Notes of other authorized denominations,

the Registrar shall register the transfer or make the exchange as requested if its reasonable requirements for such transaction are met; *provided*, *however*, that the Definitive Notes surrendered for registration of transfer or exchange:

(1)     shall be duly endorsed or accompanied by a written instrument of transfer in form reasonably satisfactory to the Issuer and the Registrar, duly executed by the Holder thereof or his attorney duly authorized in writing; and

(2)     in the case of Transfer Restricted Notes, they are being transferred or exchanged pursuant to an effective registration statement under the Securities Act or pursuant to Section 2.2(b) of this Appendix A or otherwise in accordance with the Restricted Notes Legend, and are accompanied by a certification from the transferor in the form provided on the reverse side of the Form of Note in Exhibit A for exchange or registration of transfers and, as applicable, delivery of such legal opinions, certifications and other information as may be requested pursuant thereto.

3

#4834-6333-0618

(b)    *Restrictions on Transfer of a Definitive Note for a Beneficial Interest in a Global Note.*  A Definitive Note may not be exchanged for a beneficial interest in a Global Note except upon satisfaction of the requirements set forth below.  Upon receipt by the Trustee of a Definitive Note, duly endorsed or accompanied by a written instrument of transfer in form reasonably satisfactory to the Issuer and the Registrar, together with:

(i)    a certification from the transferor in the form provided on the reverse side of the Form of Note in Exhibit A for exchange or registration of transfers and, as applicable, delivery of such legal opinions, certifications and other information as may be requested pursuant thereto; and

(ii)    written instructions directing the Trustee to make, or to direct the Custodian to make, an adjustment on its books and records with respect to such Global Note to reflect an increase in the aggregate principal amount of the Notes represented by the Global Note, such instructions to contain information regarding the Depositary account to be credited with such increase,

the Trustee shall cancel such Definitive Note and cause, or direct the Custodian to cause, in accordance with the standing instructions and procedures existing between the Depositary and the Custodian, the aggregate principal amount of Notes represented by the Global Note to be increased by the aggregate principal amount of the Definitive Note to be exchanged and shall credit or cause to be credited to the account of the Person specified in such instructions a beneficial interest in the Global Note equal to the principal amount of the Definitive Note so canceled.  If the applicable Global Note is not then outstanding, the Issuer shall issue and the Trustee shall authenticate, upon an Authentication Order, a new applicable Global Note in the appropriate principal amount.

(c)    *Transfer and Exchange of Global Notes.*

(i)    The transfer and exchange of Global Notes or beneficial interests therein shall be effected through the Depositary, in accordance with the Indenture (including applicable restrictions on transfer set forth in Section 2.2(d) of this Appendix A, if any) and the procedures of the Depositary therefor.  A transferor of a beneficial interest in a Global Note shall deliver to the Registrar a written order given in accordance with the Depositary's procedures containing information regarding the participant account of the Depositary to be credited with a beneficial interest in such Global Note, or another Global Note and such account shall be credited in accordance with such order with a beneficial interest in the applicable Global Note and the account of the Person making the transfer shall be debited by an amount equal to the beneficial interest in the Global Note being transferred.

(ii)    If the proposed transfer is a transfer of a beneficial interest in one Global Note to a beneficial interest in another Global Note, the Registrar shall reflect on its books and records the date and an increase in the principal amount of the Global Note to which such interest is being transferred in an amount equal to the principal amount of the interest to be so transferred, and the Registrar shall reflect on its books and records the date and a corresponding decrease in the principal amount of the Global Note from which such interest is being transferred.

4

#4834-6333-0618

(iii)      Notwithstanding any other provisions of this Appendix A (other than the provisions set forth in Section 2.3 of this Appendix A), a Global Note may not be transferred except as a whole and not in part if the transfer is by the Depositary to a nominee of the Depositary or by a nominee of the Depositary to the Depositary or another nominee of the Depositary or by the Depositary or any such nominee to a successor Depositary or a nominee of such successor Depositary.

(d)      *Restrictions on Transfer of Global Notes; Voluntary Exchange of Interests in Transfer Restricted Global Notes for Interests in Unrestricted Global Notes.*

(i)      Transfers by an owner of a beneficial interest in a Rule 144A Global Note or an IAI Global Note to a transferee who takes delivery of such interest through another Transfer Restricted Global Note shall be made in accordance with the Applicable Procedures and the Restricted Notes Legend and only upon receipt by the Trustee of a certification from the transferor in the form provided on the reverse side of the Form of Note in Exhibit A for exchange or registration of transfers and, as applicable, delivery of such legal opinions, certifications and other information as may be requested pursuant thereto.  In addition, in the case of a transfer of a beneficial interest in either a Regulation S Global Note or a Rule 144A Global Note for an interest in an IAI Global Note, the transferee shall furnish a signed letter substantially in the form of Exhibit B to the Trustee.

(ii)      Prior to the expiration of the Distribution Compliance Period, (A) the Regulation S Global Note shall be a temporary global security for purposes of Rules 903 and 904 under the Securities Act, whether or not designated as such on the face of such Note, and (B) interests in the Regulation S Global Note may only be held through Euroclear or Clearstream.  During the Distribution Compliance Period, beneficial ownership interests in the Regulation S Global Note may only be sold, pledged or transferred through Euroclear or Clearstream in accordance with the Applicable Procedures, the Restricted Notes Legend on such Regulation S Global Note and any applicable securities laws of any state of the U.S.  Prior to the expiration of the Distribution Compliance Period, transfers by an owner of a beneficial interest in the Regulation S Global Note to a transferee who takes delivery of such interest through a Rule 144A Global Note or an IAI Global Note shall be made only in accordance with the Applicable Procedures and the Restricted Notes Legend and upon receipt by the Trustee of a written certification from the transferor of the beneficial interest in the form provided on the reverse side of the Form of Note in Exhibit A for exchange or registration of transfers.  Such written certification shall no longer be required after the expiration of the Distribution Compliance Period.  Upon the expiration of the Distribution Compliance Period, beneficial ownership interests in the Regulation S Global Note shall be transferable in accordance with applicable law and the other terms of the Indenture.

(iii)      Upon the expiration of the Distribution Compliance Period, beneficial interests in the Regulation S Global Note may be exchanged for beneficial interests in an Unrestricted Global Note upon certification in the form provided on the reverse side of the Form of Note in Exhibit A for an exchange from a Regulation S Global Note to an Unrestricted Global Note.

(iv)      Beneficial interests in a Transfer Restricted Note that is a Rule 144A

5

Global Note or an IAI Global Note may be exchanged for beneficial interests in an Unrestricted Global Note if the Holder certifies in writing to the Registrar that its request for such exchange is in respect of a transfer made in reliance on Rule 144 (such certification to be in the form set forth on the reverse side of the Form of Note in <u>Exhibit A</u>) and/or upon delivery of such legal opinions, certifications and other information as the Issuer or the Trustee may reasonably request.

(v)     If no Unrestricted Global Note is outstanding at the time of a transfer contemplated by the preceding clauses (iii) and (iv), the Issuer shall issue and the Trustee shall authenticate, upon an Authentication Order, a new Unrestricted Global Note in the appropriate principal amount.

(e)     *Legends.*

(i)     Except as permitted by Section 2.2(d) and this Section 2.2(e) of this Appendix A, each Note certificate evidencing the Global Notes and the Definitive Notes (and all Notes issued in exchange therefor or in substitution thereof) shall bear a legend in substantially the following form (each defined term in the legend being defined as such for purposes of the legend only) ("<u>Restricted Notes Legend</u>"):

> THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "<u>SECURITIES ACT</u>"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION.  NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.  THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "<u>RESALE RESTRICTION TERMINATION DATE</u>") THAT IS [*IN THE CASE OF RULE 144A NOTES:* ONE YEAR AFTER THE LATER OF THE ORIGINAL ISSUE DATE OF THE ISSUANCE OF THE NOTES HEREUNDER AND THE LAST DATE ON WHICH THE ISSUER OR ANY AFFILIATE OF THE ISSUER WERE THE OWNER OF THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY)] [*IN THE CASE OF REGULATION S NOTES:* 40 DAYS AFTER THE LATER OF THE ORIGINAL ISSUE DATE OF THE ISSUANCE OF THE NOTES HEREUNDER, THE ORIGINAL ISSUE DATE OF THE ISSUANCE AND THE DATE ON WHICH THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY) WAS FIRST OFFERED TO PERSONS OTHER THAN DISTRIBUTORS (AS DEFINED IN RULE 902 OF REGULATION S UNDER THE SECURITIES ACT) IN

6

#4834-6333-0618

RELIANCE ON REGULATION S], ONLY (A) TO THE ISSUER OR ANY SUBSIDIARY THEREOF, (B) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A"), TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (D) PURSUANT TO OFFERS AND SALES TO NON-U.S. PERSONS THAT OCCUR OUTSIDE THE UNITED STATES WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, (E) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT THAT IS NOT A QUALIFIED INSTITUTIONAL BUYER AND THAT IS PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ANOTHER INSTITUTIONAL ACCREDITED INVESTOR, IN EACH CASE IN A MINIMUM PRINCIPAL AMOUNT OF SECURITIES OF AT LEAST $250,000 OR (F) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S AND THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSES (D), (E) OR (F) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/ OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. THIS LEGEND SHALL BE REMOVED UPON THE REQUEST OF THE HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE. [*IN THE CASE OF REGULATION S NOTES:* BY ITS ACQUISITION HEREOF, THE HOLDER HEREOF REPRESENTS THAT IT IS NOT A U.S. PERSON NOR IS IT PURCHASING FOR THE ACCOUNT OF A U.S. PERSON AND IS ACQUIRING THIS SECURITY IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH REGULATION S UNDER THE SECURITIES ACT.]

Each Definitive Note shall bear the following additional legend ("Definitive Notes Legend"):

IN CONNECTION WITH ANY TRANSFER, THE HOLDER SHALL DELIVER TO THE REGISTRAR AND TRANSFER AGENT SUCH CERTIFICATES AND OTHER INFORMATION AS SUCH REGISTRAR AND TRANSFER AGENT MAY REASONABLY REQUIRE TO CONFIRM THAT THE TRANSFER COMPLIES WITH THE FOREGOING RESTRICTIONS.

#4834-6333-0618

Each Global Note shall bear the following additional legend ("Global Notes Legend"):

> UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED
> REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A
> NEW YORK CORPORATION ("DTC"), NEW YORK, NEW YORK,
> TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF
> TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE
> ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR SUCH
> OTHER NAME AS IS REQUESTED BY AN AUTHORIZED
> REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO
> CEDE & CO., OR TO SUCH OTHER ENTITY AS IS REQUESTED BY
> AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER,
> PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE
> BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE
> REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST
> HEREIN.
>
> TRANSFERS OF THIS GLOBAL SECURITY SHALL BE LIMITED
> TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO DTC, TO
> NOMINEES OF DTC OR TO A SUCCESSOR THEREOF OR SUCH
> SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF
> THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS
> MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH
> IN THE INDENTURE REFERRED TO ON THE REVERSE HEREOF.

Each Note shall bear the following additional legend ("ERISA Legend"):

> BY ITS ACQUISITION OF THIS SECURITY, THE HOLDER
> THEREOF SHALL BE DEEMED TO HAVE REPRESENTED AND
> WARRANTED THAT EITHER (1) NO PORTION OF THE ASSETS
> USED BY SUCH HOLDER TO ACQUIRE OR HOLD THIS
> SECURITY CONSTITUTES THE ASSETS OF AN EMPLOYEE
> BENEFIT PLAN THAT IS SUBJECT TO TITLE I OF THE
> U.S. EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974,
> AS AMENDED ("ERISA"), OF A PLAN, INDIVIDUAL RETIREMENT
> ACCOUNT OR OTHER ARRANGEMENT THAT IS SUBJECT TO
> SECTION 4975 OF THE U.S. INTERNAL REVENUE CODE OF 1986,
> AS AMENDED (THE "CODE") OR PROVISIONS UNDER ANY
> OTHER FEDERAL, STATE, LOCAL, NON-U.S. OR OTHER LAWS
> OR REGULATIONS THAT ARE SIMILAR TO SUCH PROVISIONS
> OF ERISA OR THE CODE ("SIMILAR LAWS"), OR OF AN ENTITY
> WHOSE UNDERLYING ASSETS ARE CONSIDERED TO INCLUDE
> "PLAN ASSETS" OF ANY SUCH PLAN, ACCOUNT OR
> ARRANGEMENT, OR (2) THE ACQUISITION AND HOLDING OF
> THIS SECURITY WILL NOT CONSTITUTE A NON-EXEMPT
> PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR

8

#4834-6333-0618

SECTION 4975 OF THE CODE OR A SIMILAR VIOLATION UNDER ANY APPLICABLE SIMILAR LAWS.

Any Note issued with original issue discount shall also bear the following additional legend ("OID Notes Legend"):

> THIS NOTE HAS BEEN ISSUED WITH "ORIGINAL ISSUE DISCOUNT" (WITHIN THE MEANING OF SECTION 1272 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED) FOR U.S. FEDERAL INCOME TAX PURPOSES. UPON WRITTEN REQUEST, THE ISSUER SHALL PROMPTLY MAKE AVAILABLE TO ANY HOLDER OF THIS NOTE THE FOLLOWING INFORMATION: (1) THE ISSUE PRICE AND DATE OF THE NOTE, (2) THE AMOUNT OF ORIGINAL ISSUE DISCOUNT ON THE NOTE AND (3) THE YIELD TO MATURITY OF THE NOTE. HOLDERS SHOULD CONTACT JOE BROKING, CHIEF FINANCIAL OFFICER AT 102 NE 3RD ST, SUITE 120, GRAND RAPIDS, MINNESOTA 55744.

(ii)     Upon any sale or transfer of a Transfer Restricted Note that is a Definitive Note, the Registrar shall permit the Holder thereof to exchange such Transfer Restricted Note for a Definitive Note that does not bear the Restricted Notes Legend and the Definitive Notes Legend and rescind any restriction on the transfer of such Transfer Restricted Note if the Holder certifies in writing to the Registrar that its request for such exchange is in respect of a transfer made in reliance on Rule 144 (such certification to be in the form set forth on the reverse side of the Form of Note in Exhibit A) and provides such legal opinions, certifications and other information as the Issuer or the Trustee may reasonably request.

(f)     *Cancellation or Adjustment of Global Note*. At such time as all beneficial interests in a Global Note have either been exchanged for Definitive Notes, transferred in exchange for an interest in another Global Note, redeemed, repurchased or canceled, such Global Note shall be returned by the Depositary to the Trustee for cancellation or retained and canceled by the Trustee. At any time prior to such cancellation, if any beneficial interest in a Global Note is exchanged for Definitive Notes, transferred in exchange for an interest in another Global Note, redeemed, repurchased or canceled, the principal amount of Notes represented by such Global Note shall be reduced and an adjustment shall be made on the books and records of the Registrar (if it is then the Custodian for such Global Note) with respect to such Global Note, by the Registrar or the Custodian, to reflect such reduction.

(g)     *Obligations with Respect to Transfers and Exchanges of Notes*.

(i)     To permit registrations of transfers and exchanges, the Issuer shall execute and the Trustee shall authenticate, Definitive Notes and Global Notes at the Registrar's request.

(ii)     No service charge shall be imposed in connection with any registration of transfer or exchange, but the Issuer may require payment of a sum sufficient to cover any transfer tax, assessments, or similar governmental charge payable in connection therewith (other

than any such transfer taxes, assessments or similar governmental charge payable upon exchanges pursuant to Sections 2.10 and 9.05 of this Indenture).

          (iii)    Neither the Issuer nor the Registrar shall be required to register the transfer of or to exchange any Note between a Record Date and the next succeeding Payment Date.

          (iv)    Prior to the due presentation for registration of transfer of any Note, the Issuer, the Trustee, the Paying Agent or the Registrar may deem and treat the Person in whose name a Note is registered as the absolute owner of such Note for the purpose of receiving payment of principal, premium, if any, and interest on such Note and for all other purposes whatsoever, whether or not such Note is overdue, and none of the Issuer, the Trustee, the Paying Agent or the Registrar shall be affected by notice to the contrary.

          (v)    All Notes issued upon any transfer or exchange pursuant to the terms of this Indenture shall evidence the same debt and shall be entitled to the same benefits under this Indenture as the Notes surrendered upon such transfer or exchange.

          (vi)    In order to effect any transfer or exchange of an interest in any Transfer Restricted Note for an interest in a Note that does not bear the Restricted Notes Legend and has not been registered under the Securities Act, if the Registrar so requests or if the Applicable Procedures so require, an Opinion of Counsel, in form reasonably acceptable to the Registrar to the effect that no registration under the Securities Act is required in respect of such exchange or transfer or the re-sale of such interest by the beneficial holder thereof, shall be required to be delivered to the Registrar and the Trustee.

          (h)    *No Obligation of the Trustee.*

          (i)    The Trustee shall have no responsibility or obligation to any beneficial owner of a Global Note, a member of, or a participant in the Depositary or any other Person with respect to the accuracy of the records of the Depositary or its nominee or of any participant or member thereof, with respect to any ownership interest in the Notes or with respect to the delivery to any participant, member, beneficial owner or other Person (other than the Depositary) of any notice (including any notice of redemption or repurchase) or the payment of any amount, under or with respect to such Notes. All notices and communications to be given to the Holders and all payments to be made to Holders under the Notes shall be given or made only to the registered Holders (which shall be the Depositary or its nominee in the case of a Global Note). The rights of beneficial owners in any Global Note shall be exercised only through the Depositary subject to the applicable rules and procedures of the Depositary. The Trustee may rely and shall be fully protected in relying upon information furnished by the Depositary with respect to its members, participants and any beneficial owners.

          (ii)    The Trustee shall have no obligation or duty to monitor, determine or inquire as to compliance with any restrictions on transfer imposed under this Indenture or under applicable law with respect to any transfer of any interest in any Note (including any transfers between or among Depositary participants, members or beneficial owners in any Global Note) other than to require delivery of such certificates and other documentation or evidence as are

10

#4834-6333-0618

expressly required by, and to do so if and when expressly required by, the terms of this Indenture, and to examine the same to determine substantial compliance as to form with the express requirements hereof.

Section 2.3    <u>Definitive Notes.</u>

(a)    A Global Note deposited with the Depositary or with the Trustee as Custodian pursuant to Section 2.1 may be transferred to the beneficial owners thereof in the form of Definitive Notes in an aggregate principal amount equal to the principal amount of such Global Note, in exchange for such Global Note, only if (i) such transfer complies with Section 2.2 of this Appendix A and (ii) the Depositary notifies the Issuer that it is unwilling or unable to continue as a Depositary for such Global Note or if at any time the Depositary ceases to be a "clearing agency" registered under the Exchange Act and, in each case, a successor depositary is not appointed by the Issuer within 90 days of such notice or after the Issuer become aware of such cessation. Notwithstanding anything to the contrary in this Section 2.3, no Regulation S Global Note may be exchanged for a Definitive Note until the end of the Distribution Compliance Period applicable to such Regulation S Global Note and receipt by the Trustee and the Issuer of any certificates required by either of them pursuant to Rule 903(b)(3)(ii)(B) under the Securities Act.

(b)    Any Global Note that is transferable to the beneficial owners thereof pursuant to this Section 2.3 shall be surrendered by the Depositary to the Trustee, to be so transferred, in whole or from time to time in part, without charge, and the Trustee shall authenticate and deliver, upon such transfer of each portion of such Global Note, an equal aggregate principal amount of Definitive Notes of authorized denominations. Any portion of a Global Note transferred pursuant to this Section 2.3 shall be executed, authenticated and delivered only in denominations of $2,000 and integral multiples of $1 in excess thereof and registered in such names as the Depositary shall direct. Any Definitive Note delivered in exchange for an interest in a Global Note that is a Transfer Restricted Note shall, except as otherwise provided by Section 2.2(e) of this Appendix A, bear the Restricted Notes Legend.

(c)    The registered Holder of a Global Note may grant proxies and otherwise authorize any Person, including Agent Members and Persons that may hold interests through Agent Members, to take any action which a Holder is entitled to take under this Indenture or the Notes.

(d)    In the event of the occurrence of any of the events specified in Section 2.3(a) of this Appendix A, the Issuer shall promptly make available to the Trustee a reasonable supply of Definitive Notes in fully registered form without interest coupons.

#4834-6333-0618

EXHIBIT A

[FORM OF FACE OF NOTE]

[Insert the Restricted Notes Legend, if applicable, pursuant to the provisions of the Indenture]

[Insert the Global Notes Legend, if applicable, pursuant to the provisions of the Indenture]

[Insert the Definitive Notes Legend, if applicable, pursuant to the provisions of the Indenture]

[Insert the ERISA Legend, if applicable, pursuant to the provisions of the Indenture]

CUSIP [          ]

ISIN [         ][1]

[RULE 144A][REGULATION S][IAI] NOTE

Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019

No. [RA-    ] [RS-    ] [RIAI-    ]                                                    [Up to][2] [$____]

ERP IRON ORE, LLC

promises to pay to [CEDE & CO.][3] [_____] or registered assigns the principal sum [set forth on the Schedule of Exchanges of Interests in the Global Note attached hereto][4] [of $_____(_____ Dollars)][5] on December [•], 2019.

Interest Payment Dates: March 31, June 30, September 30 and December 31, beginning on, and inclusive of, March 31, 2017

Amortization Payment Dates: March 31, June 30, September 30 and December 31, beginning on, and inclusive of, June 30, 2017

Record Dates: March 15, June 15, September 15 and December 15

---

[1] Rule 144A Note CUSIP:
Rule 144A Note ISIN:
IAI Note CUSIP:
IAI Note ISIN:
Regulation S CUSIP:
Regulation S ISIN:
[2] Include in Global Notes
[3] Include in Global Notes
[4] Include in Global Notes
[5] Include in Definitive Notes

A-2

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated:  December [•], 2016

ERP IRON ORE, LLC

By: _____
Name:
Title:

CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture:

WILMINGTON SAVINGS FUND SOCIETY, FSB

As Trustee

By: _____
Authorized Signatory:

Dated:  December [•], 2016

A-3

[Reverse Side of Note]

Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

1.      INTEREST AND AMORTIZATION AMOUNTS. (a) ERP Iron Ore, LLC (the "Issuer") promises to pay interest on the principal amount of this Note at a rate equal to the sum of (i) LIBOR plus (ii) 8.00%, reset quarterly, as determined by the Calculation Agent, from the above date until maturity. The Issuer will pay interest quarterly in arrears on March 31, June 30, September 30 and December 31 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each an "Interest Payment Date").  Interest on the Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance; provided that if there is no existing Default in the payment of interest, and if this Note is authenticated between a record date referred to on the face hereof and the next succeeding Interest Payment Date, interest shall accrue from such next succeeding Interest Payment Date; provided, further, that the first Interest Payment Date shall be March 31, 2017.  The Issuer may elect, prior to the beginning of such Interest Period, to pay some or all interest as PIK Interest. If the Issuer elects to pay PIK Interest, interest on the Notes will be paid entirely (subject to the following sentence) by issuing PIK Notes or adding accrued and unpaid interest as of such Interest Payment Date to the principal amount of the Global Notes then outstanding ("PIK Interest"). In the event that the Issuer is entitled to and elects to pay Partial PIK Interest for an Interest Period, each Holder shall be entitled to receive Cash Interest in respect of the applicable percentage of the principal amount of the Notes held by such Holder on the relevant Record Date and PIK Interest in respect of the remaining percentage of the principal amount of the Notes held by such Holder on the relevant Record Date. Following an increase in the principal amount of the Global Notes as a result of a PIK Payment, the Global Notes will bear interest on such increased principal amount from and after the date of such PIK Payment. Unless the context requires otherwise, references to Notes or the "principal" or the "principal amount" of Notes, including for purposes of calculating any redemption price or redemption amount, include any increase in the principal amount of the Global Notes as a result of a PIK Payment. The Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at a rate that is 2.0% per annum in excess of the rate then in effect; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Amounts (without regard to any applicable grace periods) from time to time on demand at the same rate to the extent lawful. The Issuer promises to pay Amortization Amounts on each Amortization Payment Date as set forth in Section 4.01 of the Indenture.

b.      The rate of interest shall be reset on the first day of each Interest Period other than the Initial Interest Period.

c.      On or before each Calculation Date, the Calculation Agent shall determine the Applicable Rate and notify the Trustee and the Paying Agent.

d.      The Calculation Agent shall, upon the written request of any Holder of the Notes, provide the interest rate then in effect with respect to the Notes.

A-4

FILED: NEW YORK COUNTY CLERK 02/06/2020 Case 1:20-cv-02043-LJL Document 1-3 Filed 03/06/20 Page 17 of 78 NO. 650854/2020

NYSCEF DOC. NO. 4                                                                    RECEIVED NYSCEF: 02/06/2020

e.  All percentages resulting from any calculation of any interest rate for the Notes shall be rounded, if necessary, to the nearest one hundred thousandth of a percentage point, with five one-millionths of a percentage point rounded upward (e.g., 3.876545% (or .03876545) would be rounded to 3.87655% (or .0387655)), and all United States dollar amounts shall be rounded to the nearest cent, with one-half cent being rounded upward.

f.  Set forth below is a summary of certain of the defined terms used in this Note relating to the calculation of interest on the Notes:

"Business Day" means each day that is not a Saturday, Sunday or other day on which banking institutions in New York, New York are authorized or required by law to close.

"Calculation Date" means, with respect to any Interest Determination Date, the earlier of (i) the tenth calendar day after such Interest Determination Date, or, if any such day is not a Business Day, the next succeeding Business Day, and (ii) the Business Day immediately preceding the applicable Interest Payment Date or the maturity date, as the case may be.

"Interest Determination Date" for an Interest Period shall be the second Business Day preceding the first day of such Interest Period (or, in the case of the Initial Interest Period, the second Business Day preceding the date of the original issuance of Notes hereunder).

"Initial Interest Period" means the date of the issuance of the initial Notes issued under the Indenture through March 30, 2017.

"Interest Period" means the period commencing on an Interest Payment Date (or, in the case of the Initial Interest Period, commencing on the date of the issuance of the Notes under the Indenture) and ending on the day preceding the next following Interest Payment Date or the redemption date, as applicable.

"LIBOR means, with respect to any Interest Determination Date, the London interbank offered rate as administered by ICE Benchmark Administration Limited (or any other Person that takes over the administration of such rate) for deposits in immediately available funds in United States dollars having a maturity of three months as displayed on the Bloomberg screen page that displays such rate, or on the appropriate page or screen of such other comparable information service that publishes such rate from time to time as selected by the Calculation Agent in its discretion (and in consultation with the Issuer) on that Interest Determination Date. If no rate appears, in respect of that Interest Determination Date, the Calculation Agent shall request the principal London offices of each of four major reference banks in the London interbank market, as selected by the Calculation Agent, to provide the Calculation Agent with its offered quotation for deposits in United States dollars for the period of three months, commencing on the second London Business Day following such Interest Determination Date, to prime banks in the London interbank market at approximately 11:00 a.m., London time, on that Interest Determination Date and in a principal amount that is representative for a single transaction in United States dollars in that market at that time. If at least two quotations are provided, then LIBOR on that Interest Determination Date shall be the arithmetic mean of those quotations. If fewer than two quotations are provided, then LIBOR on the

A-5

Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 18 of 78

Interest Determination Date shall be the arithmetic mean of the rates quoted at approximately 11:00 a.m., in the City of New York, on the Interest Determination Date by three major banks in the City of New York selected by the Calculation Agent for loans in United States dollars to leading European banks, having a three-month maturity and in a principal amount that is representative for a single transaction in United States dollars in that market at that time; provided, however, that if the banks selected by the Calculation Agent are not providing quotations in the manner described by this sentence, LIBOR shall be the same as the rate determined for the immediately preceding Interest Period. LIBOR will in no event be less than 0.00% per annum.

2.   METHOD OF PAYMENT. By no later than 11:00 a.m. (New York City time) on the date on which any principal of, premium and Additional Amounts, if any, or interest on any Note is due and payable, the Issuer shall irrevocably deposit with the Paying Agent money sufficient to pay such principal, premium and Additional Amounts, if any, and/or interest (other than PIK Interest, which is payable as described above). The Issuer shall pay interest on the Notes and all applicable Amortization Amounts to the Persons who are registered holders of Notes at the close of business on March 15, June 15, September 15 and December 15 (whether or not a Business Day), as the case may be, immediately preceding the related Interest Payment Date, even if such Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. Principal, premium and Additional Amounts, if any, and interest (other than PIK Interest, which is payable as described above) on the Notes shall be payable at the office or agency of the Issuer maintained for such purpose or, at the option of the Issuer, payment of interest and premium, if any, may be made by check mailed to the Holders at their respective addresses set forth in the Note Register; provided that payment by wire transfer of immediately available funds shall be required with respect to principal (including Amortization Amounts, as applicable), premium and Additional Amounts, if any, and interest (other than PIK Interest, which is payable as described above) on all Global Notes and all other Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent at least ten Business Days prior to the applicable payment date. Such payment shall be in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts.

3.   PAYING AGENT, CALCULATION AGENT AND REGISTRAR. Initially, Wilmington Savings Fund Society, FSB, the Trustee under the Indenture, shall act as Paying Agent, Calculation Agent and Registrar. The Issuer may change any Paying Agent or Registrar without notice to the Holders. The Issuer may act in any such capacity.

4.   INDENTURE.  The Issuer issued the Notes under an Indenture, dated as of December [•], 2016 (as amended or supplemented from time to time, the "Indenture"), among the Issuer, the Guarantors named therein, the Trustee, the Collateral Agent, the Paying Agent, the Registrar and the Calculation Agent. This Note is one of a duly authorized issue of notes of the Issuer designated as its Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019. The terms of the Notes include those stated in the Indenture. The Notes are subject to all such terms, and Holders are referred to the Indenture for a statement of such terms. Any term used in this Note that is defined in the Indenture shall have the meaning assigned to it in the Indenture. To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

A-6

5.   REDEMPTION AND REPURCHASE. The Notes are subject to optional redemption, and may be the subject of an Event of Default Redemption, as further described in the Indenture. The Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Notes.

6.   GUARANTEE. To guarantee the due and punctual payment of the principal, premium, if any, and interest (including post-filing or post-petition interest) on the Notes and all other amounts payable by the Issuer under the Indenture and the Notes when and as the same shall be due and payable, whether at maturity, by acceleration or otherwise, according to the terms of the Notes and the Indenture, the Guarantors have unconditionally Guaranteed (and future guarantors shall unconditionally Guarantee), jointly and severally, such obligations on a senior secured basis.

7.   SECURITY. From the Issue Date, the Notes and the Guarantees will be secured by the Collateral, pursuant to the Security Documents. Reference is made to the Indenture and the Security Documents for terms relating to such security, including the release, termination and discharge thereof. The Issuer shall not be required to make any notation on this Note to reflect any grant of such security or any such release, termination or discharge.

8.   DENOMINATIONS, TRANSFER, EXCHANGE. The Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1.00 in excess thereof. The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents, and Holders shall be required to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any Note or portion of a Note selected for redemption, except for the unredeemed portion of any Note being redeemed or repurchased in part. The Issuer need not exchange or register the transfer of any Note during a period of 15 days before a mailing of notice of redemption of Notes or during a period between a Record Date and the next succeeding Interest Payment Date or Amortization Payment Date, as applicable.

9.   PERSONS DEEMED OWNERS. The registered Holder of a Note may be treated as its owner for all purposes.

10.  AMENDMENT, SUPPLEMENT AND WAIVER. The Indenture, the Note Guarantees or the Notes may be amended or supplemented as provided in the Indenture.

11.  DEFAULTS AND REMEDIES. The Events of Default relating to the Notes are defined in Section 6.01 of the Indenture. Upon the occurrence of an Event of Default, the rights and obligations of the Issuer, the Guarantor, the Trustee and the Holders shall be as set forth in the applicable provisions of the Indenture.

12.  AUTHENTICATION. This Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

13.  GOVERNING LAW. THIS NOTE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

14.  CUSIP AND ISIN NUMBERS. Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP and ISIN numbers to be

A-7

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 02/06/2020

printed on the Notes, and the Trustee may use CUSIP and ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

15. ABBREVIATIONS. Customary abbreviations may be used in the name of Note Holder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act). Additional abbreviations may also be used though not identified in the preceding list

               The Issuer shall furnish to any Holder upon written request and without charge a copy of the Indenture. Requests may be made to the Issuer at the following address:

ERP Iron Ore, LLC
c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578
Attention: Tom Clarke
Email: Tom.Clarke@kissito.org

Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 21 of 78

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to: _____
_____
(Insert assignee's legal name)


_____
(Insert assignee's soc. sec. or tax I.D. no.)


_____
_____
_____
_____
(Print or type assignee's name, address and zip code)

and irrevocably appoint_____
to transfer this Note on the books of the Issuer. The agent may substitute another to act for him.

Date: _____

                                        Your Signature: _____
                                        (Sign exactly as your name appears
                                        on the face of this Note)




Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

A-9

RECEIVED NYSCEF: 02/06/2020

CERTIFICATE TO BE DELIVERED UPON EXCHANGE OR REGISTRATION OF
TRANSFERS OF TRANSFER RESTRICTED NOTES

This certificate relates to $ _____ principal amount of Notes held in (check applicable space) _____ book-entry or _____definitive form by the undersigned.

The undersigned (check one box below):

☐    has requested the Trustee by written order to deliver in exchange for its beneficial interest in a Global Note held by the Depositary a Note or Notes in definitive, registered form of authorized denominations and an aggregate principal amount equal to its beneficial interest in such Global Note (or the portion thereof indicated above) in accordance with the Indenture; or

☐    has requested the Trustee by written order to exchange or register the transfer of a Note or Notes.

In connection with any transfer of any of the Notes evidenced by this certificate, the undersigned confirms that such Notes are being transferred in accordance with its terms:

CHECK ONE BOX BELOW

(1)    ☐    to the Issuer or Subsidiary thereof; or

(2)    ☐    to the Registrar for registration in the name of the Holder, without transfer; or

(3)    ☐    pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "Securities Act"); or

(4)    ☐    to a Person that the undersigned reasonably believes is a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act ("Rule 144A")) that purchases for its own account or for the account of a qualified institutional buyer and to whom notice is given that such transfer is being made in reliance on Rule 144A, in each case pursuant to and in compliance with Rule 144A; or

(5)    ☐    pursuant to offers and sales to non-U.S. persons that occur outside the United States within the meaning of Regulation S under the Securities Act (and if the transfer is being made prior to the expiration of the Distribution Compliance Period, the Notes shall be held immediately thereafter through Euroclear or Clearstream); or

(6)    ☐    to an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) under the Securities Act) that has furnished to the Trustee a signed letter containing certain representations and agreements; or

(7)    ☐    Pursuant to Rule 144 under the Securities Act; or

(8)    ☐    pursuant to another available exemption from registration under the Securities

Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 23 of 78

Act.

Unless one of the boxes is checked, the Trustee will refuse to register any of the Notes evidenced by this certificate in the name of any Person other than the registered Holder thereof; provided, however, that if box (5), (6), (7) or (8) is checked, the Issuer or the Trustee may require, prior to registering any such transfer of the Notes, such legal opinions, certifications and other information as the Issuer or the Trustee have reasonably requested to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act.

_____
Your Signature

Date: _____

_____
Signature of
Guarantor

### TO BE COMPLETED BY PURCHASER IF (4) ABOVE IS CHECKED.

The undersigned represents and warrants that it is purchasing this Note for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is a "qualified institutional buyer" within the meaning of Rule 144A, and is aware that the sale to it is being made in reliance on Rule 144A and acknowledges that it has received such information regarding the Issuer as the undersigned has requested pursuant to Rule 144A or has determined not to request such information and that it is aware that the transferor is relying upon the undersigned's foregoing representations in order to claim the exemption from registration provided by Rule 144A.

Dated: _____

_____
NOTICE:  To be executed by an
         executive officer
Name:
Title:

Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

A-11

Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 24 of 78

TO BE COMPLETED IF THE HOLDER REQUIRES AN EXCHANGE
FROM A REGULATION S GLOBAL NOTE TO AN UNRESTRICTED
GLOBAL NOTE, PURSUANT TO SECTION 2.2(d)(iii) OF APPENDIX
A TO THE INDENTURE[6]

The undersigned represents and warrants that either:

☐    the undersigned is not a dealer (as defined in the Securities Act) and is a non-U.S. person
(within the meaning of Regulation S under the Securities Act); or

☐    the undersigned is not a dealer (as defined in the Securities Act) and is a U.S. person (within
the meaning of Regulation S under the Securities Act) who purchased interests in the Notes
pursuant to an exemption from, or in a transaction not subject to, the registration
requirements under the Securities Act; or

☐    the undersigned is a dealer (as defined in the Securities Act) and the interest of the
undersigned in this Note does not constitute the whole or a part of an unsold allotment to or
subscription by such dealer for the Notes.

Date: _____               _____
                                                                        Your Signature

---

[6] Include only for Regulation S Global Notes.

A-12

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE*

The initial outstanding principal amount of this Global Note is $_____. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global Note or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount of this Global Note | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following such decrease or increase | Signature of authorized signatory of Trustee, Depositary or Custodian |
| --- | --- | --- | --- | --- |

*This schedule should be included only if the Note is issued in global form.

**EXHIBIT B**

FORM OF TRANSFEREE LETTER OF REPRESENTATION

ERP Iron Ore, LLC
c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578
Attention: Tom Clarke
Email: Tom.Clarke@kissito.org

Ladies and Gentlemen:

This certificate is delivered to request a transfer of $[_____] principal amount of the Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019 (the "Notes") of ERP Iron Ore, LLC, a Virginia limited liability company (the "Issuer").

Upon transfer, the Notes would be registered in the name of the new beneficial owner as follows:

Name: _____

Address: _____

Taxpayer ID Number: _____

The undersigned represents and warrants to you that:

1.     We are an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) under the Securities Act of 1933, as amended (the "Securities Act")), purchasing for our own account or for the account of such an institutional "accredited investor" at least $250,000 principal amount of the Notes, and we are acquiring the Notes, for investment purposes and not with a view to, or for offer or sale in connection with, any distribution in violation of the Securities Act. We have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of our investment in the Notes, and we invest in or purchase securities similar to the Notes in the normal course of our business. We, and any accounts for which we are acting, are each able to bear the economic risk of our or its investment.

2.     We understand that the Notes have not been registered under the Securities Act and, unless so registered, may not be sold except as permitted in the following sentence. We agree on our own behalf and on behalf of any investor account for which we are purchasing Notes to offer, sell or otherwise transfer such Notes prior to the date that is one year after the later of the date of original issue and the last date on which the Issuers or any affiliate of the Issuers was the owner of such Notes (or any predecessor thereto) (the "Resale Restriction Termination Date") only in accordance

Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 27 of 78

with the Restricted Notes Legend (as such term is defined in the indenture under which the Notes were issued) on the Notes and any applicable securities laws of any state of the United States. The foregoing restrictions on resale will not apply subsequent to the Resale Restriction Termination Date. If any resale or other transfer of the Notes is proposed to be made pursuant to the preceding clause prior to the Resale Restriction Termination Date, the transferor shall deliver a letter from the transferee substantially in the form of this letter to the Issuers and the Trustee, which shall provide, among other things, that the transferee is an institutional "accredited investor" within the meaning of Rule 501(a)(1), (2), (3) or (7) under the Securities Act and that it is acquiring such Notes for investment purposes and not for distribution in violation of the Securities Act. Each purchaser acknowledges that the Issuers and the Trustee reserve the right prior to the offer, sale or other transfer prior to the Resale Restriction Termination Date of the Notes with respect to applicable transfers described in the Restricted Notes Legend to require the delivery of an opinion of counsel, certifications and/or other information satisfactory to the Issuers and the Trustee.

TRANSFEREE: _____,

by: _____

**EXHIBIT C**

FORM OF SUPPLEMENTAL INDENTURE
TO BE DELIVERED BY SUBSEQUENT GUARANTORS

       Supplemental Indenture (this "Supplemental Indenture"), dated as of [_____] [__], 20[__], among [_____] (the "Guaranteeing Subsidiary"), a subsidiary of [_____], a [_____] company [(the "Issuer")] [(the "Coke Guarantor")][1] and [_____], as trustee (the "Trustee").

W I T N E S S E T H

       WHEREAS, each of the Issuer and the Guarantor(s) (as defined in the Indenture referred to below) have heretofore executed and delivered to Wilmington Savings Fund Society, FSB, as trustee, an indenture (the "Indenture"), dated as of [•], 2016, providing for the issuance of $22,500,000 aggregate principal amount of Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019 (*provided* that the principal amount of the Notes authorized and outstanding may be increased in connection with PIK Interest) (the "Notes");

       WHEREAS, the Indenture provides that under certain circumstances the Guaranteeing Subsidiary shall execute and deliver to the Trustee a supplemental indenture pursuant to which the Guaranteeing Subsidiary shall unconditionally Guarantee all of the Issuer's Obligations under the Notes and the Indenture on the terms and conditions set forth herein and under the Indenture; and

       WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

       NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders as follows:

       1.    Capitalized Terms. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

       2.    Guarantor. The Guaranteeing Subsidiary hereby agrees to be a Guarantor under the Indenture and to be bound by the terms of the Indenture applicable to Guarantors, including Article 11 thereof.

       3.    Governing Law. THIS SUPPLEMENTAL INDENTURE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

       4.    Waiver of Jury Trial. EACH OF THE GUARANTEEING SUBSIDIARY AND THE TRUSTEE HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS

---

[1] TBD - whether the new guaranteeing subsidiary is a subsidiary of the Issuer or the original Guarantor.

SUPPLEMENTAL INDENTURE, THE INDENTURE, THE NOTES, THE NOTE GUARANTEES OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

     5.    <u>Counterparts and Delivery</u>. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement. The exchange of copies of this Supplemental Indenture and of signature pages by facsimile or portable document format ("<u>PDF</u>") transmission shall constitute effective execution and delivery of this Supplemental Indenture as to the parties hereto and may be used in lieu of the original Supplemental Indenture for all purposes. Signatures of the parties hereto transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

     6.    <u>Headings</u>. The headings of the Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

     7.    <u>The Trustee</u>. The Trustee shall not be responsible in any manner whatsoever for or in respect of the validity, sufficiency or adequacy of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which recitals are made solely by the Guaranteeing Subsidiary and the Issuer.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed, all as of the date first above written.

[NAME OF GUARANTEEING SUBSIDIARY]

By: _____
      Name:
      Title:

[_____], as Trustee

By: _____
      Name:
      Title:

Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 31 of 78

EXHIBIT D

## ISSUER NOTIFICATION OF PIK INTEREST ELECTION.

[•], 2016

This notification is delivered to you, [_____], Trustee (the "<u>Trustee</u>") under the indenture dated [•], 2016, among ERP Iron Ore, LLC (the "<u>Issuer</u>"), the guarantor(s) listed thereunder, and the Trustee (as amended, supplemented, or otherwise modified from time to time, the "<u>Indenture</u>"), in connection with the Issuer's option to elect to pay PIK Interest as set forth in Section 2.14(a) of the Indenture. Capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Indenture.

The undersigned Officer of the Issuer (the "<u>Officer</u>") hereby certifies that the undersigned is authorized to execute this notification on behalf of the Issuer (and not in a personal capacity) and does hereby notify the Trustee and the Paying Agent, in the name and on behalf of the Issuer (and not in a personal capacity), that for the Interest Payment Date of [_____], 20[XX], the Issuer shall pay all or some of the interest on the Notes that will be due and payable on such Interest Payment Date by way of a PIK Payment.

[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have executed this Officer's Certificate as of the date first written above.

By: _____

Name: _____
Title: _____

Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 33 of 78

**EXHIBIT E**

## ISSUER NOTIFICATION AND DIRECTION TO TRUSTEE UNDER SECTION 2.14(D) OF THE INDENTURE REGARDING THE PAYMENT OF PIK INTEREST.

[•], 2016

This notification and direction is delivered to you, [_____], Trustee (the "Trustee") under the indenture dated [•], 2016, among ERP Iron Ore, LLC (the "Issuer"), the guarantor(s) listed thereunder, and the Trustee (as amended, supplemented, or otherwise modified from time to time, the "Indenture"), in connection with the payment of PIK Interest as set forth in Section 2.14(d) of the Indenture. Capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Indenture.

The undersigned Officer of the Issuer (the "Officer") hereby certifies that the undersigned is authorized to execute this notification on behalf of the Issuer (and not in a personal capacity) and does hereby notify the Trustee and the Paying Agent, in the name and on behalf of the Issuer (and not in a personal capacity), that for the Interest Payment Date of [_____], 20[XX], the Issuer is obligated to pay interest on the Notes in the aggregate amount of $[_____] and the Issuer shall pay $[_____] in PIK Interest.

The Officer hereby authorizes and directs the Trustee to increase the principal amount of the Global Notes and/or to authenticate new Definitive Notes in respect of the PIK Interest to be paid on such Interest Payment Date in accordance with Section 2.14(d) of the Indenture.

[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK]

FILED: NEW YORK COUNTY CLERK 02/06/2020 04:16 PM
Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 34 of 78
NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 02/06/2020

IN WITNESS WHEREOF, the undersigned have executed this Officer's Certificate as of the date first written above.

By: _____

             Name: _____

             Title: _____

# EXHIBIT B

Case 1:20-cv-02043-LJL  Document 13  Filed 03/06/20  Page 36 of 78

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION.   NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.  THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION DATE") THAT IS ONE YEAR AFTER THE LATER OF THE ORIGINAL ISSUE DATE OF THE ISSUANCE OF THE NOTES HEREUNDER AND THE LAST DATE ON WHICH THE ISSUER OR ANY AFFILIATE OF THE ISSUER WERE THE OWNER OF THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY) ONLY (A) TO THE ISSUER OR ANY SUBSIDIARY THEREOF, (B) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A"), TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (D) PURSUANT TO OFFERS AND SALES TO NON-U.S. PERSONS THAT OCCUR OUTSIDE THE UNITED STATES WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, (E) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT THAT IS NOT A QUALIFIED INSTITUTIONAL BUYER AND THAT IS PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ANOTHER INSTITUTIONAL ACCREDITED INVESTOR, IN EACH CASE IN A MINIMUM PRINCIPAL AMOUNT OF SECURITIES OF AT LEAST $250,000 OR (F) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S AND THE TRUSTEE'S RIGHT TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSES (D), (E) OR (F) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/ OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. THIS LEGEND SHALL BE REMOVED UPON THE REQUEST OF THE HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), NEW YORK, NEW YORK, TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO., OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

TRANSFERS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO DTC, TO NOMINEES OF DTC OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE INDENTURE REFERRED TO ON THE REVERSE HEREOF.

BY ITS ACQUISITION OF THIS SECURITY, THE HOLDER THEREOF SHALL BE DEEMED TO HAVE REPRESENTED AND WARRANTED THAT EITHER (1) NO PORTION OF THE ASSETS USED BY SUCH HOLDER TO ACQUIRE OR HOLD THIS SECURITY CONSTITUTES THE ASSETS OF AN EMPLOYEE BENEFIT PLAN THAT IS SUBJECT TO TITLE I OF THE U.S. EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), OF A PLAN, INDIVIDUAL RETIREMENT ACCOUNT OR OTHER ARRANGEMENT THAT IS SUBJECT TO SECTION 4975 OF THE U.S. INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE") OR PROVISIONS UNDER ANY OTHER FEDERAL, STATE, LOCAL, NON-U.S. OR OTHER LAWS OR REGULATIONS THAT ARE SIMILAR TO SUCH PROVISIONS OF ERISA OR THE CODE ("SIMILAR LAWS"), OR OF AN ENTITY WHOSE UNDERLYING ASSETS ARE CONSIDERED TO INCLUDE "PLAN ASSETS" OF ANY SUCH PLAN, ACCOUNT OR ARRANGEMENT, OR (2) THE ACQUISITION AND HOLDING OF THIS SECURITY WILL NOT CONSTITUTE A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE OR A SIMILAR VIOLATION UNDER ANY APPLICABLE SIMILAR LAWS.

COPY

2

FILED: NEW YORK COUNTY CLERK 02/06/2020 04:36 PM
Case 1:20-cv-02043-LJL Document 1-3 Filed 03/06/20 Page 38 of 78
NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 02/06/2020

CUSIP 26886E AA1

ISIN US26886EAA10

## RULE 144A NOTE

Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019

No. RA-1

$0.00 plus all PIK interest added to the principal
amount hereof

### ERP IRON ORE, LLC

promises to pay to CEDE & CO. or registered assigns the principal sum set forth on the Schedule of
Exchanges of Interests in the Global Note attached hereto on December 31, 2019.

Interest Payment Dates: March 31, June 30, September 30 and December 31, beginning on, and
inclusive of, March 31, 2017

Amortization Payment Dates: March 31, June 30, September 30 and December 31, beginning on,
and inclusive of, June 30, 2017

Record Dates: March 15, June 15, September 15 and December 15

3

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated:   1/30/2017

ERP IRON ORE, LLC

By: *Jennifer E. Bell*
Name: Jennifer E. Bell
Title: Treasurer

CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture:

WILMINGTON SAVINGS FUND SOCIETY, FSB
as Trustee

By: _____
Authorized Signatory:

Dated: _____

COPY

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: _____

                                    ERP IRON ORE, LLC

                                    By: _____
                                    Name:
                                    Title:

CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture:

                                    WILMINGTON SAVINGS FUND SOCIETY,
                                    FSB
                                    as Trustee

                                    By: _____
                                    Authorized Signatory:

Dated: ____1/30/2017____

4

[Reverse Side of Note]

Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

1. INTEREST AND AMORTIZATION AMOUNTS. (a) ERP Iron Ore, LLC (the "Issuer") promises to pay interest on the principal amount of this Note at a rate equal to the sum of (i) LIBOR plus (ii) 8.00%, reset quarterly, as determined by the Calculation Agent, from the above date until maturity. The Issuer will pay interest quarterly in arrears on March 31, June 30, September 30 and December 31 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each an "Interest Payment Date"). Interest on the Notes will be paid from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance; provided that if there is no existing Default in the payment of interest, if this Note is authenticated between a record date referred to on the face hereof and the next succeeding Interest Payment Date, interest shall accrue from such next succeeding Interest Payment Date. Interest shall be calculated on the basis of a 360 day year and the actual number of days elapsed. The Issuer may elect, prior to the beginning of the first Interest Period, to pay some of all interest as PIK Interest. If the Issuer elects to pay PIK Interest, interest on the Notes will be paid entirely (subject to the following sentence) by issuing PIK Notes or adding accrued and unpaid interest to of such Interest Payment Date to the principal amount of the Global Notes then outstanding ("PIK Interest"). In the event that the Issuer is entitled to and elects to pay partial PIK Interest for an Interest Period, each Holder shall be entitled to receive Cash Interest in respect of the applicable percentage of the principal amount of the Notes held by such Holder on the relevant Record Date and PIK Interest in respect of the remaining percentage of principal amount of the Notes held by such Holder on the relevant Record Date. Following an increase in the principal amount of the Global Notes as a result of a PIK Payment, the Global Notes will bear interest on such increased principal amount from and after the date of such PIK Payment. Unless the context requires otherwise, references to Notes or the "principal" or the "principal amount" of Notes, including for purposes of calculating any redemption price or redemption amount, include any increase in the principal amount of the Global Notes as a result of a PIK Payment. The Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at a rate that is 2.0% per annum in excess of the rate then in effect; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Amounts (without regard to any applicable grace periods) from time to time on demand at the same rate to the extent lawful. The Issuer promises to pay Amortization Amounts on each Amortization Payment Date as set forth in Section 4.01 of the Indenture.

   b. The rate of interest shall be reset on the first day of each Interest Period other than the Initial Interest Period.

   c. On or before each Calculation Date, the Calculation Agent shall determine the Applicable Rate and notify the Trustee and the Paying Agent.

   d. The Calculation Agent shall, upon the written request of any Holder of the Notes, provide the interest rate then in effect with respect to the Notes.

5

e.   All percentages resulting from any calculation of any interest rate for the Notes shall be rounded, if necessary, to the nearest one hundred thousandth of a percentage point, with five one-millionths of a percentage point rounded upward (e.g., 3.876545% (or .03876545) would be rounded to 3.87655% (or .0387655)), and all United States dollar amounts shall be rounded to the nearest cent, with one-half cent being rounded upward.

f.   Set forth below is a summary of certain of the defined terms used in this Note relating to the calculation of interest on the Notes:

"Business Day" means each day that is not a Saturday, Sunday or other day on which banking institutions in New York, New York are authorized or required by law to close.

"Calculation Date" means, with respect to any Interest Determination Date, the earlier of (i) the tenth calendar day after such Interest Determination Date or, if any such day is not a Business Day, the next succeeding Business Day, and (ii) the Business Day immediately preceding the applicable Interest Payment Date or the Maturity date, as the case may be.

"Interest Determination Date" for an Interest Period shall be the second Business Day preceding the first day of such Interest Period (or, in the case of the Initial Interest Period, the second Business Day preceding the date of the original issuance of Notes hereunder).

"Initial Interest Period" means the date of the issuance of the initial Notes issued under the Indenture through March 30, 2017.

"Interest Period" means the period commencing on an Interest Payment Date (or, in the case of the Initial Interest Period, commencing on the date of the issuance of the Notes under the Indenture) and ending on the day preceding the next following Interest Payment Date or the redemption date, as applicable.

"LIBOR" means, with respect to any Interest Determination Date, the London interbank offered rate as administered by ICE Benchmark Administration Limited (or any other Person that takes over the administration of such rate) for deposits in immediately available funds in United States dollars having a maturity of three months as displayed on the Bloomberg screen page that displays such rate, or on the appropriate page or screen of such other comparable information service that publishes such rate from time to time as selected by the Calculation Agent in its discretion (and in consultation with the Issuer) on that Interest Determination Date. If no rate appears, in respect of that Interest Determination Date, the Calculation Agent shall request the principal London offices of each of four major reference banks in the London interbank market, as selected by the Calculation Agent, to provide the Calculation Agent with its offered quotation for deposits in United States dollars for the period of three months, commencing on the second London Business Day following such Interest Determination Date, to prime banks in the London interbank market at approximately 11:00 a.m., London time, on that Interest Determination Date and in a principal amount that is representative for a single transaction in United States dollars in that market at that time. If at least two quotations are provided, then LIBOR on that Interest Determination Date shall be the arithmetic mean of those quotations. If fewer than two quotations are provided, then LIBOR on the

6

Interest Determination Date shall be the arithmetic mean of the rates quoted at approximately 11:00 a.m., in the City of New York, on the Interest Determination Date by three major banks in the City of New York selected by the Calculation Agent for loans in United States dollars to leading European banks, having a three-month maturity and in a principal amount that is representative for a single transaction in United States dollars in that market at that time; provided, however, that if the banks selected by the Calculation Agent are not providing quotations in the manner described by this sentence, LIBOR shall be the same as the rate determined for the immediately preceding Interest Period. LIBOR will in no event be less than 0.00% per annum.

2. METHOD OF PAYMENT. By no later than 11:00 a.m. (New York City time) on the date on which any principal, of premium and Additional Amounts, if any, interest on any Note is due and payable, the Issuer shall irrevocably deposit with the Paying Agent sufficient to pay such principal, premium and Additional Amounts, if any, and/or interest (other than PIK Interest, which is payable as described above). The Issuer shall pay interest on the Notes and all applicable Amortization Amounts to the Persons who are registered holders of Notes at the close of business on March 15, June 15, September 15 and December 15 (whether or not a Business Day), as the case may be, immediately preceding the related Interest Payment Date, even if such Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. Principal, premium and Additional Amounts, if any, and interest (other than PIK Interest, which is payable as described above) on the Notes shall be payable at the office or agency of the Issuer maintained for such purpose or, at the option of the Issuer, payment of interest and premium, if any, may be made by check mailed to the Holders at their respective addresses set forth in the Note Register; provided that payment by wire transfer of immediately available funds shall be required with respect to principal (including Amortization Amounts, as applicable), premium and Additional Amounts, if any, and interest (other than PIK Interest, which is payable as described above) on all Global Notes and all other Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent at least 5 Business Days prior to the applicable payment date. Such payment shall be in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts.

3. PAYING AGENT, CALCULATION AGENT AND REGISTRAR. Initially, Wilmington Savings Fund Society, FSB, the Trustee under the Indenture, shall act as Paying Agent, Calculation Agent and Registrar. The Issuer may change any Paying Agent or Registrar without notice to the Holders. The Issuer may act in any such capacity.

4. INDENTURE. The Issuer issued the Notes under an Indenture, dated as of January 30, 2017 (as amended or supplemented from time to time, the "Indenture"), among the Issuer, the Guarantors named therein, the Trustee, the Collateral Agent, the Paying Agent, the Registrar and the Calculation Agent. This Note is one of a duly authorized issue of notes of the Issuer designated as its Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019. The terms of the Notes include those stated in the Indenture. The Notes are subject to all such terms, and Holders are referred to the Indenture for a statement of such terms. Any term used in this Note that is defined in the Indenture shall have the meaning assigned to it in the Indenture. To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

5.  REDEMPTION AND REPURCHASE. The Notes are subject to optional redemption, and may be the subject of an Event of Default Redemption, as further described in the Indenture. The Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Notes.

6.  GUARANTEE. To guarantee the due and punctual payment of the principal, premium, if any, and interest (including post-filing or post-petition interest) on the Notes and all other amounts payable by the Issuer under the Indenture and the Notes when and as the same shall be due and payable, whether at maturity, by acceleration or otherwise, according to the terms of the Notes and the Indenture, the Guarantors have unconditionally Guaranteed (and future guarantors shall unconditionally Guarantee), jointly and severally, such obligations on a senior secured basis.

7.  SECURITY. From the Issue Date, the Notes and the Guarantee secured by the Collateral, pursuant to the Security Documents. Reference is made to the Indenture the Security Documents for terms relating to such security, including release, termination and discharge thereof. The Issuer shall not be required to make any notation on this Note to reflect any grant of such security or any such release, termination discharge.

8.  DENOMINATIONS, TRANSFER, EXCHANGE. The Notes are in registered form without coupons in denominations of $2,000 integral multiples of $1.00 in excess thereof. The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents, and Holders shall be required to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any Note or portion of a Note selected for redemption, except for the unredeemed portion of any Note being redeemed purchase in part. The Issuer need not exchange or register the transfer of any Note during a period of 15 days before a mailing of notice of redemption of Notes or during a period between a Record Date and the next succeeding Interest Payment Date or Amortization Payment Date, applicable.

9.  PERSONS DEEMED OWNERS. The registered Holder of a Note may be treated as its owner for all purposes.

10. AMENDMENT, SUPPLEMENT AND WAIVER. The Indenture, the Note Guarantees or the Notes may be amended or supplemented as provided in the Indenture.

11. DEFAULTS AND REMEDIES. The Events of Default relating to the Notes are defined in Section 6.01 of the Indenture. Upon the occurrence of an Event of Default, the rights and obligations of the Issuer, the Guarantor, the Trustee and the Holders shall be as set forth in the applicable provisions of the Indenture.

12. AUTHENTICATION. This Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

13. GOVERNING LAW. THIS NOTE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

14. CUSIP AND ISIN NUMBERS. Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP and ISIN numbers to be

printed on the Notes, and the Trustee may use CUSIP and ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

15. ABBREVIATIONS. Customary abbreviations may be used in the name of Note Holder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act). Additional abbreviations may also be used though not identified in the preceding list

The Issuer shall furnish to any Holder upon written request and without charge a copy of the Indenture. Requests may be made to the Issuer at the following address:

ERP Iron Ore
c/o ERP Compliant Fuels LLC
15 Aedore Lane
Natural Bri Virgin 4578
Attention: Clarke
E Clark issito.org

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to: _____

(Insert assignee's legal name)

_____

(Insert assignee's soc. sec. or tax I.D. no.)

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint_____
to transfer this Note on the books of the Issuer. The agent may substitute another to act for him.

Date: _____

Your signature: _____

(Sign exactly as your name appears
on the face of this Note)

Signature Guarantor*_____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

CERTIFICATE TO BE DELIVERED UPON EXCHANGE OR REGISTRATION OF
TRANSFERS OF TRANSFER RESTRICTED NOTES

This certificate relates to $ _____ principal amount of Notes held in (check applicable
space) _____ book-entry or _____ definitive form by the undersigned.

The undersigned (check one box below):

☐   has requested the Trustee by written order to deliver in exchange for its beneficial interest in
    a Global Note held by the Depositary a Note or Notes in definitive, registered form of
    authorized denominations and an aggregate principal amount equal to its beneficial interest
    in such Global Note (or the portion thereof indicated above) in accordance with the
    Indenture; or

☐   has requested the Trustee by written order to exchange or register the transfer of a Note or
    Notes.

In connection with any transfer of any of the Notes evidenced by this certificate, the undersigned
confirms that such Notes are being transferred in accordance with its terms:

CHECK ONE BOX BELOW

(1)   ☐   to the Issuer or Subsidiary thereof; or

(2)   ☐   to the Registrar for registration in the name of the Holder, without transfer; or

(3)   ☐   pursuant to an effective registration statement under the Securities Act of 1933, as
          amended (the "Securities Act"); or

(4)   ☐   to a Person that the undersigned reasonably believes is a "qualified institutional
          buyer" (as defined in Rule 144A under the Securities Act ("Rule 144A")) that
          purchases for its own account or for the account of a qualified institutional buyer
          and to whom notice is given that such transfer is being made in reliance on Rule
          144A, in each case pursuant to and in compliance with Rule 144A; or

(5)   ☐   pursuant to offers and sales to non-U.S. persons that occur outside the United
          States within the meaning of Regulation S under the Securities Act (and if the
          transfer is being made prior to the expiration of the Distribution Compliance
          Period, the Notes shall be held immediately thereafter through Euroclear or
          Clearstream); or

(6)   ☐   to an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or
          (7) under the Securities Act) that has furnished to the Trustee a signed letter
          containing certain representations and agreements; or

(7)   ☐   Pursuant to Rule 144 under the Securities Act; or

11

[FILED: NEW YORK COUNTY CLERK 02/06/2020 04:03 PM] Case 1:20-cv-02043-LJL Document 1-3 Filed 03/06/20 Page 48 of 78 030034/2020

NYSCEF DOC. NO. 5                                                                                      RECEIVED NYSCEF: 02/06/2020

(8)  ☐  pursuant to another available exemption from registration under the Securities Act.

Unless one of the boxes is checked, the Trustee will refuse to register any of the Notes evidenced by this certificate in the name of any Person other than the registered Holder thereof; provided, however, that if box (5), (6), (7) or (8) is checked, the Issuer or the Trustee may require, prior to registering any such transfer of the Notes, such legal opinions, certifications and other information as the Issuer or the Trustee have reasonably requested to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act.

_____

_____
ur Signature

Date: _____

_____
Signature of
Guarantor

TO BE COMPLETED BY PURCHASER IF (4) ABOVE IS CHECKED.

The undersigned represents and warrants that it is purchasing this Note for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is a "qualified institutional buyer" within the meaning of Rule 144A, and is aware that the sale to it is being made in reliance on Rule 144A and acknowledges that it has received such information regarding the Issuer as the undersigned has requested pursuant to Rule 144A or has determined not to request such information and that it is aware that the transferor is relying upon the undersigned's foregoing representations in order to claim the exemption from registration provided by Rule 144A.

Dated: _____

_____

NOTICE:  To be executed by an
               executive officer
Name:
Title:

Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

12

[FILED: NEW YORK COUNTY CLERK 02/06/2020 04:13 PM] Case 1:20-cv-02043-LJL Document 1-3 Filed 03/06/20 Page 49 of 78 INDEX NO. 650054/2020

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 02/06/2020

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE

The initial outstanding principal amount of this Global Note is $0.00. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global Note or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount of this Global Note | Amount of increase in Principal Amount of this Global Note | Principal amount of this Global Note following such decrease or increase | Signature of authorized signatory of Trustee, Depositary or Custodian |
|---|---|---|---|---|

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION. THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION DATE") THAT IS 40 DAYS AFTER THE LATER OF THE ORIGINAL ISSUE DATE OF THE ISSUANCE OF THE NOTES HEREUNDER, THE ORIGINAL ISSUE DATE OF THE ISSUANCE AND THE DATE ON WHICH THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY) WAS FIRST OFFERED TO PERSONS OTHER THAN DISTRIBUTORS (AS DEFINED IN RULE 902 OF REGULATION S UNDER THE SECURITIES ACT) IN RELIANCE ON REGULATION S, ONLY (A) TO THE ISSUER OR ANY SUBSIDIARY THEREOF, (B) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A (D) PURSUANT TO OFFERS AND SALES TO NON-U.S. PERSONS THAT OCCUR OUTSIDE THE UNITED STATES WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, (E) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT THAT IS NOT A QUALIFIED INSTITUTIONAL BUYER AND THAT IS PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ANOTHER INSTITUTIONAL ACCREDITED INVESTOR, IN EACH CASE IN A MINIMUM PRINCIPAL AMOUNT OF SECURITIES OF AT LEAST $250,000 OR (F) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S AND THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSES (D), (E) OR (F) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/ OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. THIS LEGEND SHALL BE REMOVED UPON THE REQUEST OF THE HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE. BY ITS ACQUISITION HEREOF, THE HOLDER HEREOF REPRESENTS THAT IT IS NOT A U.S. PERSON NOR IS IT PURCHASING FOR THE ACCOUNT OF A U.S. PERSON AND IS ACQUIRING THIS SECURITY IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH REGULATION S UNDER THE SECURITIES ACT.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), NEW YORK, NEW YORK, TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO., OR TO

SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

TRANSFERS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO DTC, TO NOMINEES OF DTC OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE INDENTURE REFERRED TO ON THE REVERSE HEREOF.

BY ITS ACQUISITION OF THIS SECURITY, THE HOLDER HEREOF SHALL BE DEEMED TO HAVE REPRESENTED AND WARRANTED THAT EITHER (1) NO PORTION OF THE ASSETS USED BY SUCH HOLDER TO ACQUIRE OR HOLD THIS SECURITY CONSTITUTES THE ASSETS OF AN EMPLOYEE BENEFIT PLAN THAT IS SUBJECT TO TITLE I OF THE U.S. EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), OF A PLAN, INDIVIDUAL RETIREMENT ACCOUNT OR OTHER ARRANGEMENT THAT IS SUBJECT TO SECTION 4975 OF THE U.S. INTERNAL REVENUE CODE OF 1986, AS AMENDED ("CODE") OR PROVISIONS UNDER ANY OTHER FEDERAL, STATE, LOCAL, NON-U.S. OR OTHER LAWS OR REGULATIONS THAT ARE SIMILAR TO SUCH PROVISIONS OF ERISA OR THE CODE ("SIMILAR LAWS"), OR OF AN ENTITY WHOSE UNDERLYING ASSETS ARE CONSIDERED TO INCLUDE "PLAN ASSETS" OF ANY SUCH PLAN, ACCOUNT OR ARRANGEMENT, OR (2) THE ACQUISITION AND HOLDING OF THIS SECURITY WILL NOT CONSTITUTE A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE OR A SIMILAR VIOLATION UNDER ANY APPLICABLE SIMILAR LAWS.

2

CUSIP U29511 AA7

ISIN USU29511AA77

REGULATION S NOTE

Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019

No. RS-1

$0.00 plus all PIK Interest added to the principal
amount hereof

ERP IRON ORE, LLC

promises to pay to CEDE & CO. or registered assigns the principal sum set forth on the Schedule of
Exchanges of Interests in the Global Note attached hereto on December 31, 2019.

Interest Payment Dates: March 31, June 30, September 30 and December 31, beginning on, and
inclusive of, March 31, 2017

Amortization Payment Dates: March 31, June 30, September 30 and December 31, beginning on,
and inclusive of, June 30, 2017

Record Dates: March 15, June 15, September 15 and December 15

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: _____1/30/2017_____

ERP IRON ORE, LLC

By: _Jennifer E. Bell_
Name: Jennifer E. Bell
Title: Treasurer

CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture:

WILMINGTON SAVINGS FUND SOCIETY, FSB
As Trustee

By: _____
Authorized Signatory:

Dated: _____

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: _____

ERP IRON ORE, LLC

By: _____
Name:
Title:

CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture:

WILMINGTON SAVINGS FUND SOCIETY, FSB
as Trustee

By: _____
Authorized Signatory:

Dated: ____1/30/2017____

4

[Reverse Side of Note]

Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

1. INTEREST AND AMORTIZATION AMOUNTS. (a) ERP Iron Ore, LLC (the "Issuer") promises to pay interest on the principal amount of this Note at a rate equal to the sum of (i) LIBOR plus (ii) 8.00%, reset quarterly, as determined by the Calculation Agent, from the above date until maturity. The Issuer will pay interest quarterly in arrears on March 31, June 30, September 30 and December 31 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each an "Interest Payment Date"). Interest on the Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance; provided that if there is no existing Default in the payment of interest, or if this Note is authenticated between a record date referred to on the face hereof and the next succeeding Interest Payment Date, interest shall accrue from such next succeeding Interest Payment Date. Interest shall be calculated on the basis of a 360 day year and the actual number of days elapsed. The Issuer may elect, prior to the beginning of the first Interest Period, to pay some of such interest as PIK Interest. If the Issuer elects to pay PIK Interest, interest on the Notes will be paid entirely (subject to the following sentence) by issuing PIK Notes or adding accrued and unpaid interest as of such Interest Payment Date to the principal amount of the Global Notes then outstanding ("PIK Interest"). In the event that the Issuer is entitled to and elects to pay partial PIK Interest for an Interest Period, each Holder shall be entitled to receive Cash Interest in respect of the applicable percentage of the principal amount of the Notes held by such Holder on the relevant Record Date and PIK Interest in respect of the remaining percentage of principal amount of the Notes held by such Holder on the relevant Record Date. Following an increase in the principal amount of the Global Notes as a result of a PIK Payment, the Global Notes will bear interest on such increased principal amount from and after the date of such PIK Payment. Unless the context requires otherwise, references to Notes or the "principal" or the "principal amount" of Notes, including for purposes of calculating any redemption price or redemption amount, include any increase in the principal amount of the Global Notes as a result of a PIK Payment. The Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at a rate that is 2.0% per annum in excess of the rate then in effect; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Amounts (without regard to any applicable grace periods) from time to time on demand at the same rate to the extent lawful. The Issuer promises to pay Amortization Amounts on each Amortization Payment Date as set forth in Section 4.01 of the Indenture.

b. The rate of interest shall be reset on the first day of each Interest Period other than the Initial Interest Period.

c. On or before each Calculation Date, the Calculation Agent shall determine the Applicable Rate and notify the Trustee and the Paying Agent.

d. The Calculation Agent shall, upon the written request of any Holder of the Notes, provide the interest rate then in effect with respect to the Notes.

5

[FILED: NEW YORK COUNTY CLERK 02/06/2020 04:10 PM]  Case 1:20-cv-02043-LJL  Document 1-3  Filed 03/06/20  Page 56 of 78  INDEX NO. 650854/2020

NYSCEF DOC. NO. 5                                                                                    RECEIVED NYSCEF: 02/06/2020

e.  All percentages resulting from any calculation of any interest rate for the Notes shall be rounded, if necessary, to the nearest one hundred thousandth of a percentage point, with five one-millionths of a percentage point rounded upward (e.g., 3.876545% (or .03876545) would be rounded to 3.87655% (or .0387655)), and all United States dollar amounts shall be rounded to the nearest cent, with one-half cent being rounded upward.

f.  Set forth below is a summary of certain of the defined terms used in this Note relating to the calculation of interest on the Notes:

"Business Day" means each day that is not a Saturday, Sunday or other day on which banking institutions in New York, New York are authorized or required by law to close.

"Calculation Date" means, with respect to any Interest Determination Date, the earlier of (i) the tenth calendar day after such Interest Determination Date or, if any such day is not a Business Day, the next succeeding Business Day, and (ii) the Business Day immediately preceding the applicable Interest Payment Date or the Maturity date, as the case may be.

"Interest Determination Date" for an Interest Period shall be the second Business Day preceding the first day of such Interest Period (or, in the case of the Initial Interest Period, the second Business Day preceding a date of the original issuance of Notes hereunder).

"Initial Interest Period" means the date of the issuance of the initial Notes issued under the Indenture through March 30, 2017.

"Interest Period" means the period commencing on an Interest Payment Date (or, in the case of the Initial Interest Period, commencing on the date of the issuance of the Notes under the Indenture) and ending on the day preceding the next following Interest Payment Date or the redemption date, as applicable.

"LIBOR" means, with respect to any Interest Determination Date, the London interbank offered rate as administered by ICE Benchmark Administration Limited (or any other Person that takes over the administration of such rate) for deposits in immediately available funds in United States dollars having a maturity of three months as displayed on the Bloomberg screen page that displays such rate, or on the appropriate page or screen of such other comparable information service that publishes such rate from time to time as selected by the Calculation Agent in its discretion (and in consultation with the Issuer) on that Interest Determination Date. If no rate appears, in respect of that Interest Determination Date, the Calculation Agent shall request the principal London offices of each of four major reference banks in the London interbank market, as selected by the Calculation Agent, to provide the Calculation Agent with its offered quotation for deposits in United States dollars for the period of three months, commencing on the second London Business Day following such Interest Determination Date, to prime banks in the London interbank market at approximately 11:00 a.m., London time, on that Interest Determination Date and in a principal amount that is representative for a single transaction in United States dollars in that market at that time. If at least two quotations are provided, then LIBOR on that Interest Determination Date shall be the arithmetic mean of those quotations. If fewer than two quotations are provided, then LIBOR on the

6

[FILED: NEW YORK COUNTY CLERK 02/06/2020 04:03 PM]
NYSCEF DOC. NO. 5                                                                RECEIVED NYSCEF: 02/06/2020

Interest Determination Date shall be the arithmetic mean of the rates quoted at approximately 11:00 a.m., in the City of New York, on the Interest Determination Date by three major banks in the City of New York selected by the Calculation Agent for loans in United States dollars to leading European banks, having a three-month maturity and in a principal amount that is representative for a single transaction in United States dollars in that market at that time; provided, however, that if the banks selected by the Calculation Agent are not providing quotations in the manner described by this sentence, LIBOR shall be the same as the rate determined for the immediately preceding Interest Period. LIBOR will in no event be less than 0.00% per annum.

2.      METHOD OF PAYMENT. By no later than 11:00 a.m. (New York City time) on the date on which any principal of, premium and Additional Amounts, if any, or interest on any Note is due and payable, the Issuer shall irrevocably deposit with the Paying Agent money sufficient to pay such principal, premium and Additional Amounts, if any, and/or interest (other than PIK Interest, which is payable as described above). The Issuer shall pay interest on the Notes and all applicable Amortization Amounts to the Persons who are registered holders of Notes at the close of business on March 15, June 15, September 15 and December 15 (whether or not a Business Day), as the case may be, immediately preceding the related Interest Payment Date, even if such Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. Principal, premium and Additional Amounts, if any, and interest (other than PIK Interest, which is payable as described above) on the Notes shall be payable at the office or agency of the Issuer maintained for such purpose or, at the option of the Issuer, payment of interest and premium, if any, may be made by check mailed to the Holders at their respective addresses set forth in the Note Register; provided that payment by wire transfer of immediately available funds shall be required with respect to principal (including Amortization Amounts), as applicable, premium and Additional Amounts, if any, and interest (other than PIK Interest, which is payable as described above) on all Global Notes and all other Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent at least two Business Days prior to the applicable payment date. Such payment shall be in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts.

3.      PAYING AGENT, CALCULATION AGENT AND REGISTRAR. Initially, Wilmington Savings Fund Society, FSB, the Trustee under the Indenture, shall act as Paying Agent, Calculation Agent and Registrar. The Issuer may change any Paying Agent or Registrar without notice to the Holders. The Issuer may act in any such capacity.

4.      INDENTURE. The Issuer issued the Notes under an Indenture, dated as of January 30, 2017 (as amended or supplemented from time to time, the "Indenture"), among the Issuer, the Guarantors named therein, the Trustee, the Collateral Agent, the Paying Agent, the Registrar and the Calculation Agent. This Note is one of a duly authorized issue of notes of the Issuer designated as its Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019. The terms of the Notes include those stated in the Indenture. The Notes are subject to all such terms, and Holders are referred to the Indenture for a statement of such terms. Any term used in this Note that is defined in the Indenture shall have the meaning assigned to it in the Indenture. To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

5. REDEMPTION AND REPURCHASE. The Notes are subject to optional redemption, and may be the subject of an Event of Default Redemption, as further described in the Indenture. The Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Notes.

6. GUARANTEE. To guarantee the due and punctual payment of the principal, premium, if any, and interest (including post-filing or post-petition interest) on the Notes and all other amounts payable by the Issuer under the Indenture and the Notes when and as the same shall be due and payable, whether at maturity, by acceleration or otherwise, according to the terms of the Notes and the Indenture, the Guarantors have unconditionally Guaranteed (and future guarantors shall unconditionally Guarantee), jointly and severally, such obligations on a senior secured basis.

7. SECURITY. From the Issue Date, the Notes and the Guarantees secured by the Collateral, pursuant to the Security Documents. Reference is made to the Indenture the Security Documents for terms relating to such security, including release, termination and discharge thereof. The Issuer shall not be required to make any notation on this Note to reflect any grant of such security or any such release, termination or discharge.

8. DENOMINATIONS, TRANSFER, EXCHANGE. The Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1.00 in excess thereof. The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents, and Holder shall be required to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any Note or portion of a Note selected for redemption, except for the unredeemed portion of any Note being redeemed or purchased in part. The Issuer need not exchange or register the transfer of any Note during a period of 15 days before a mailing of notice of redemption of Notes or during a period between a Record Date and the next succeeding Interest Payment Date or Amortization Payment Date, if applicable.

9. PERSONS DEEMED OWNERS. The registered Holder of a Note may be treated as its owner for all purposes.

10. AMENDMENT, SUPPLEMENT AND WAIVER. The Indenture, the Note Guarantees or the Notes may be amended or supplemented as provided in the Indenture.

11. DEFAULTS AND REMEDIES. The Events of Default relating to the Notes are defined in Section 6.01 of the Indenture. Upon the occurrence of an Event of Default, the rights and obligations of the Issuer, the Guarantor, the Trustee and the Holders shall be as set forth in the applicable provisions of the Indenture.

12. AUTHENTICATION. This Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

13. GOVERNING LAW. THIS NOTE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

14. CUSIP AND ISIN NUMBERS. Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP and ISIN numbers to be

8

printed on the Notes, and the Trustee may use CUSIP and ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

15. ABBREVIATIONS. Customary abbreviations may be used in the name of Note Holder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act). Additional abbreviations may also be used though not identified in the preceding list

The Issuer shall furnish to any Holder upon written request and without charge a copy of the Indenture. Requests may be made to the Issuer at the following address:

ERP Iron Ore, LLC
c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578
Attention: Tom Clarke
Email: Tom.Clarke@kissito.org

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to: _____

(Insert assignee's legal name)

_____

(Insert assignee's soc. sec. or tax I.D. no.)

_____

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint_____
to transfer this Note on the books of the Issuer. The agent may substitute another to act for him.

Date: _____

Your signature: _____

(Sign exactly as your name appears
on the face of this Note)

Signature Guarante _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

10

[FILED: NEW YORK COUNTY CLERK 02/06/2020 04:30 PM] Case 1:20-cv-02043-LJL Document 1-3 Filed 03/06/20 Page 61 of 78 INDEX NO. 650654/2020

NYSCEF DOC. NO. 5                                                                RECEIVED NYSCEF: 02/06/2020

CERTIFICATE TO BE DELIVERED UPON EXCHANGE OR REGISTRATION OF
TRANSFERS OF TRANSFER RESTRICTED NOTES

This certificate relates to $ _____ principal amount of Notes held in (check applicable space) _____ book-entry or _____ definitive form by the undersigned.

The undersigned (check one box below):

☐    has requested the Trustee by written order to deliver in exchange for its beneficial interest in a Global Note held by the Depositary a Note or Notes in definitive, registered form of authorized denominations and an aggregate principal amount equal to its beneficial interest in such Global Note (or the portion thereof indicated above) in accordance with the Indenture; or

☐    has requested the Trustee by written order to exchange or register the transfer of a Note or Notes.

In connection with any transfer of any of the Notes evidenced by this certificate, the undersigned confirms that such Notes are being transferred in accordance with its terms:

CHECK ONE BOX BELOW

(1)    ☐    to the Issuer or Subsidiary thereof; or

(2)    ☐    to the Registrar for registration in the name of the Holder, without transfer; or

(3)    ☐    pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "Securities Act"); or

(4)    ☐    to a Person that the undersigned reasonably believes is a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act ("Rule 144A")) that purchases for its own account or for the account of a qualified institutional buyer and to whom notice is given that such transfer is being made in reliance on Rule 144A, in each case pursuant to and in compliance with Rule 144A; or

(5)    ☐    pursuant to offers and sales to non-U.S. persons that occur outside the United States within the meaning of Regulation S under the Securities Act (and if the transfer is being made prior to the expiration of the Distribution Compliance Period, the Notes shall be held immediately thereafter through Euroclear or Clearstream); or

(6)    ☐    to an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) under the Securities Act) that has furnished to the Trustee a signed letter containing certain representations and agreements; or

(7)    ☐    Pursuant to Rule 144 under the Securities Act; or

COPY

(8)     ☐     pursuant to another available exemption from registration under the Securities Act.

Unless one of the boxes is checked, the Trustee will refuse to register any of the Notes evidenced by this certificate in the name of any Person other than the registered Holder thereof; provided, however, that if box (5), (6), (7) or (8) is checked, the Issuer or the Trustee may require, prior to registering any such transfer of the Notes, such legal opinions, certifications and other information as the Issuer or the Trustee have reasonably requested to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act.

_____
Your Signature

Date: _____          _____
                                         Signature of
                                         Guarantor

TO BE COMPLETED BY PURCHASER IF (4) ABOVE IS CHECKED.

        The undersigned represents and warrants that it is purchasing this Note for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is a "qualified institutional buyer" within the meaning of Rule 144A, and is aware that the sale to it is being made in reliance on Rule 144A and acknowledges that it has received such information regarding the Issuer as the undersigned has requested pursuant to Rule 144A or has determined not to request such information and that it is aware that the transferor is relying upon the undersigned's foregoing representations in order to claim the exemption from registration provided by Rule 144A.

Dated: _____          _____
                                          NOTICE:  To be executed by an
                                                   executive officer
                                          Name:
                                          Title:

Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

12

FILED: NEW YORK COUNTY CLERK 02/06/2020 04:16 PM

NYSCEF DOC. NO. 5

Case 1:20-cv-02043-LJL   Document 1-3   Filed 03/06/20   Page 63 of 78.

RECEIVED NYSCEF: 02/06/2020

TO BE COMPLETED IF THE HOLDER REQUIRES AN EXCHANGE
FROM A REGULATION S GLOBAL NOTE TO AN UNRESTRICTED
GLOBAL NOTE, PURSUANT TO SECTION 2.2(d)(iii) OF APPENDIX
A TO THE INDENTURE

The undersigned represents and warrants that either:

☐   the undersigned is not a dealer (as defined in the Securities Act) and is a non-U.S. person
(within the meaning of Regulation S under the Securities Act) or

☐   the undersigned is not a dealer (as defined in the Securities Act) and is a U.S. person (within
the meaning of Regulation S under the Securities Act) who purchased interests in the Notes
pursuant to an exemption from, or in a transaction not subject to, the registration
requirements under the Securities Act; or

☐   the undersigned is a dealer (as defined in the Securities Act) and the interest of the
undersigned in this Note does not constitute the whole or a part of an unsold allotment to or
subscription by such dealer for the Notes.

Date: _____          _____

                                                    **Your Signature**

[FILED: NEW YORK COUNTY CLERK 02/06/2020 01:18 PM] INDEX NO. 650654/2020

NYSCEF DOC. NO. 5                                                                RECEIVED NYSCEF: 02/06/2020

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE

The initial outstanding principal amount of this Global Note is $0.00. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global Note or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount of this Global Note | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following such decrease or increase | Signature of authorized signatory of Trustee, Depositary or Custodian |
|---|---|---|---|---|

[FILED: NEW YORK COUNTY CLERK 02/06/2020 01:16 PM] INDEX NO. 650654/2020

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 02/06/2020

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION. THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION DATE") THAT IS ONE YEAR AFTER THE LATER OF THE ORIGINAL ISSUE DATE OF THE ISSUANCE OF THE NOTES HEREUNDER AND THE LAST DATE ON WHICH THE ISSUER OR ANY AFFILIATE OF THE ISSUER WERE THE OWNER OF THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY) ONLY (A) TO THE ISSUER OR ANY SUBSIDIARY THEREOF, (B) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A"), TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER WHO NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (D) PURSUANT TO OFFERS AND SALES TO NON-U.S. PERSONS THAT OCCUR OUTSIDE THE UNITED STATES WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, (E) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT THAT IS NOT A QUALIFIED INSTITUTIONAL BUYER AND THAT IS PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ANOTHER INSTITUTIONAL ACCREDITED INVESTOR, IN EACH CASE IN A MINIMUM PRINCIPAL AMOUNT OF SECURITIES OF AT LEAST $250,000 OR (F) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S AND THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSES (D), (E) OR (F) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/ OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. THIS LEGEND SHALL BE REMOVED UPON THE REQUEST OF THE HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), NEW YORK, NEW YORK, TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO., OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

FILED: NEW YORK COUNTY CLERK 02/06/2020
NYSCEF DOC. NO. 5
RECEIVED NYSCEF: 02/06/2020

TRANSFERS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO DTC, TO NOMINEES OF DTC OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE INDENTURE REFERRED TO ON THE REVERSE HEREOF.

BY ITS ACQUISITION OF THIS SECURITY, THE HOLDER THEREOF SHALL BE DEEMED TO HAVE REPRESENTED AND WARRANTED THAT EITHER (1) NO PORTION OF THE ASSETS USED BY SUCH HOLDER TO ACQUIRE OR HOLD THIS SECURITY CONSTITUTES THE ASSETS OF AN EMPLOYEE BENEFIT PLAN THAT IS SUBJECT TO TITLE I OF THE U.S. EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), OF A PLAN, INDIVIDUAL RETIREMENT ACCOUNT OR OTHER ARRANGEMENT THAT IS SUBJECT TO SECTION 4975 OF THE U.S. INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE" OR PROVISIONS UNDER ANY OTHER FEDERAL, STATE, LOCAL, NON-U.S. OR OTHER LAWS OR REGULATIONS THAT ARE SIMILAR TO SUCH PROVISIONS OF ERISA OR THE CODE ("SIMILAR LAWS"), OR OF AN ENTITY WHOSE UNDERLYING ASSETS ARE CONSIDERED TO INCLUDE "PLAN ASSETS" OF ANY SUCH PLAN, ACCOUNT OR ARRANGEMENT, OR (2) THE ACQUISITION AND HOLDING OF THIS SECURITY WILL NOT CONSTITUTE A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE OR A SIMILAR VIOLATION UNDER ANY APPLICABLE SIMILAR LAWS.

COPY

CUSIP 26886E AB9

ISIN US26886EAB92

## IAI NOTE

Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019

No. RIAI-1                                    $22,500,000.00 plus all PIK Interest added to
                                              the principal amount hereof

ERP IRON ORE, LLC

promises to pay to CEDE & CO. or registered assigns the principal sum set forth on the Schedule of Exchanges of Interests in the Global Note attached hereto December 31, 2019.

Interest Payment Dates: March 31, June 30, September 30 and December 31, beginning on, and inclusive of, March 31, 2017

Amortization Payment Dates: March 31, June 30, September 30 and December 31, beginning on, and inclusive of, June 30, 2017

Record Dates: March 15, June 15, September 15 and December 15

COPY

3

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: ___1/30/2017___

ERP IRON ORE, LLC

By: _Jennifer E. Bell_
Name: Jennifer E. Bell
Title: Treasurer

CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture:

WILMINGTON SAVINGS FUND SOCIETY,
FSB
Trustee

By: _____
Authorized Signatory:

Dated: _____

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: _____

ERP IRON ORE, LLC

By: _____
Name:
Title:

CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture:

WILMINGTON SAVINGS FUND SOCIETY, FSB

As Trustee

By: _____
Authorized Signatory:

Dated: ___1/3 2017___

4

[FILED: NEW YORK COUNTY CLERK 02/06/2020 11:04 AM]
NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 02/06/2020

[Reverse Side of Note]

Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

1.    INTEREST AND AMORTIZATION AMOUNTS. (a) ERP Iron Ore, LLC (the "Issuer") promises to pay interest on the principal amount of this Note at a rate equal to the sum of (i) LIBOR plus (ii) 8.00%, reset quarterly, as determined by the Calculation Agent, from the above date until maturity. The Issuer will pay interest quarterly in arrears on March 31, June 30, September 30 and December 31 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each an "Interest Payment Date"). Interest on the Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance; provided that if there is no existing Default in the payment of interest, and if this Note is authenticated between a record date referred to on the face hereof and the next succeeding Interest Payment Date, interest shall accrue from such next succeeding Interest Payment Date. Interest shall be calculated on the basis of a 360 day year and the actual number of days elapsed. The Issuer may elect, prior to the beginning of the first Interest Period, to pay some or all interest as PIK Interest. If the Issuer elects to pay PIK Interest, interest on the Notes will be paid entirely (subject to the following sentence) by issuing PIK Notes or adding accrued and unpaid interest to of such Interest Payment Date to the principal amount of the Global Notes then outstanding ("PIK Interest"). In the event that the Issuer is entitled to and elects to pay partial PIK Interest for an Interest Period, each Holder shall be entitled to receive Cash Interest in respect of the applicable percentage of the principal amount of the Notes held by such Holder on the relevant Record Date and PIK Interest in respect of the remaining percentage of the principal amount of the Notes held by such Holder on the relevant Record Date. Following an increase in the principal amount of the Global Notes as a result of a PIK Payment, the Global Notes will bear interest on such increased principal amount from and after the date of such PIK Payment. Unless the context requires otherwise, references to Notes or the "principal" or the "principal amount" of Notes, including for purposes of calculating any redemption price or redemption amount, include any increase in the principal amount of the Global Notes as a result of a PIK Payment. The Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at a rate that is 2.0% per annum in excess of the rate then in effect; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Amounts (without regard to any applicable grace periods) from time to time on demand at the same rate to the extent lawful. The Issuer promises to pay Amortization Amounts on each Amortization Payment Date as set forth in Section 4.01 of the Indenture.

    b.    The rate of interest shall be reset on the first day of each Interest Period other than the Initial Interest Period.

    c.    On or before each Calculation Date, the Calculation Agent shall determine the Applicable Rate and notify the Trustee and the Paying Agent.

    d.    The Calculation Agent shall, upon the written request of any Holder of the Notes, provide the interest rate then in effect with respect to the Notes.

[FILED: NEW YORK COUNTY CLERK 02/06/2020 02:04 PM] Case 1:20-cv-02043-LJL Document 1-3 Filed 03/06/20 Page 71 of 78. INDEX NO. 650654/2020

NYSCEF DOC. NO. 5                                                                    RECEIVED NYSCEF: 02/06/2020

e.  All percentages resulting from any calculation of any interest rate for the Notes shall be rounded, if necessary, to the nearest one hundred thousandth of a percentage point, with five one-millionths of a percentage point rounded upward (e.g., 3.876545% (or .03876545) would be rounded to 3.87655% (or .0387655)), and all United States dollar amounts shall be rounded to the nearest cent, with one-half cent being rounded upward.

f.  Set forth below is a summary of certain of the defined terms used in this Note relating to the calculation of interest on the Notes:

"Business Day" means each day that is not a Saturday, Sunday or other day on which banking institutions in New York, New York are authorized or required by law to close.

"Calculation Date" means, with respect to any Interest Determination Date, the earlier of (i) the tenth calendar day after such Interest Determination Date or, if any such day is not a Business Day, the next succeeding Business Day and (ii) the Business Day immediately preceding the applicable Interest Payment Date or the Maturity date, as the case may be.

"Interest Determination Date" for an Interest Period shall be the second Business Day preceding the first day of such Interest Period (or, in the case of the Initial Interest Period, the second Business Day preceding the date of the original issuance of Notes hereunder).

"Initial Interest Period" means the date of the issuance of the initial Notes issued under the Indenture through March 30, 2017.

"Interest Period" means the period commencing on an Interest Payment Date (or, in the case of the Initial Interest Period, commencing on the date of the issuance of the Notes under the Indenture) and ending on the day preceding the next following Interest Payment Date or the redemption date, as applicable.

"LIBOR" means, with respect to any Interest Determination Date, the London interbank offered rate as administered by ICE Benchmark Administration Limited (or any other Person that takes over the administration of such rate) for deposits in immediately available funds in United States dollars having a maturity of three months as displayed on the Bloomberg screen page that displays such rate, or on the appropriate page or screen of such other comparable information service that publishes such rate from time to time as selected by the Calculation Agent in its discretion (and in consultation with the Issuer) on that Interest Determination Date. If no rate appears, in respect of that Interest Determination Date, the Calculation Agent shall request the principal London offices of each of four major reference banks in the London interbank market, as selected by the Calculation Agent, to provide the Calculation Agent with its offered quotation for deposits in United States dollars for the period of three months, commencing on the second London Business Day following such Interest Determination Date, to prime banks in the London interbank market at approximately 11:00 a.m., London time, on that Interest Determination Date and in a principal amount that is representative for a single transaction in United States dollars in that market at that time. If at least two quotations are provided, then LIBOR on that Interest Determination Date shall be the arithmetic mean of those quotations. If fewer than two quotations are provided, then LIBOR on the

6

Interest Determination Date shall be the arithmetic mean of the rates quoted at approximately 11:00 a.m., in the City of New York, on the Interest Determination Date by three major banks in the City of New York selected by the Calculation Agent for loans in United States dollars to leading European banks, having a three-month maturity and in a principal amount that is representative for a single transaction in United States dollars in that market at that time; provided, however, that if the banks selected by the Calculation Agent are not providing quotations in the manner described by this sentence, LIBOR shall be the same as the rate determined for the immediately preceding Interest Period. LIBOR will in no event be less than 0.00% per annum.

2.    METHOD OF PAYMENT. By no later than 11:00 a.m. (New York City time) on the date on which any principal of, premium and Additional Amounts, if any, interest on any Note is due and payable, the Issuer shall irrevocably deposit with the Paying Agent sufficient to pay such principal, premium and Additional Amounts, if any, and/or interest (other than PIK Interest, which is payable as described above). The Issuer shall pay interest on the Notes and all applicable Amortization Amounts to the Persons who are registered holders of Notes at the close of business on March 15, June 15, September 15 and December 15 (whether or not a Business Day), as the case may be, immediately preceding the related Interest Payment Date, even if such Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. Principal, premium and Additional Amounts, if any, and interest (other than PIK Interest, which is payable as described above) on the Notes shall be payable at the office or agency of the Issuer maintained for such purpose or, at the option of the Issuer, payment of interest and premium, if any, may be made by check mailed to the Holders at their respective addresses set forth in the Note Register; provided that payment by wire transfer of immediately available funds shall be required with respect to principal (including Amortization Amounts, as applicable), premium and Additional Amounts, if any, and interest (other than PIK Interest, which is payable as described above) on all Global Notes and all other Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent at least 1 Business Days prior to the applicable payment date. Such payment shall be in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts.

3.    PAYING AGENT, CALCULATION AGENT AND REGISTRAR. Initially, Wilmington Savings Fund Society, FSB, the Trustee under the Indenture, shall act as Paying Agent, Calculation Agent and Registrar. The Issuer may change any Paying Agent or Registrar without notice to the Holders. The Issuer may act in any such capacity.

4.    INDENTURE. The Issuer issued the Notes under an Indenture, dated as of January 30, 2017 (as amended or supplemented from time to time, the "Indenture"), among the Issuer, the Guarantors named therein, the Trustee, the Collateral Agent, the Paying Agent, the Registrar and the Calculation Agent. This Note is one of a duly authorized issue of notes of the Issuer designated as its Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019. The terms of the Notes include those stated in the Indenture. The Notes are subject to all such terms, and Holders are referred to the Indenture for a statement of such terms. Any term used in this Note that is defined in the Indenture shall have the meaning assigned to it in the Indenture. To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

5. REDEMPTION AND REPURCHASE. The Notes are subject to optional redemption, and may be the subject of an Event of Default Redemption, as further described in the Indenture. The Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Notes.

6. GUARANTEE. To guarantee the due and punctual payment of the principal, premium, if any, and interest (including post-filing or post-petition interest) on the Notes and all other amounts payable by the Issuer under the Indenture and the Notes when and as the same shall be due and payable, whether at maturity, by acceleration or otherwise, according to the terms of the Notes and the Indenture, the Guarantors have unconditionally Guaranteed (and future guarantors shall unconditionally Guarantee), jointly and severally, such obligations on senior secured basis.

7. SECURITY. From the Issue Date, the Notes and the Guarantee secured by the Collateral, pursuant to the Security Documents. Reference is made to the Indenture the Security Documents for terms relating to such security, including release, termination and discharge thereof. The Issuer shall not be required to make any notation on this Note to reflect any grant of such security or any such release, termination discharge.

8. DENOMINATIONS, TRANSFER, EXCHANGE. The Notes are in registered form without coupons in denominations of $2,000 integral multiples of $1.00 in excess thereof. The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents, and Holder shall be required to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any Note or portion of a Note selected for redemption, except for the unredeemed portion of any Note being redeemed purchase in part. The Issuer need not exchange or register the transfer of any Note during a period of 15 days a mailing of notice of redemption of Notes or during a period between a Record Date and the next succeeding Interest Payment Date or Amortization Payment Date, applicable.

9. PERSONS DEEMED OWNERS. The registered Holder of a Note may be treated as its owner for all purposes.

10. AMENDMENT, SUPPLEMENT AND WAIVER. The Indenture, the Note Guarantees or the Notes may be amended or supplemented as provided in the Indenture.

11. DEFAULTS AND REMEDIES. The Events of Default relating to the Notes are defined in Section 6.01 of the Indenture. Upon the occurrence of an Event of Default, the rights and obligations of the Issuer, the Guarantor, the Trustee and the Holders shall be as set forth in the applicable provisions of the Indenture.

12. AUTHENTICATION. This Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

13. GOVERNING LAW. THIS NOTE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

14. CUSIP AND ISIN NUMBERS. Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP and ISIN numbers to be

8

printed on the Notes, and the Trustee may use CUSIP and ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

15.    ABBREVIATIONS. Customary abbreviations may be used in the name of Note Holder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act). Additional abbreviations may also be used though not identified in the preceding list

         The Issuer shall furnish to any Holder upon written request and without charge a copy of the Indenture. Requests may be made to the Issuer at the following address:

ERP Iron Ore, LLC
c/o ERP Compliant Fuels, LLC
15 Achedore Lane
Natural Bridge, Virginia 24578
Attention: Tom Clarke
Email: Tom.Clarke@kissito.org

9

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to: _____

(Insert assignee's legal name)

_____

(Insert assignee's soc. sec. or tax I.D. no.)

_____

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint_____
to transfer this Note on the books of the Issuer. The agent may substitute another to act for him.

Date: _____

Your signature: _____

(Sign exactly as your name appears
on the face of this Note)

Signature Guarantee: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

10

FILED: NEW YORK COUNTY CLERK 02/06/2020 04:16 PM

NYSCEF DOC. NO. 5

Case 1:20-cv-02043-LJL Document 1-3 Filed 03/06/20 Page 76 of 78.

RECEIVED NYSCEF: 02/06/2020

## CERTIFICATE TO BE DELIVERED UPON EXCHANGE OR REGISTRATION OF
## TRANSFERS OF TRANSFER RESTRICTED NOTES

This certificate relates to $ _____ principal amount of Notes held in (check applicable space) _____ book-entry or _____ definitive form by the undersigned.

The undersigned (check one box below):

☐  has requested the Trustee by written order to deliver in exchange for its beneficial interest in a Global Note held by the Depositary a Note or Notes in definitive, registered form of authorized denominations and an aggregate principal amount equal to its beneficial interest in such Global Note (or the portion thereof indicated above) in accordance with the Indenture; or

☐  has requested the Trustee by written order to exchange or register the transfer of a Note or Notes.

In connection with any transfer of any of the Notes evidenced by this certificate, the undersigned confirms that such Notes are being transferred in accordance with its terms:

CHECK ONE BOX BELOW

(1)   ☐   to the Issuer or Subsidiary thereof; or

(2)   ☐   to the Registrar for registration in the name of the Holder, without transfer; or

(3)   ☐   pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "Securities Act"); or

(4)   ☐   to a Person that the undersigned reasonably believes is a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act ("Rule 144A")) that purchases for its own account or for the account of a qualified institutional buyer and to whom notice is given that such transfer is being made in reliance on Rule 144A, in each case pursuant to and in compliance with Rule 144A; or

(5)   ☐   pursuant to offers and sales to non-U.S. persons that occur outside the United States within the meaning of Regulation S under the Securities Act (and if the transfer is being made prior to the expiration of the Distribution Compliance Period, the Notes shall be held immediately thereafter through Euroclear or Clearstream); or

(6)   ☐   to an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) under the Securities Act) that has furnished to the Trustee a signed letter containing certain representations and agreements; or

(7)   ☐   Pursuant to Rule 144 under the Securities Act; or

11

(8)    ☐    pursuant to another available exemption from registration under the Securities Act.

Unless one of the boxes is checked, the Trustee will refuse to register any of the Notes evidenced by this certificate in the name of any Person other than the registered Holder thereof; provided, however, that if box (5), (6), (7) or (8) is checked, the Issuer or the Trustee may require, prior to registering any such transfer of the Notes, such legal opinions, certifications and other information as the Issuer or the Trustee have reasonably requested to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act.

_____

Your Signature

Date: _____        _____

Signature of
Guarantor

TO BE COMPLETED BY PURCHASER IF (4) ABOVE IS CHECKED.

The undersigned represents and warrants that it is purchasing this Note for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is a "qualified institutional buyer" within the meaning of Rule 144A, and is aware that the sale to it is being made in reliance on Rule 144A and acknowledges that it has received such information regarding the Issuer as the undersigned has requested pursuant to Rule 144A or has determined not to request such information and that it is aware that the transferor is relying upon the undersigned's foregoing representations in order to claim the exemption from registration provided by Rule 144A.

Dated: _____        _____

NOTICE:  To be executed by an
                 executive officer
Name:
Title:

Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

12

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE

The initial outstanding principal amount of this Global Note is $22,500,000.00. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global Note or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount of this Global Note | Amount of increase in Principal Amount of this Global Note | Principal amount of this Global Note following decrease or increase | Signature of authorized signatory of Trustee, Depositary or Custodian |
|---|---|---|---|---|
| | | | | |

13