# EXHIBIT A

# (Part 3 of 3)

# EXHIBIT C

EXECUTION VERSION

## INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**THIS INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE,** dated as of November 29, 2019 (this *"Instrument"*), is made by and among Nauni Jo Manty, solely in her capacity as Chapter 7 bankruptcy trustee for ERP Iron Ore, LLC in case No. 18-50378 (Bankr. D. Minn.) (the *"Chapter 7 Trustee"*); the Holders listed on the signature pages hereto (the *"Majority Holders"*); and UMB Bank, N.A. (collectively, the *"Parties"*).

## RECITALS

WHEREAS, certain Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019 (the *"Notes"*) were issued by the Issuer under that Indenture, dated as of January 30, 2017 (as modified, supplemented and/or amended and in effect on the date hereof, the *"Indenture"*), among ERP Iron Ore, LLC, as Issuer (the *"Issuer"*), the Guarantors Listed on the Signature Pages [T]hereto, and Wilmington Savings Fund Society, FSB, as Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent, and are outstanding;

WHEREAS, the Notes are secured, in whole or in part, pursuant to (A) that Security Agreement made by ERP Iron Ore, LLC and certain other Grantors party [t]hereto from time to time, in favor of Wilmington Savings Fund Society, FSB as Collateral Agent, dated as of January 30, 2017 (the *"Security Agreement"*); and (B) that Guarantee Agreement made by Thomas Matthew Clarke, Ana Mercedes Clarke, ERP Iron Ore, LLC, and ERP Compliant Coke, LLC, in favor of Wilmington Savings Fund Society, FSB, as Trustee under the Indenture governing the Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019 issued by ERP Iron Ore, LLC, and each Holder of Notes, dated as of January 30, 2017 (the *"Guarantee Agreement"*);

WHEREAS, capitalized terms not defined herein shall have the meanings ascribed in the Indenture, or, if the context so indicates, the Security Agreement or the Guarantee Agreement;

WHEREAS, on July 17, 2018, an Event of Default occurred pursuant to Section 6.01(a)(9)(i)(B) of the Indenture upon the Issuer's consent to an order for relief in *In re ERP Iron Ore, LLC*, Case No. 18-50378 (Bankr. D. Minn.). On December 3, 2018, the Chapter 7 Trustee was appointed chapter 7 trustee for the Issuer in that proceeding;

WHEREAS, the Chapter 7 Trustee thus is the successor to the Issuer under the Indenture;

WHEREAS, Wilmington Savings Fund Society, FSB, serves as Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement, as applicable;

WHEREAS, the Majority Holders hold a majority in aggregate principal amount of the outstanding Notes as set forth in Schedule A hereto;

WHEREAS, as used in section 7.08 of the Indenture, entitled *"Replacement of Trustee"* the term "Trustee" also includes each Collateral Agent, Paying Agent, Registrar and Calculation Agent pursuant to section 7.08(f) thereof;

WHEREAS, the Majority Holders have a right under section 7.08(a) of the Indenture to remove Wilmington Savings Fund Society, FSB, as Trustee (the *"Prior Trustee"*), Collateral

Agent, Paying Agent, Registrar and Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement and intend hereby to make such removal;

WHEREAS, the Chapter 7 Trustee, as successor to the Issuer, has the right under section 7.08(b) of the Indenture to appoint promptly a successor Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement upon removal of the Prior Trustee;

WHEREAS, the Majority Holders also have a right under Section 7.08(b) to remove and replace any such successor Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent any time within one year after the successor trustee takes office;

WHEREAS, the Chapter 7 Trustee and the Majority Holders desire that UMB Bank, N.A. be appointed as successor Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement;

WHEREAS, UMB Bank, N.A. desires to accept appointment as successor Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement, subject to the terms and conditions contained in this Instrument;

WHEREAS, nothing in this Instrument shall affect the Prior Trustee's rights under Section 7.07 of the Indenture to payment of its outstanding fees and expenses, including attorneys' fees, or any of the Prior Trustee's Liens related thereto; and

WHEREAS, the effective date of this Instrument is November 29, 2019 (the *"Effective Date"*).

NOW, THEREFORE, in consideration of the covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.    Removal of the Prior Trustee.   The Majority Holders hereby remove Wilmington Savings Fund Society, FSB, as Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement pursuant to sections 7.08(a) and (f) of the Indenture.

2.    Appointment of the Successor Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent.   The Chapter 7 Trustee, with the consent of the Majority Holders, hereby appoints UMB Bank, N.A. as Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement pursuant to sections 7.08(b) and (f) of the Indenture.  UMB Bank, N.A. is vested with all rights, powers, trusts, privileges, duties and obligations of the Trustee, Paying Agent, Registrar, and Calculation Agent, under the Indenture, the Security Agreement, and the Guarantee Agreement.

3.    Acceptance of Appointment.   UMB Bank, N.A. hereby accepts appointment as Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement, and accepts all rights, powers, privileges, duties, obligations, and trusts of Wilmington Savings Fund Society, FSB as the Trustee, Collateral

Agent, Paying Agent, Registrar, and Calculation Agent under and pursuant to the Indenture, the Security Agreement, and the Guarantee Agreement, and agrees to be bound by all terms of the Indenture, the Security Agreement, and the Guarantee Agreement, and subject to the terms and conditions set forth in this Instrument.

4. _Catch-All Appointment_. The Chapter 7 Trustee and Majority Holders hereby appoint, and UMB Bank, N.A. hereby accepts, appointment of UMB Bank, N.A., as Trustee, Collateral Agent, Paying Agent, Registrar, Calculation Agent, or in any other capacity, as applicable, under any other documents or agreements of which Wilmington Savings Fund Society, FSB is a party that is necessary for UMB Bank, N.A. to perform its duties and obligations as Trustee, Collateral Agent, Paying Agent, Registrar, or Calculation Agent under the Indenture, the Security Agreement, and the Guarantee Agreement, or with respect to the Notes.

5. _UMB Bank, N.A. Warranty_. UMB Bank, N.A. hereby warrants that it satisfies the requirements of section 7.10 of the Indenture.

6. _Majority Holders Warranty_. Each Majority Holder, individually, warrants that it is a Holder of Notes in the principal amount listed on Schedule A hereto and that the signatory on behalf of such Holder is duly authorized.

7. _Liability_. The undersigned agree that nothing contained herein or otherwise shall constitute an assumption by UMB Bank, N.A. of any liability of the Prior Trustee arising out of any breach by the Prior Trustee in the performance or non-performance of Wilmington Savings Fund Society, FSB's duties as Trustee, Collateral Agent, Paying Agent, Registrar, or Calculation Agent under the Indenture, the Security Agreement, or the Guarantee Agreement.

8. _Corporate Trust Office_. All references in the Indenture and related documents to "corporate trust office" or other similar references to the corporate trust office of the Trustee shall be deemed to refer to the corporate trust office of UMB Bank, N.A., 120 South Sixth Street, Suite 1400, Minneapolis, Minnesota 55402, Attention: Gordon Gendler, Email: gordon.gendler@umb.com, Telephone: (612) 337-7002.

9. _Further Assurances_. The Parties hereto agree to take reasonable action to confirm, evidence and perfect the Collateral Agent's rights in, or with respect to, the collateral, securing the Notes. Each Party reserves the right to provide a copy of any notice issued hereunder to any Guarantor, Grantor, or other interested party.

10. _Effective Date_. This Instrument shall be effective as of the Effective Date.

11. _Governing Law_. This Instrument shall be governed by and construed in accordance with the laws of the State of New York.

12. _Counterparts_. This Instrument may be executed in any number of counterparts, each of which will be an original, but such counterparts shall together constitute one and the same instrument. Copies, telecopies, facsimiles, electronic files and other reproductions of original executed documents shall be deemed to be authentic and valid counterparts of such original documents for all purposes, including the filing of any claim, action or suit in the appropriate court of law. Each of the undersigned Parties hereby represents and warrants that he/she is duly

authorized and permitted to execute this Instrument on behalf of his/her respective institution in the capacity describe and that this Instrument constitutes its legal, valid, binding and enforceable obligation.

13.   <u>Severability</u>.  In the event that any provisions of this Instrument shall be deemed invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision of this Instrument.

14.   <u>Entire Agreement</u>.  This Instrument sets forth the entire agreement of the parties with respect to its subject matter, and supersedes and replaces any and all prior contemporaneous warranties, representations or agreements, whether oral or written, with respect to the subject matter of this Instrument other than those contained in the Instrument.

15.   <u>Amendments</u>.  This Instrument may not be amended or modified except by agreement set forth in a written memorandum executed by all Parties.

16.   <u>Delivery to Prior Trustee</u>:  The Majority Holders shall deliver a copy of this executed Instrument to Wilmington Savings Fund Society, FSB to provide notice thereto of the actions taken hereunder.

IN WITNESS WHEREOF, the parties have executed this Instrument to be effective as of the Effective Date.

**NAUNI JO MANTY, SOLELY IN HER CAPACITY AS CHAPTER TRUSTEE FOR ERP IRON ORE, LLC**

By: _____

**APOLLO ZEUS STRATEGIC
INVESTMENTS, L. P.**

By:  Apollo Zeus Strategic Management, LLC,
      its investment manager

By: _____
Name: Joseph D. Glatt
Title:   Vice President

STATE OF _New York_ )

COUNTY OF _New York_ )

ACKNOWLEDGMENT

On the ___5___ day of _November_ in the year _2019_ before me personally came JOSEPH D. GLATT to me known, who, being by me duly sworn, did depose and say that he resides in _New Jersey_; that he is the VICE PRESIDENT of APOLLO ZEUS STRATEGIC MANAGEMENT, LLC., the limited liability company which executed the above Instrument; and that he signed his name thereto under due authority of Apollo Zeus Strategic Management, LLC on behalf of Apollo Zeus Strategic Investments, L.P.

_____
Notary Public

Printed Name: _Eric M. Barch_

My Commission Expires: _August 20, 2022_

ERIC M. BARCH
Notary Public, State of New York
No. 01BA6379549
Qualified in New York County
Commission Expires Aug. 20, 2022

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**APOLLO SENIOR FLOATING RATE FUND INC.**

By: Apollo Credit Management, LLC,
    its investment manager

By: _____
Name: Joseph D. Glatt
Title:  Vice President

**APOLLO TACTICAL INCOME FUND INC.**

By: Apollo Credit Management, LLC,
    its investment manager

By: _____
Name: Joseph D. Glatt
Title:  Vice President

STATE OF _New York_ )

COUNTY OF _New York_ )

ACKNOWLEDGMENT

On the ___5___ day of ___November___ in the year __2019__ before me personally came JOSEPH D. GLATT to me known, who, being by me duly sworn, did depose and say that he resides in ___New Jersey___; that he is the VICE PRESIDENT of APOLLO CREDIT MANAGEMENT, LLC., the limited liability company which executed the above Instrument; and that he signed his name thereto under due authority of Apollo Credit Management, LLC on behalf of Apollo Senior Floating Rate Fund Inc. and Apollo Tactical Income Fund Inc.

_____
Notary Public

Printed Name: ___Eric M. Barch___

My Commission Expires: ___August 20, 2022___

ERIC M. BARCH
Notary Public, State of New York
No. 01BA6379549
Qualified in New York County
Commission Expires Aug. 20, 2022

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

APOLLO CENTRE STREET PARTNERSHIP, L.P.

By: Apollo Centre Street Management, LLC,
    its investment manager

By: _____
Name: Joseph D. Glatt
Title:  Vice President

STATE OF _New York_ )

COUNTY OF _New York_ )

ACKNOWLEDGMENT

On the   **5**   day of   _November_   in the year _2019_ before me personally came JOSEPH D. GLATT to me known, who, being by me duly sworn, did depose and say that he resides in _New Jersey_ ; that he is the VICE PRESIDENT of APOLLO CENTRE STREET MANAGEMENT, LLC., the limited liability company which executed the above Instrument; and that he signed his name thereto under due authority of Apollo Centre Street Management, LLC on behalf of Apollo Centre Street Parnership, L.P.

_____
Notary Public

Printed Name: _Eric M. Barch_

My Commission Expires: _August 20, 2022_

ERIC M. BARCH
Notary Public, State of New York
No. 01BA6379549
Qualified in New York County
Commission Expires Aug. 20, 2022

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**APOLLO FRANKLIN PARTNERSHIP, L. P.**

By: Apollo Franklin Management, LLC,
    its investment manager

By: _____
Name: Joseph D. Glatt
Title: Vice President

STATE OF _New York_ )

COUNTY OF _New York_ )

ACKNOWLEDGMENT

On the ___5___ day of ___November___ in the year _2019_ before me personally came JOSEPH D. GLATT to me known, who, being by me duly sworn, did depose and say that he resides in ___New Jersey___ ; that he is the VICE PRESIDENT of APOLLO FRANKLIN MANAGEMENT, LLC, the limited liability company which executed the above Instrument; and that he signed his name thereto under due authority of Apollo Franklin Management, LLC on behalf of Apollo Franklin Parnership, L.P.

_____
Notary Public

Printed Name: ___Eric M. Barch___

My Commission Expires: ___August 20, 2022___

_____

ERIC M. BARCH
Notary Public, State of New York
No. 01BA6379549
Qualified in New York County
Commission Expires Aug. 20, 2022

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**APOLLO SPECIAL OPPORTUNITIES
MANAGED ACCOUNT L.P.**

By: Apollo SVF Management, L.P.,
     its investment manager

By: Apollo SVP Management GP, LLC,
     its general partner

By: _____
Name: Joseph D. Glatt
Title:  Vice President

STATE OF _New York_ )
                  )
COUNTY OF _New York_ )

ACKNOWLEDGMENT

On the ____5____ day of __November__ in the year __2019__ before me personally came
JOSEPH D. GLATT to me known, who, being by me duly sworn, did depose and say that he
resides in ____New Jersey____ ; that he is the VICE PRESIDENT of APOLLO SVP
MANAGEMENT GP, LLC, the limited liability company which executed the above Instrument;
and that he signed his name thereto under due authority of Apollo SVP Management GP, LLC on
behalf of Apollo SVF Management, L.P. on behalf of Apollo Special Opportunities Managed
Account L.P.

_____
Notary Public

Printed Name: __Eric M. Barch__

My Commission Expires: __August 20, 2022__

ERIC M. BARCH
Notary Public, State of New York
No. 01BA6379549
Qualified in New York County
Commission Expires Aug. 20, 2022

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**APOLLO CREDIT STRATEGIES MASTER FUND LTD.**

By: Apollo ST Fund Management LLC,
    its investment manager

By: _____
Name: Joseph D. Glatt
Title: Vice President

STATE OF _New York_

COUNTY OF _New York_

ACKNOWLEDGMENT

On the __5__ day of __November__ in the year _2019_ before me personally came JOSEPH D. GLATT to me known, who, being by me duly sworn, did depose and say that he resides in ___New Jersey___ ; that he is the VICE PRESIDENT of APOLLO ST FUND MANAGEMENT LLC, the limited liability company which executed the above Instrument; and that he signed his name thereto under due authority of Apollo ST Fund Management LLC on behalf of Apollo Credit Strategies Master Fund Ltd.

_____
Notary Public

Printed Name: _Eric M. Barch_

My Commission Expires: _August 20, 2022_

_____

ERIC M. BARCH
Notary Public, State of New York
No. 01BA6379549
Qualified in New York County
Commission Expires Aug. 20, 2022

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**APOLLO CREDIT OPPORTUNITY TRADING FUND III**

By: Apollo Credit Opportunity Fund III LP,
     its general partner

By: Apollo Credit Opportunity Management III
     LLC, its investment manager

By: _____
Name: Joseph D. Glatt
Title:  Vice President

By: Apollo Credit Opportunity Fund (Offshore)
     III LP, its general partner

By: Apollo Credit Opportunity Management
     III LLC, its investment manager

By: _____
Name: Joseph D. Glatt
Title:  Vice President

STATE OF _New York_

COUNTY OF _New York_

### ACKNOWLEDGMENT

On the ___5___ day of ___November___ in the year ___2019___ before me personally came JOSEPH D. GLATT to me known, who, being by me duly sworn, did depose and say that he resides in ___New Jersey___; that he is the VICE PRESIDENT of APOLLO CREDIT OPPORTUNITY MANAGEMENT III LLC, the limited liability company which executed the above Instrument; and that he signed his name thereto under due authority of Apollo Credit Opportunity Management III LLC, on behalf of (a) Apollo Credit Opportunity Fund III LP and (b) Apollo Credit Opportunity Fund (Offshore) III LP, on further behalf of Apollo Credit Opportunity Trading Fund III.

Notary Public

Printed Name: _Eric M. Barch_

My Commission Expires: _August 20, 2022_

ERIC M. BARCH
Notary Public, State of New York
No. 01BA6379549
Qualified in New York County
Commission Expires Aug. 20, 2022

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**APOLLO INVESTMENT CORPORATION**

By: Apollo Investment Management, L.P.,
    its investment adviser

By: ACC Management, LLC, its general partner

By: _____
Name: Joseph D. Glatt
Title: Vice President

STATE OF _New York_ )

COUNTY OF _New York_ )

ACKNOWLEDGMENT

On the ___5___ day of _November_ in the year _2019_ before me personally
came JOSEPH D. GLATT to me known, who, being by me duly sworn, did depose and say that
he resides in _____New Jersey_____ ; that he is the VICE PRESIDENT of ACC
MANAGEMENT, LLC, the limited liability company which executed the above Instrument; and
that he signed his name thereto under due authority of ACC Management, LLC on behalf of Apollo
Investment Management, L.P. on behalf of Apollo Investment Corporation.

_____
Notary Public

Printed Name: _Eric M. Barch_

My Commission Expires: _August 20, 2022_

ERIC M. BARCH
Notary Public, State of New York
No. 01BA6379549
Qualified in New York County
Commission Expires Aug. 20, 2022

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**ALLIANCEBERNSTEIN L.P.**

On Behalf of its Discretionary Managed Accounts
as identified in Rows 17 through 23 on Schedule A
attached hereto

By: _Paul a Em_

Name: Paul A. Emerson
Title:  Assistant Secretary

STATE OF _Tennessee_ )
                                            )
COUNTY OF _Davidson_ )

ACKNOWLEDGMENT

On the ___4___ day of __November__ in the year _2019_ before me personally
came PAUL A. EMERSON to me known, who, being by me duly sworn, did depose and say that
he resides in __NASHVILLE, TN__ ; that he is the ASSISTANT SECRETARY
of ALLIANCEBERNSTEIN L.P., the limited partnership which executed the above Instrument;
and that he signed his name thereto under due authority of AllianceBernstein L.P. on behalf
of its Discretionary Managed Accounts as as identified in Rows 17 through 23 on Schedule A
attached hereto.

_Steven Rivlin_
Notary Public

Printed Name: __Steven Rivlin__

My Commission Expires: __5 -9-2023__



SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**SIPI MASTER LTD.**

By: Spectrum Group Management LLC, as
    Investment Manager

By: _____

Name: Jeffrey A. Schaffer

Title:   Managing Member

STATE OF ___NY___ )
                          )
COUNTY OF ___NY___ )

ACKNOWLEDGMENT

On the ___7th___ day of November in the year 2019 before me personally came JEFFREY
A. SCHAFER to me known, who, being by me duly sworn, did depose and say that he resides in
New Jersey; that he is the MANAGING MEMBER of SPECTRUM GROUP MANAGEMENT
LLC, the limited liability company which executed the above Instrument; and that he signed his
name thereto under due authority of Spectrum Group Management LLC on behalf of SIPI Master
Ltd.

_____
Notary Public

Printed Name: ___Mark Barski___

My Commission Expires: ___1/13/2022___

MARK J. BARSKI
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50052809
My Commission Expires 1/13/2022

**DAVIDSON KEMPNER DISTRESSED**
**OPPORTUNITIES FUND LP**

By: DK Group LLC, its General Partner

By: _____

Name: Avram Z. Friedman
Title:   Managing Member

STATE OF NEW YORK )
                                          )
COUNTY OF NEW YORK )

ACKNOWLEDGMENT

On the _12th_ day of _November_ in the year _2019_ before me personally came AVRAM Z. FRIEDMAN to me known, who, being by me duly sworn, did depose and say that he resides in _New York_; that he is the MANAGING MEMBER of DK GROUP LLC, the limited liability company which executed the above Instrument; and that he signed his name thereto under due authority of DK Group LLC on behalf of Davidson Kempner Distressed Opportunities Fund LP.

_____
Notary Public

Printed Name: _TRAVIS M. TROYER_

My Commission Expires: _4/10/2021_

TRAVIS M. TROYER
Notary Public, State of New York
No. 02TR6356925
Qualified in New York County
Commission Expires April 10, 2021

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**DAVIDSON KEMPNER INSTITUTIONAL PARTNERS, L.P.**

By: Davidson Kempner Advisers Inc., its General Partner

By: _____

Name: Avram Z. Friedman

Title:  Principal

STATE OF  NEW YORK  )

)

COUNTY OF  NEW YORK  )

ACKNOWLEDGMENT

On the  12th  day of  November  in the year  2019  before me personally came AVRAM Z. FRIEDMAN to me known, who, being by me duly sworn, did depose and say that he resides in  New York  ; that he is the PRINCIPAL of DAVIDSON KEMPNER ADVISERS INC., the corporation which executed the above Instrument; and that he signed his name thereto under due authority of Davidson Kempner Advisers Inc. on behalf of Davidson Kempner Institutional Partners, L.P.

_____

Notary Public

Printed Name:  TRAVIS M. TROYER

My Commission Expires:  4/10/2021

TRAVIS M. TROYER
Notary Public, State of New York
No. 02TR6356925
Qualified in New York County
Commission Expires April 10, 2021

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**DAVIDSON KEMPNER PARTNERS**

By: MHD Management Co., its General Partner

By: MHD Management Co. GP, L.L.C., its General
Partner

By: _____

Name: Avram Z. Friedman

Title:   Managing Member

STATE OF _NEW YORK_ )
)
COUNTY OF _NEW YORK_ )

ACKNOWLEDGMENT

On the _12th_ day of _November_ in the year _2019_ before me personally
came AVRAM Z. FRIEDMAN to me known, who, being by me duly sworn, did depose and say
that he resides in _New York_ ; that he is the MANAGING MEMBER of
MHD MANAGEMENT CO. GP, L.L.C., the limited liability company which executed the above
Instrument; and that he signed his name thereto under due authority of MHD Management Co.
GP, L.L.C. on behalf of MHD Management Co. on behalf of Davidson Kempner Partners.

_____
Notary Public

Printed Name: _TRAVIS M. TROYER_

My Commission Expires: _4/10/2021_

TRAVIS M. TROYER
Notary Public, State of New York
No. 02TR6356925
Qualified in New York County
Commission Expires April 10, 2021

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**DAVIDSON KEMPNER
INTERNATIONAL, LTD.**

By: Davidson Kempner Capital Management LP, its
Investment Manager

By: _____

Name: Avram Z. Friedman
Title:  Managing Member

STATE OF _NEW YORK_ )
          )
COUNTY OF _NEW YORK_ )

ACKNOWLEDGMENT

On the ___12th___ day of ___November___ in the year _2019_ before me personally
came AVRAM Z.FRIEDMAN to me known, who, being by me duly sworn, did depose and say
that he resides in ___New York___ ; that he is the MANAGING MEMBER of
DAVIDSON KEMPNER CAPITAL MANAGEMENT LP, the limited partnership which
executed the above Instrument; and that he signed his name thereto under due authority of
Davidson Kempner Capital Management LP on behalf of Davidson Kempner International, Ltd.

_____
Notary Public

Printed Name: __TRAVIS M. TROYER__

My Commission Expires: __4/10/2021__

TRAVIS M. TROYER
Notary Public, State of New York
No. 02TR6356925
Qualified in New York County
Commission Expires April 10, 2021

**M.H. DAVIDSON & CO.**

By: M.H. Davidson & Co. GP, L.L.C., its General
Partner

By: _____

Name: Avram Z. Friedman
Title: Managing Member

STATE OF _NEW YORK_ )
                                          )
COUNTY OF _NEW YORK_ )

ACKNOWLEDGMENT

On the __17th__ day of __November__ in the year __2019__ before me personally
came AVRAM Z. FRIEDMAN to me known, who, being by me duly sworn, did depose and say
that he resides in __New York__ ; that he is the MANAGING MEMBER of
M.H. DAVIDSON & CO. GP, L.L.C., the limited liability company which executed the above
Instrument; and that he signed his name thereto under due authority of M.H. Davidson & Co. GP,
L.L.C on behalf of M.H. Davidson & Co.

_____
Notary Public

Printed Name: __TRAVIS M. TROYER__

My Commission Expires: __4/10/2021__

TRAVIS M. TROYER
Notary Public, State of New York
No. 02TR6356925
Qualified in New York County
Commission Expires April 10, 2021

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**DAVIDSON KEMPNER DISTRESSED OPPORTUNITIES INTERNATIONAL LTD.**

By: DK Management Partners LP, its Investment Manager

By: _____

Name: Avram Z. Friedman

Title:   Limited Partner

STATE OF  NEW YORK       )
                                              )
COUNTY OF  NEW YORK )

ACKNOWLEDGMENT

On the ____12th____ day of ____November____ in the year ____2019____ before me personally came AVRAM Z. FRIEDMAN to me known, who, being by me duly sworn, did depose and say that he resides in ____New York_____; that he is the LIMITED PARTNER of DK MANAGEMENT PARTNERS LP, the limited partnership which executed the above Instrument; and that he signed his name thereto under due authority of DK Management Partners LP on behalf of Davidson Kempner Distressed Opportunities International Ltd.

_____
Notary Public

Printed Name: ____TRAVIS M. TROYER____

My Commission Expires: ____4/10/2021____

TRAVIS M. TROYER
Notary Public, State of New York
No. 02TR6356925
Qualified in New York County
Commission Expires April 10, 2021

SIGNATURE PAGE TO
INSTRUMENT OF REMOVAL, APPOINTMENT AND ACCEPTANCE

**UMB Bank, N.A., as Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent**

By: _____

Name: _____Mark J. Kalla_____

Its: _____S. V. P._____

## Schedule A

| | Holder | Address | Principal Amount of Notes |
|---|---|---|---|
| 1. | Apollo Zeus Strategic Investments, L. P. | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $139,325.32 |
| 2. | Apollo Senior Floating Rate Fund Inc. | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $18,878.96 |
| 3. | Apollo Centre Street Partnership, L.P. | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $171,447.20 |
| 4. | Apollo Franklin Partnership, L. P. | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $36,482.12 |
| 5. | Apollo Tactical Income Fund Inc. | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $86,775.39 |
| 6. | Apollo Special Opportunities Managed Account L.P. | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $293,813.43 |
| 7. | Apollo Credit Strategies Master Fund Ltd. | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $75,200.27 |
| 8. | Apollo Credit Opportunity Trading Fund III | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $1,144,123.78 |
| 9. | Apollo Investment Corporation | Apollo Global Management, LLC 3 Bryant Park New York, NY 10036 | $964,134.51 |
| 10. | SIPI Master Lt. | Spectrum Group Management 1250 Broadway, 19th Floor New York, NY 10001 | $797,085.79 |
| 11. | Davidson Kempner Distressed Opportunities Fund LP | c/o Davidson Kempner Capital Management LP 520 Madison Avenue, 30th Floor New York, NY 10022 | $739,746.96 |

| | Holder | Address | Principal Amount of Notes |
|---|---|---|---|
| 12. | Davidson Kempner Institutional Partners, L.P. | c/o Davidson Kempner Capital Management LP 520 Madison Avenue, 30th Floor New York, NY 10022 | $331,237.39 |
| 13. | Davidson Kempner Partners | c/o Davidson Kempner Capital Management LP 520 Madison Avenue, 30th Floor New York, NY 10022 | $161,739.83 |
| 14. | Davidson Kempner International, Ltd. | c/o Davidson Kempner Capital Management LP 520 Madison Avenue, 30th Floor New York, NY 10022 | $321,958.87 |
| 15. | M.H. Davidson & Co. | c/o Davidson Kempner Capital Management LP 520 Madison Avenue, 30th Floor New York, NY 10022 | $24,095.84 |
| 16. | Davidson Kempner Distressed Opportunities International Ltd. | c/o Davidson Kempner Capital Management LP 520 Madison Avenue, 30th Floor New York, NY 10022 | $1,064,891.43 |
| 17. | AB BOND FUND INC. - AB HIGH YIELD PORTFOLIO | c/o Alliance Bernstein 1345 Avenue of the Americas New York, NY 10105 | $4,995 |
| 18. | AB BOND FUND, INC. - AB CREDIT LONG/SHORT PORTFOLIO | c/o Alliance Bernstein 1345 Avenue of the Americas New York, NY 10105 | $2,857 |
| 19. | AB GLOBAL HIGH INCOME FUND | c/o Alliance Bernstein 1345 Avenue of the Americas New York, NY 10105 | $240,007 |
| 20. | AB INCOME FUND | c/o Alliance Bernstein 1345 Avenue of the Americas New York, NY 10105 | $118,241 |
| 21. | ALLIANCE BERNSTEIN HIGH INCOME FUND | c/o Alliance Bernstein 1345 Avenue of the Americas New York, NY 10105 | $1,354,913 |
| 22. | TEACHERS' RETIREMENT SYSTEM OF LOUISIANA | c/o Alliance Bernstein 1345 Avenue of the Americas New York, NY 10105 | $37,199.00 |
| 23. | WYOMING RETIREMENT SYSTEM | c/o Alliance Bernstein 1345 Avenue of the Americas New York, NY 10105 | $9,986 |
| 24. | HALIFAX REGIONAL MUNICIPALITY MASTER TRUST | c/o Alliance Bernstein 1345 Avenue of the Americas New York, NY 10105 | $6,491 |

SCHEDULE A

| | Holder | Address | Principal Amount of Notes |
|---|---|---|---|
| 25. | DFC CANADIAN FIXED INCOME FUND | c/o Alliance Bernstein<br>1345 Avenue of the Americas<br>New York, NY 10105 | $6,020 |
| 26. | SANFORD C. BERNSTEIN & CO, TRUST FUNDS – AB CANADA CORE PLUS ADVANCED BOND FUND | c/o Alliance Bernstein<br>1345 Avenue of the Americas<br>New York, NY 10105 | $53,561 |
| 27. | AB ALL MARKET TOTAL RETURN PORTFOLIO | c/o Alliance Bernstein<br>1345 Avenue of the Americas<br>New York, NY 10105 | $12,146 |

# EXHIBIT D

Document2

*Execution Version*

THIS GUARANTEE AGREEMENT IS SUBJECT TO THE PROVISIONS OF THE INDENTURE DATED AS OF JANUARY 30, 2017 (AS AMENDED, RESTATED, SUPPLEMENTED OR OTHERWISE MODIFIED FROM TIME TO TIME), AMONG ERP IRON ORE, LLC, AS ISSUER, THE GUARANTORS PARTY THERETO, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE, COLLATERAL AGENT, PAYING AGENT, REGISTRAR AND CALCULATION AGENT.

GUARANTEE AGREEMENT

made by

THOMAS MATTHEW CLARKE,

ANA MERCEDES CLARKE,

ERP IRON ORE, LLC

and

ERP COMPLIANT COKE, LLC

in favor of

WILMINGTON SAVINGS FUND SOCIETY, FSB

as Trustee under the Indenture governing the Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019 issued by ERP Iron Ore, LLC

and

each Holder of Notes

Dated as of January 30, 2017

#4846-0297-3755

*Execution Version*

## TABLE OF CONTENTS

Page

SECTION 1.   DEFINED TERMS ............................................................................................ 1
   1.1   Definitions ................................................................................................... 1
   1.2   Other Definitional Provisions ..................................................................... 4

SECTION 2.   GUARANTEE .................................................................................................... 4
   2.1   Guarantee ..................................................................................................... 4
   2.2   Limitation on Guarantor Liability ............................................................... 6
   2.3   Execution and Delivery ............................................................................... 6
   2.4   Subrogation .................................................................................................. 6
   2.5   Benefits Acknowledged ............................................................................... 7
   2.6   Release of Guarantees ................................................................................. 7
   2.7   Payments ...................................................................................................... 7

SECTION 3.   [RESERVED] ...................................................................................................... 7

SECTION 4.   REPRESENTATIONS AND WARRANTIES ..................................................... 7
   4.1   Principal Residence ..................................................................................... 7
   4.2   Guarantee Shares ......................................................................................... 7
   4.3   Contracts ...................................................................................................... 8
   4.4   Litigation ...................................................................................................... 9
   4.5   Inspections; No Other Representations ........................................................ 9
   4.6   Solvency ....................................................................................................... 9
   4.7   No Existing Event of Default ...................................................................... 9

SECTION 5.   COVENANTS ...................................................................................................... 9
   5.1   Changes in Name, etc. ................................................................................. 9
   5.2   Contracts ...................................................................................................... 9
   5.3   Taxes .......................................................................................................... 10
   5.4   Further Assurances ..................................................................................... 10
   5.5   Financial Statements .................................................................................. 10
   5.6   Stay, Extension and Usury Laws ............................................................... 10
   5.7   Notices ....................................................................................................... 10

SECTION 6.   REMEDIAL PROVISIONS ............................................................................... 10
   6.1   Guarantee Shares ....................................................................................... 10
   6.2   Application of Proceeds ............................................................................. 10
   6.3   Events of Default under the Indenture ....................................................... 11
   6.4   Subordination ............................................................................................. 11

SECTION 7.   THE TRUSTEE ................................................................................................. 11
   7.1   The Appointment of the Trustee and Collateral Agent as Attorneys-in-
       Fact, etc ...................................................................................................... 11
   7.2   Authority of the Trustee ............................................................................. 11

i

| 7.3 | Trustee May File Proofs of Claim | 12 |
| 7.4 | Other | 12 |

| SECTION 8. | MISCELLANEOUS | 12 |
| 8.1 | Amendments in Writing | 12 |
| 8.2 | Notices | 12 |
| 8.3 | No Waiver by Course of Conduct; Cumulative Remedies | 13 |
| 8.4 | Enforcement Expenses; Indemnification | 13 |
| 8.5 | Successors and Assigns | 13 |
| 8.6 | Calculations | 13 |
| 8.7 | Counterparts | 14 |
| 8.8 | Severability | 14 |
| 8.9 | Section Headings | 14 |
| 8.10 | Integration | 14 |
| 8.11 | **GOVERNING LAW** | 14 |
| 8.12 | Submission To Jurisdiction; Waivers | 14 |
| 8.13 | Acknowledgements | 15 |
| 8.14 | U.S.A. PATRIOT Act | 15 |
| 8.15 | **WAIVER OF JURY TRIAL** | 15 |
| 8.16 | Effectiveness of Guarantee Agreement. | 15 |

SCHEDULES

| Schedule 1 | Notice Addresses |
| Schedule 2 | Guarantee Shares |
| Schedule 3 | Jurisdictions of Primary Residence(s) |

EXHIBITS

| Exhibit 1 | Indenture |

#4846-0297-3755

GUARANTEE AGREEMENT

GUARANTEE AGREEMENT, dated as of January 30, 2017, made by each of the signatories hereto (together with any other entity that may become a party hereto as provided herein, the "Guarantors"), in favor of Wilmington Savings Fund Society, FSB, as trustee (in such capacity, the "Trustee") on behalf of the holders of the Notes (as defined below) issued pursuant to the indenture, dated as of January 30, 2017 (as amended, supplemented or otherwise modified from time to time, the "Indenture"), among ERP Iron Ore, LLC, a Virginia limited liability company (the "Issuer"), the guarantors listed on the signature pages thereto and Wilmington Savings Fund Society, FSB, as Trustee, as collateral agent (in such capacity, the "Collateral Agent"), paying agent (in such capacity, the "Paying Agent"), registrar (in such capacity, the "Registrar") and calculation agent (in such capacity, the "Calculation Agent").

W I T N E S S E T H:

WHEREAS, on May 5, 2015, Magnetation LLC (the "Debtor Company") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., in the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") and the Debtor Company and the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

WHEREAS, the Issuer has duly authorized the creation and issuance of $22,500,000 aggregate principal amount of its Floating Rate Senior Secured Amortizing PIK Toggle Notes due December 31, 2019 (the "Notes") pursuant to the Indenture, which Notes shall be issued in connection with the Closing (as defined in that certain asset purchase agreement, dated as of December 6, 2016, by and among MG Initial Purchaser, LLC, a Delaware limited liability company, the Issuer, the Debtor Company and certain of its Subsidiaries) in connection with the sale of assets by the Debtor Company to the Issuer; and

WHEREAS, each of the Issuer and ERP Compliant COKE, LLC, a Delaware limited liability company ("Coke Entity") has duly authorized the execution and delivery of the Indenture;

WHEREAS, pursuant to the Indenture, the Issuer shall issue its Notes upon the terms and subject to the conditions set forth therein.

NOW, THEREFORE, the Issuer, the Coke Entity, the Guarantors who are signatories hereto and the Trustee agree as follows for the benefit of each other and for the equal and ratable benefit of the Holders of the Notes.

SECTION 1.  DEFINED TERMS

1.1    Definitions.  (a) Unless otherwise defined herein, terms defined in the Indenture (attached hereto as Exhibit 1) and used herein shall have the meanings given to them in the Indenture, and the following terms are used herein as defined in the New York UCC: Chattel Paper and Instruments.

#4846-0297-3755

(b)     The following terms shall have the following meanings:

"Agreement":  this Guarantee Agreement, as the same may be amended, supplemented or otherwise modified from time to time.

"Asset Purchase Agreement": that certain asset purchase agreement, dated as of December 6, 2016, by and among MG Initial Purchaser, LLC, a Delaware limited liability company, the Issuer, the Debtor Company and certain of its Subsidiaries.

"Bankruptcy Court": as defined in the preamble hereto.

"Beneficiary Parties":  the collective reference to the Trustee, Collateral Agent and the Holders.

"Calculation Agent": as defined in the preamble hereto.

"Coke Entity": as defined in the preamble hereto.

"Collateral Agent": as defined in the preamble hereto.

"Contracts":  the Asset Purchase Agreement, the Transaction Documents and the Notes Documents.

"Debtor Company": as defined in the preamble hereto.

"Debtors": as defined in the preamble hereto.

"Guarantee Shares":  the shares of Capital Stock listed on Schedule 2, together with any other shares, stock certificates, options, interests or rights of any nature whatsoever in respect of the Capital Stock listed on Schedule 2 (or of any successor in interest by merger, consolidation or otherwise) that may be issued or granted to, or held by, the Limited Guarantor while this Agreement is in effect.

"Guarantee Shares Issuers":  the collective reference to each issuer of any Guarantee Shares.

"Guaranteed Obligations": as defined in Section 2.1(a).

"Guarantor Obligations":  with respect to any Guarantor, all obligations and liabilities of such Guarantor which may arise under or in connection with this Agreement (including, without limitation, Section 2 of this Agreement) or any other Notes Document, in each case whether on account of guarantee obligations, reimbursement obligations, fees, indemnities, costs, expenses or otherwise (including, without limitation, all fees and disbursements of counsel to the Trustee or the Collateral Agent or to the Holders that are required to be paid by such Guarantor pursuant to the terms of this Agreement or any other Notes Document).

"Guarantors":  as defined in the preamble hereto.

#4846-0297-3755

"Holders": as defined in the preamble hereto.

"Indenture": as defined in the preamble hereto.

"Issuer": as defined in the preamble hereto.

"Issuer Obligations": means, with respect to the Indenture, any principal (including the Amortization Amounts to be paid on each Amortization Payment Date), interest (including any interest accruing subsequent to the filing of a petition in bankruptcy, reorganization or similar proceeding at the rate provided for in the documentation with respect thereto, whether or not such interest is an allowed claim under applicable state, federal or foreign law), other monetary obligations, penalties, fees, indemnifications, reimbursements (including reimbursement obligations with respect to letters of credit and banker's acceptances), damages and other liabilities of the Issuer under the Indenture or the Notes.

"Limited Guarantor": means Ana Mercedes Clarke.

"Magnetation Contracts" means any material written contract or agreement between the Issuer and any Person (in each case, whether third party or intercompany) assumed by the Issuer from one or more of the Debtors in connection with the transactions described in the APA and related agreements.

"Material Adverse Effect" means a material adverse effect on and/or material adverse developments with respect to (i) the business, operations, properties, assets or condition (financial or otherwise) of the Issuer and its Subsidiaries taken as a whole, (ii) the ability of the Issuer or any of its Subsidiaries to fully and timely perform its or their Obligations, (iii) the legality, validity, binding effect or enforceability against the Issuer or any of the Guarantors of the Notes, this Indenture or any other Notes Document, or (iv) the rights, remedies and benefits available to, or conferred upon, the Trustee, the Collateral Agent or the Holders under this Agreement or the Indenture.

"Notes": as defined in the preamble hereto.

"Obligations": (i) in the case of the Issuer, the Issuer Obligations, and (ii) in the case of each Guarantor, its Guarantor Obligations.

"Paying Agent": as defined in the preamble hereto.

"Registrar": as defined in the preamble hereto.

"Transaction": means the sale of assets pursuant to the Asset Purchase Agreement and the issuance of the Notes pursuant to the Indenture.

"Transaction Documents": as defined in the Asset Purchase Agreement.

"Trustee": as defined in the preamble hereto.

"Unlimited Guarantor": means Thomas Matthew Clarke.

1.2    Other Definitional Provisions.  (a) The words "hereof," "herein", "hereto" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section and Schedule references are to this Agreement unless otherwise specified.

(b)    The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

## SECTION 2.  GUARANTEE

2.1    Guarantee.

(a)    Each of the Guarantors hereby, jointly and severally, irrevocably and unconditionally guarantees on a senior unsecured basis to each Holder and to the Trustee and to each of their successors and assigns, irrespective of the validity and enforceability of the Indenture, the Notes or any other Issuer Obligations thereunder, that:  (1) the principal, premium, if any, and interest on the Notes shall be promptly paid in full when due, whether at Stated Maturity, by acceleration, redemption or otherwise, and interest on the overdue principal and interest on the Notes, if any, if lawful, and all other Issuer Obligations to the Holders, the Trustee and Collateral Agent under the Indenture or the Notes shall be promptly paid in full or performed, all in accordance with the terms thereof; and (2) in case of any extension of time of payment or renewal of any Notes or any of such other obligations, that same shall be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at Stated Maturity, by acceleration or otherwise (collectively, the "Guaranteed Obligations").  If an Event of Default occurs and is continuing under Section 6.01(a)(1), (a)(2) or (a)(9) of the Indenture, and the sequence of Standstill Periods and Obligor and Coke Guarantor (as such terms are defined in the Indenture) asset sales required under the Indenture has not resulted in full payment of the Issuer Obligations by the Issuer and the Coke Guarantor, the Guarantors shall be jointly and severally obligated to pay immediately any amounts due under their Guarantor Obligations in accordance with Section 6.02(b) of the Indenture, subject to Section 2.2(b) hereof. Each Guarantor agrees that this is a guarantee of payment and not a guarantee of collection.

(b)    Each of the Guarantors hereby agrees that their Guarantor Obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes or the Indenture, the absence of any action to enforce the same, any waiver or consent by any Holder with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a Guarantor. Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest, notice and all demands whatsoever and covenants that the Guarantor Obligations shall not be discharged except by complete performance of the Obligations contained in the Notes, the Indenture and herein.

(c)    Each of the Guarantors also agrees, jointly and severally, in accordance with Sections 6.02(b) and 7.07 of the Indenture and subject to Section 2.2(b) hereof, to pay any

#4846-0297-3755

and all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee, the Collateral Agent or any Holder in enforcing any rights under this Agreement or the Indenture.

(d)      If any Holder, the Trustee or the Collateral Agent is required by any court or otherwise to return to the Issuer, any Guarantor or any custodian, trustee, liquidator or other similar official acting in relation to the Issuer or any Guarantor, any amount paid either to the Trustee, the Collateral Agent or such Holder, this Agreement, to the extent theretofore discharged, shall be reinstated in full force and effect.

(e)      Each Guarantor agrees that it shall not be entitled to enforce any right of subrogation in relation to the Holders in respect of any Obligations pursuant to the Indenture and hereby until payment in full of all Obligations pursuant to the Indenture and hereby. Each Guarantor further agrees that, as between the Guarantors, on the one hand, and the Holders, the Trustee and the Collateral Agent, on the other hand, (1) the maturity of the Obligations pursuant to the Indenture and hereby may be accelerated as provided in Article 6 of the Indenture for the purposes of this Agreement, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the Obligations pursuant to this Agreement, and (2) in the event of any declaration of acceleration of such Obligations as provided in Article 6 of the Indenture, such Obligations (whether or not due and payable) shall forthwith become due and payable by the Guarantors for the purpose of this Agreement in accordance with Section 6.02(b) of the Indenture, subject to Section 2.2(b) hereof. The Guarantors shall have the right to seek contribution from any non-paying Obligor (as defined in the Indenture) so long as the exercise of such right does not impair the rights of the Trustee, the Collateral Agent or the Holders hereunder, *provided, however*, the contribution provided by the Limited Guarantor hereunder shall be limited pursuant to Section 2.2(b).

(f)      The Guarantor Obligations shall remain in full force and effect and continue to be effective should any petition be filed by or against the Issuer for liquidation or reorganization, should the Issuer become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of the Issuer's assets, and shall, to the fullest extent permitted by law, continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Notes are, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee on the Notes or the Guarantor Obligations, whether as a "voidable preference," "fraudulent transfer" or otherwise, all as though such payment or performance had not been made. In the event that any payment or any part thereof, is rescinded, reduced, restored or returned, the Notes shall, to the fullest extent permitted by law, be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(g)      In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(h)      Each payment to be made by a Guarantor in respect of its obligations hereunder shall be made without set-off, counterclaim, reduction or diminution of any kind or nature.

2.2     Limitation on Guarantor Liability.

(a)     Each Guarantor, and by its acceptance of Notes, each Holder, hereby confirms that it is the intention of all such parties that the Guarantor Obligations of such Guarantor not constitute a fraudulent conveyance or a fraudulent transfer for purposes of Bankruptcy Law, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar federal or state law to the extent applicable to any Guarantor Obligations.  To effectuate the foregoing intention, the Trustee, the Collateral Agent, the Holders and the Guarantors irrevocably agree that the Guarantor Obligations of each Guarantor shall be limited to the maximum amount as will, after giving effect to such maximum amount and all other contingent and fixed liabilities of such Guarantor that are relevant under such laws and after giving effect to any collections from, rights to receive contribution from or payments made by or on behalf of any other Guarantor in respect of the Guarantor Obligations of such other Guarantor under this Section 2, result in the Guarantor Obligations of such Guarantor under its Guarantor Obligations not constituting a fraudulent conveyance or fraudulent transfer under applicable law.

(b)     Notwithstanding anything contained in this Agreement or the Contracts, the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall be limited to the value (as certified pursuant to the certificate delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee Shares" as of the date hereof.[1]  The Limited Guarantor shall not have any obligation or liability to pay in excess of such value under any circumstance.

2.3     Execution and Delivery.

(a)     To evidence its Guarantor Obligations set forth in Section 2.1, each Guarantor hereby agrees that it shall execute, or cause to be validly executed on such Guarantor's behalf, this Agreement.

(b)     Each Guarantor hereby agrees that its Guarantor Obligations set forth herein shall remain in full force and effect notwithstanding the absence of the endorsement of any notation of such Guarantor Obligations on the Notes.

(c)     If an Officer whose signature is on the Indenture no longer holds that office at the time the Trustee authenticates the Notes, the obligations of the Guarantors hereunder shall be valid nevertheless.

(d)     The delivery of any Note by the Trustee, after the authentication thereof under the Indenture, shall constitute due delivery of the Guarantor Obligations set forth in this Agreement on behalf of the Guarantors.

2.4     Subrogation.

Each Guarantor shall be subrogated to all rights of the Holders against the Issuer and Coke Entity in respect of any amounts paid by any Guarantor pursuant to the provisions of

---

[1] Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed.

#4846-0297-3755

Section 2.1; *provided* that, if an Event of Default has occurred and is continuing, no Guarantor shall be entitled to enforce or receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by the Issuer under the Indenture or the Notes shall have been paid in full.

2.5   Benefits Acknowledged.

Each Guarantor acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by the Indenture and that the guarantee and waivers made by it pursuant to this Agreement are knowingly made in contemplation of such benefits.

2.6   Release of Guarantees.

The Guarantor Obligations of a Guarantor shall be automatically and unconditionally released and discharged, and no further action by such Guarantor, the Issuer, the Trustee or the Collateral Agent shall be required for the release of such Guarantor Obligations, upon (x) the discharge of the Issuer's Obligations in accordance with Article 12 of the Indenture, (y) the payment in full of the principal, accrued interest and unpaid premium, if any, on the Notes upon stated maturity, or (z) upon redemption of the Notes pursuant to Article 3 of the Indenture.

At the written request of the Issuer, the Trustee and Collateral Agent shall execute and deliver any documents reasonably required in order to evidence such release, discharge and termination in respect of the applicable Guarantor Obligations.

2.7   Payments.

Each Guarantor hereby guarantees that payments hereunder shall be paid to the Paying Agent or Trustee, as applicable, without set off or counterclaim in United States dollars at the office of the Paying Agent or Trustee, as applicable and as set forth in Section 2 of the Indenture.

SECTION 3.   [RESERVED]

SECTION 4.   REPRESENTATIONS AND WARRANTIES

Each Guarantor hereby represents and warrants to the Trustee and each Holder as of the date of this Agreement that:

4.1   Principal Residence.

On the date hereof, such Guarantor's principal residence is specified on Schedule 1.

4.2   Guarantee Shares. (a) All of the Guarantee Shares have been duly and validly issued and are fully paid and nonassessable.

#4846-0297-3755

(b)     The Limited Guarantor is the record and beneficial owner of, and has good and marketable title to, the Guarantee Shares, free of any and all liens or options in favor of, or claims of, any other Person.

4.3     Contracts.  To the Guarantors' actual knowledge (a) no consent of any party (other than such Guarantor) to any Contract such Guarantor is a party to is required, or purports to be required, in connection with the execution, delivery and performance of this Agreement, except as has been obtained.

(b)     This Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is in full force and effect and constitutes a valid and legally enforceable obligation of the parties thereto, subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, general equitable principles (whether considered in a proceeding in equity or at law) and an implied covenant of good faith and fair dealing.

(c)     No consent or authorization of, filing with or other act by or in respect of any Governmental Authority is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) by any party thereto other than those which have been duly obtained, made or performed, are in full force and effect and do not subject the scope of any such Contract to any material adverse limitation, either specific or general in nature.

(d)     Neither such Guarantor nor any of the other parties to this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is in default in the performance or observance of any of the terms thereof in any manner that, in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(e)     The right, title and interest of such Guarantor in, to and under this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) are not subject to any defenses, offsets, counterclaims or claims that, in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(f)     Such Guarantor has delivered to the Trustee and Collateral Agent a complete and correct copy of this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge), including all amendments, supplements and other modifications thereto.

(g)     No amount payable to such Guarantor under or in connection with this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is evidenced by any Instrument or Chattel Paper which has not been delivered to the Trustee and Collateral Agent.

#4846-0297-3755

(h)    None of the parties to this Agreement and each other Contract such Guarantor is party to (with respect to the Magnetation Contracts, to the Issuer's actual knowledge) is a Governmental Authority.

4.4    Litigation.  There is no action, suit, investigation or proceeding pending against, or to the knowledge of such Guarantor, threatened against or affecting, such Guarantor before any arbitrator or any Governmental Authority which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

4.5    Inspections; No Other Representations.  Such Guarantor is an informed and sophisticated person or has engaged expert advisors, experienced in the evaluation of the Transaction and the guarantee provided hereunder.  Such Guarantor has undertaken such investigation and has been provided with and has evaluated such documents and information as it has deemed necessary to enable it to make an informed and intelligent decision with respect to the execution, delivery and performance of this Agreement.  Such Guarantor shall undertake such further investigation and request such additional documents and information as it deems necessary.

4.6    Solvency.  Each of the Guarantors is Solvent.  As used herein, the term "Solvent" means, with respect to any Person on a particular date, that on such date (i) the fair market value of the assets of such Person is greater than the total amount of liabilities (including contingent liabilities) of such Person, (ii) the present fair salable value of the assets of such Person is greater than the amount that will be required to pay the probable liabilities of such Person on its debts as they become absolute and matured, (iii) such Person is able to realize upon its assets and pay its debts and other liabilities, including contingent obligations, as they mature and (iv) such Person does not have unreasonably small capital.

4.7    No Existing Event of Default.  No event of default exists under any contract, indenture, mortgage, loan agreement, note, lease or other agreement or instrument constituting Indebtedness.

## SECTION 5.  COVENANTS

Each Guarantor covenants and agrees with the Trustee and the Holders that, from and after the date of this Agreement until (x) the payment in full of the principal of, accrued and unpaid interest and premium, if any, on the Notes at the stated maturity or upon redemption pursuant to Article 3 of the Indenture, (y) the Indenture has been satisfied and discharged in accordance with Article 12 of the Indenture, or (z) as to the Limited Guarantor, the payment in full of the Obligations of the Limited Guarantor pursuant to Section 2.2(b) hereof:

5.1    Changes in Name, etc.  Such Guarantor shall not, except upon 15 days' prior written notice to the Trustee and the Collateral Agent, (i) change his or her principal residence from that referred to in Section 4.1 or (ii) change his or her name.

5.2    Contracts.  Such Guarantor shall perform and comply in all material respects with all its obligations under this Agreement and each other Contract such Guarantor is party to, subject to any available claims, rights or defenses thereunder.

#4846-0297-3755

5.3     Taxes. Such Guarantor shall pay all taxes, assessments and governmental levies except (a) such as are being contested in good faith and by appropriate documentation, negotiations or proceedings or (b) where the failure to effect such payment is not adverse in any material respect to the Trustee, Collateral Agent or the Holders.

5.4     Further Assurances. Such Guarantor shall execute any and all further documents, financing statements, agreements and instruments, and take all further actions that may be required under applicable law, or that the Trustee or Collateral Agent may reasonably request, to facilitate, and to avoid conflict with, the transactions set forth in the Indenture and other Notes Documents, and Asset Purchase Agreement and the Transaction Documents, and the guarantee hereunder.

5.5     Financial Statements.

The Unlimited Guarantor shall deliver, on an annual basis or as reasonably requested more frequently than annually by the Trustee acting on behalf of the Holders of the Notes, financial statements and other assurances of such Guarantor's ability to satisfy such Guarantor's Guarantor Obligations and any other obligations existing under this Agreement.

5.6     Stay, Extension and Usury Laws. Each of the Guarantors covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Agreement or any provisions of the Indenture incorporated by reference herein; and each of the Guarantors (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenant that it shall not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law has been enacted.

5.7     Notices.

Such Guarantor shall advise the Trustee and the Holders of the Notes promptly, in reasonable detail, of the occurrence of (i) any event which could reasonably be expected to have a Material Adverse Effect on the Issuer or the guarantee hereunder or (ii) any event that is an Event of Default under the Indenture, subject expressly to Section 6 herein.

SECTION 6.   REMEDIAL PROVISIONS

6.1     Guarantee Shares. If an Event of Default shall occur and be continuing, (i) the Trustee shall have the right, subject to Section 6.02(b) of the Indenture and the passage of time and other asset liquidation activity described therein, to receive payment in respect of the Guaranteed Obligations (x) in the case of the Unlimited Guarantor, without any limit as to contribution or liability other than as set forth in Section 2.2(a); and (y) in the case of the Limited Guarantor, with limited liability and/or contribution as set forth in Sections 2.2(a) and (b).

6.2     Application of Proceeds. The Trustee, Collateral Agent or Paying Agent, as applicable, shall apply all or any part of proceeds of the guarantee set forth in Section 2 in payment of the Obligations pursuant to Section 6.13 of the Indenture.

#4846-0297-3755

6.3     Events of Default under the Indenture.  Each Guarantor agrees that the provisions of Article 6 of the Indenture as they apply to Guarantors under the Indenture apply to each Guarantor under this Agreement, mutatis mutandis.  For the avoidance of doubt, each of the Events of Default in Section 6.01(a)(3), (4), (6), (7), (10), and (13) of the Indenture are incorporated by reference herein and apply equally to each of the Guarantors under this Agreement, mutatis mutandis, and any Event of Default herein as it relates to a Guarantor hereunder shall be deemed an Event of Default under the Indenture and subject to the limitations on enforcement of rights against the Guarantors set forth in Section 6.02 of the Indenture.

6.4     Subordination.  Each Guarantor hereby agrees that, upon the occurrence and during the continuance of an Event of Default, unless otherwise agreed by the Trustee and Collateral Agent, all Indebtedness owing by it to any Subsidiary of the Issuer shall be fully subordinated to the indefeasible payment in full in cash of such Guarantor's Obligations.

## SECTION 7.  THE TRUSTEE

7.1     The Appointment of the Trustee and Collateral Agent as Attorneys-in-Fact, etc.

(a)     Each Guarantor hereby irrevocably constitutes and appoints the Trustee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Guarantor and in the name of such Guarantor or in its own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement.

Anything in this Section 7.1(a) to the contrary notwithstanding, the Trustee agrees that it will not exercise any rights under the power of attorney provided for in this Section 7.1(a) unless (x) the Specified Event of Default has occurred and is continuing or (y) any Deficiency Amount remains outstanding following the Third Standstill Expiration Date.

(b)     If any Guarantor fails to perform or comply with any of its agreements contained herein, the Trustee, at its option, but without any obligation so to do, may perform or comply, or otherwise cause performance or compliance, with such agreement.

(c)     The expenses of the Trustee incurred in connection with actions undertaken as provided in this Section 7.1, together with interest thereon at a rate per annum equal to the highest rate per annum at which interest would then be payable on the Notes, from the date of payment by the Trustee to the date reimbursed by the relevant Guarantor, shall be payable by such Guarantor to the Trustee on demand.

(d)     Each Guarantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.  All powers, authorizations and agencies contained in this Agreement are coupled with an interest and are irrevocable until this Agreement is terminated and the security interests created hereby are released.

7.2     Authority of the Trustee.  Each Guarantor acknowledges that the rights and responsibilities of the Trustee under this Agreement or the Indenture with respect to any action taken by the Trustee or the exercise or non-exercise by the Trustee of any option, voting right,

#4846-0297-3755

request, judgment or other right or remedy provided for herein or the Indenture or resulting or arising out of this Agreement or the Indenture shall, as between the Trustee and the Holders, be governed by the Indenture and by such other agreements with respect thereto as may exist from time to time among them, but, as between the Trustee and the Guarantors, the Trustee shall be conclusively presumed to be acting as agent for the Holders with full and valid authority so to act or refrain from acting, and no Guarantor shall be under any obligation, or entitlement, to make any inquiry respecting such authority.

7.3     Trustee May File Proofs of Claim. The Trustee may file proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, their agents and counsel) and the Holders of the Notes allowed in any judicial proceedings relative to the Issuer (or any other obligor upon the Notes, including the Guarantors), its creditors or its property and is entitled and empowered to participate as a member in any official committee of creditors appointed in such matter and to collect, receive and distribute any money or other property payable or deliverable on any such claims. Any custodian in any such judicial proceeding is hereby authorized by each Holder to make such payments to the Trustee, and in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee and its agents and counsel, and any other amounts due the Trustee as provided in Section 7.07 of the Indenture. To the extent that the payment of any such compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee as provided in Section 7.07 of the Indenture out of the estate in any such proceeding, shall be denied for any reason, payment of the same shall be secured by a lien on, and shall be paid out of, any and all distributions, dividends, money, securities and other properties that the Holders may be entitled to receive in such proceeding whether in liquidation or under any plan of reorganization or arrangement or otherwise. Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

7.4     Other. Each Guarantor agrees that the provisions of Article 7 of the Indenture applicable to any Guarantor thereunder shall apply to such Guarantor under this Agreement, *mutatis mutandis*.

### SECTION 8.   MISCELLANEOUS

8.1     Amendments in Writing. None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except in accordance with Article 9 of the Indenture.

8.2     Notices. All notices, requests and demands to or upon the Trustee or any Guarantor hereunder shall be effected in the manner provided for in Section 13.02 of the Indenture; *provided* that any such notice, request or demand to or upon any Guarantor shall be addressed to such Guarantor at its notice address set forth on Schedule 1.

#4846-0297-3755

8.3   <u>No Waiver by Course of Conduct; Cumulative Remedies</u>. Neither the Trustee nor any Holder shall by any act (except by a written instrument pursuant to Section 8.1), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default. No failure to exercise, nor any delay in exercising, on the part of the Trustee or any Holder, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Trustee or any Holder of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Trustee or any Holder would otherwise have on any future occasion. The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

8.4   <u>Enforcement Expenses; Indemnification</u>. (a) Each Guarantor agrees to pay or reimburse each Holder and the Trustee for all its reasonable costs and expenses incurred in collecting against such Guarantor under the guarantee contained in Section 2 or otherwise enforcing or preserving any rights under this Agreement and the other Notes Documents to which such Guarantor is a party, including, without limitation, the reasonable fees and disbursements of counsel (including the allocated fees and expenses of in-house counsel) to each Holder and of counsel to the Trustee.

(b)   Each Guarantor agrees to pay, and to save the Trustee and the Holders harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable in connection with any of the transactions contemplated by this Agreement.

(c)   Each Guarantor agrees to pay, and to save the Trustee and the Holders harmless from, any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance and administration of this Agreement to the extent the Issuer would be required to do so pursuant to Section 7.07 of the Indenture.

(d)   The agreements in this Section 8.4 shall survive repayment of the Obligations and all other amounts payable under the Indenture and the other Notes Documents.

8.5   <u>Successors and Assigns</u>. This Agreement shall be binding upon the successors and assigns of each Guarantor and shall inure to the benefit of the applicable Beneficiary Parties and their successors and assigns; *provided* that no Guarantor may assign, transfer or delegate any of its rights or obligations under this Agreement without the prior written consent of the Trustee.

8.6   <u>Calculations</u>. The Guarantors hereto acknowledge that all calculations of the Calculation Agent, in the absence of manifest error, shall be conclusive for all purposes and binding and neither the Trustee nor the Paying Agent shall have the duty to verify determinations of interest rates made by the Calculation Agent.

#4846-0297-3755

8.7     Counterparts.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by email or telecopy), and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

8.8     Severability.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.9     Section Headings.  The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

8.10     Integration.  This Agreement and the other Notes Documents represent the agreement of the Guarantors and the applicable Beneficiary Parties with respect to the subject matter hereof and thereof, and there are no promises, undertakings, representations or warranties by the Trustee or any Holder relative to subject matter hereof and thereof not expressly set forth or referred to herein or in the other Notes Documents.

8.11     **GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.**

8.12     Submission To Jurisdiction; Waivers.  Each Guarantor hereby irrevocably and unconditionally:

(a)     submits for itself and its property in any legal action or proceeding relating to this Agreement, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of any state or federal court sitting in the Borough of Manhattan in the City of New York, and appellate courts from any thereof;

(b)     consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

(c)     agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such Guarantor at its address referred to in Section 8.2 or at such other address of which the Trustee shall have been notified pursuant thereto;

(d)     agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(e)     waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

#4846-0297-3755

8.13    Acknowledgements. Each Guarantor hereby acknowledges that:

(a)    it has been advised by counsel in the negotiation, execution and delivery of this Agreement and the other Notes Documents to which it is a party (if any);

(b)    neither the Trustee nor any Holder has any fiduciary relationship with or duty to any Guarantor arising out of or in connection with this Agreement or any of the other Notes Documents, and the relationship between the Guarantors, on the one hand, and the Trustee and Holders, on the other hand, in connection herewith or therewith is solely that of debtor and creditor; and

(c)    no joint venture is created hereby or by the other Notes Documents or otherwise exists by virtue of the transactions contemplated hereby among the Holders or among the Guarantors and the Holders.

8.14    U.S.A. PATRIOT Act. The parties hereto acknowledge that in accordance with Section 326 of the U.S.A. PATRIOT Act, the Trustee is required to obtain, verify, and record information that identifies each Person or legal entity that establishes a relationship or opens an account with the Trustee. The parties to this Agreement agree that they shall provide the Trustee with such information as it may request in order for the Trustee to satisfy the requirements of the U.S.A. PATRIOT Act.

8.15    **WAIVER OF JURY TRIAL.** EACH OF THE GUARANTORS, THE TRUSTEE AND COLLATERAL AGENT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE INDENTURE, THE NOTES, THE OTHER NOTES DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.

8.16    Effectiveness of Guarantee Agreement.

No party shall have any rights, obligations or other benefits or responsibilities hereunder unless and until such time as the parties have issued the Notes hereunder in connection with the Closing (as defined in the APA), and the Closing has occurred; provided that the Trustee shall be entitled to an Officers' Certificate and Opinion of Counsel that such closing has occurred and that all conditions precedent have been satisfied.

*[Signatures on following page]*

IN WITNESS WHEREOF, each of the undersigned has caused this Guarantee Agreement to be duly executed and delivered as of the date first above written.

#4846-0297-3755

ERP IRON ORE, LLC

By: _____

Name: Thomas M. Clarke
Title: Chief Executive Officer

[Signature Page to Guarantee Agreement]

ERP COMPLIANT COKE, LLC

By: _____

Name: Thomas M. Clarke
Title: Chief Executive Officer

THOMAS MATTHEW CLARKE, as Unlimited
Guarantor

By: _____

Name:  Thomas Matthew Clarke

ANA MERCEDES CLARKE, as Limited
Guarantor

By: _____

Name:  Ana Mercedes Clarke

[Signature Page to Guarantee Agreement]

WILMINGTON SAVINGS FUND SOCIETY, FSB
as Trustee

By: _____

Name:

Title

**Geoffrey J. Lewis**
**Vice President**

*[Signature Page to Guarantee Agreement]*

Schedule 1

## NOTICE ADDRESSES OF GUARANTORS

For all Guarantors:

c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578
Attention: Tom Clarke
Email: Tom.Clarke@kissito.org

Schedule 2

## DESCRIPTION OF GUARANTEE SHARES

**Guarantee Shares:**

| Guarantee Shares Issuer | Percentage ownership |
|---|---|
| Seneca Coal Resources, LLC | 38.5% |
| Seminole Coal Resources, LLC | 38.5% |
| Conuma Coal Resources Limited | 38.5%[2] |

---

[2] The Limited Guarantor owns, indirectly, 38.5% of Conuma Coal Resources Limited, which is directly owned 100.0% by ERP Coal Resources Limited through its holding of 1,000,000 Class A Voting common shares in Conuma Coal Resources Limited, evidenced by the share certificate labeled "3AC".

#4846-0297-3755

Schedule 3

LOCATION OF JURISDICTION OF PRIMARY RESIDENCE

| Guarantor | Location of Primary Residence |
|-----------|-------------------------------|
| Tom Clarke | Commonwealth of Virginia |
| Ana Clarke | Commonwealth of Virginia |

#4846-0297-3755

# EXHIBIT E


**WSFS** Wilmington Savings
Fund Society, FSB

June 7, 2019

ERP Compliant COKE, LLC
c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578
Attention Thomas Clarke

Thomas M. Clarke
c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578

Ana Mercedes Clarke
c/o ERP Compliant Fuels, LLC
15 Appledore Lane
Natural Bridge, Virginia 24578

Re:     **Demand For Payment**

Mr. Clarke and Ms. Clarke:

Reference is made to that certain Indenture, dated as of January 30, 2017 (as modified, supplemented and/or amended and in effect on the date hereof, the "*Indenture*"), among ERP Iron Ore, LLC, as Issuer (the "*Issuer*"), the Guarantors Listed on the Signature Pages Thereto (each a "*Guarantor*," and collectively, the "*Guarantors*") and Wilmington Savings Fund Society, FSB, as Trustee, Collateral Agent, Paying Agent, Registrar and Calculation Agent (the "*Trustee*"), relating to those certain Floating Rate Senior Secured Amortizing PIK Toggle Notes due 2019 (the "*Notes*") issued by the Issuer. Reference is further made to that certain Guarantee Agreement, dated as of January 30, 2017 (as modified, supplemented and/or amended and in effect on the date hereof, the "*Guarantee*") made by Thomas Matthew Clarke, Ana Mercedes Clarke, the Issuer and ERP Compliant Coke, LLC (the "*Coke Guarantor*"), in favor of the Trustee. Capitalized terms not defined herein have the meanings ascribed to such terms in the Indenture.

On July 17, 2018, an Event of Default occurred pursuant to Section 6.01(a)(9)(i)(B) of the Indenture upon the Issuer's consent to an order for relief in *In re ERP Iron Ore, LLC*, Case No. 18-50378 (Bankr. D. Minn.). On that same day (the "*Acceleration Effective Date*"), pursuant to Section 6.02(a)(2), all principal and accrued and unpaid interest on the Notes became immediately due and payable.

Given the occurrence of the Event of Default under Section 6.01(a)(9) of the Indenture, pursuant to Sections 6.02(b) and (c) of the Indenture, a 180-day standstill period commenced on

the Acceleration Effective Date against the Coke Guarantor (the *"Standstill Period"*). The Standstill Period expired on January 14, 2019. The Trustee was not furnished with a Redemption Failure Notice (as defined in the Indenture) within ten (10) Business Days following the expiration of the Standstill Period, as required by the Indenture. As a result, the Trustee, Collateral Agent and the holders of the Notes (each a *"Holder,"* and collectively, the *"Holders"*) may pursue any available remedy to collect payment of principal, premium, if any, and interest on the Notes or to enforce the performance of any provision of the Notes or the Indenture, including the payment of attorneys' fees and expenses.

Pursuant to Section 2.1 of the Guarantee and Section 11.01(a) of the Indenture, each Guarantor has jointly and severally, irrevocably and unconditionally guaranteed the payment of all principal and interest due and owing on the Notes and all other Issuer Obligations (as defined in the Guarantee), and pursuant to the Guarantee has agreed to pay immediately any amounts due under their Guarantor Obligations (as defined in the Guarantee). Additionally, pursuant to Section 2.1(c) of the Guarantee and Section 11.01(c) of the Indenture, each Guarantor has also agreed to pay all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee or any Holder in enforcing its rights under the Guarantee or the Indenture.

The Trustee hereby demands upon you, as Guarantors, the immediate payment in full of all of the Issuer's obligations owed under the Indenture and Notes, including all costs and expenses (including, without limitation, attorneys' fees and expenses) of the Trustee. For your information, the unpaid principal balance due under the Notes as of May 31, 2019, is $14,838,963.00, accrued but unpaid interest thereon as of May 31, 2019, is $135,341.34, and the costs and expenses of the Trustee as of May 31, 2019 are $232,722.00, for a total of $15,207,026.34 (the *"Payoff Amount"*). In the event the Payoff Amount is not paid on the date hereof in U.S. Dollars by Federal reserve wire transfer of immediately available funds to the account set forth on Exhibit A, the Payoff Amount shall be increased by an amount equal to $4,365.85 for each day the Payoff Amount remains unpaid, plus any costs and fees, including attorneys' fees and expenses incurred on or after May 31, 2019.

In addition to the above amounts, the Guarantors are responsible for all continuing costs and expenses incurred by the Trustee or any Holder in enforcing their respective rights and remedies under the Indenture and Guarantee or otherwise incurred in connection with the collection of the Issuer's obligations to the Trustee (including, without limitation, court costs and attorneys' fees). Accordingly, the Guarantors' prompt attention and cooperation with respect to this matter is important and necessary.

Nothing contained in this notice, nor any other action or inaction by the Trustee shall constitute an election of remedies. The Trustee reserves all rights, remedies and causes of action available under the Indenture, Notes, Guarantee and applicable law.

Sincerely,

Geoffrey J. Lewis
Vice President

**Exhibit A**

Wire Instructions

Wilmington Savings Fund Society, FSB
409 Silverside Rd. Wilmington, DE 19809
ABA 031100102
A/C Name: CT TS Wire Processing
A/C Number: 210400800
FFC: CH120269-0
FFC A/C ERP Irone Ore, LLC Floating Rate Sr Sec Amort PIK Tog Nts due 2019
Attn: Geoff Lewis

# EXHIBIT F

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made by and among Wilmington Savings Fund Society, FSB, solely in its capacity as Indenture Trustee for the Floating Rate Senior Secured Amortizing PIK Toggle Notes Due 2019 and not its individual capacity ("Wilmington"), and Nauni Manty, solely in her capacity as chapter 7 trustee of the bankruptcy estate of ERP Iron Ore, LLC (the "Trustee"). Hereinafter, the parties identified above are referred to individually as a "Party" and collectively as the "Parties".

## RECITALS

**WHEREAS**, this case was commenced by the filing of an involuntary petition for relief under chapter 7 on May 25, 2018, Case No. 18-50378. On July 16, 2018, ERP Iron Ore, LLC (the "Debtor") consented to relief under the bankruptcy code. On July 17, 2018, the court ordered relief and on that same day, the Debtor voluntarily converted the case to a case under chapter 11. The case was converted to a case under chapter 7 on December 1, 2018;

**WHEREAS**, the Trustee was appointed as the chapter 7 trustee of the bankruptcy estate of the Debtor on December 3, 2018;

**WHEREAS**, on December 17, 2018, Wilmington, Progress Rail Leasing Corporation, Merida Natural Resources, LLC, Thomas M. Clarke and Ana M. Clarke commenced an adversary proceeding against White County, Indiana, the Trustee and Lighthouse Management Group, Inc., ADV No. 18-05034 (the "Adversary Proceeding"). The Adversary Proceeding seeks to, among other things, determine the validity, priority and extent of Wilmington's interest in the sale proceeds of the Debtor's Indiana assets. The Trustee asserted various counterclaims against Wilmington, among others, in the Adversary Proceeding;

**WHEREAS,** the Trustee is holding the following funds in segregated accounts: (a) the net sale proceeds from the sale of the Indiana assets of $6,725,000.00 (the "Indiana Proceeds"); (b) $700,942.33 related to the Jefferies, LLC fee application resolution (the "Jefferies Fee Funds"); (c) proceeds from a debtor in possession account of approximately $519,759.36 (which is subject to a cash collateral stipulation and further reduction in connection therewith) (the "DIP Account"); the payroll account in the amount of $63,211.84 (the "Payroll Account") and professional fees of $21,852.46 (the "Professional Fee Account"). In addition, the Trustee is holding or will be holding the net sale proceeds in connection with the sale of certain of Debtor's Minnesota assets, which includes, but is not limited to, real and personal property known as "Plant 1", "Jessie Load Out", "Plant 2" and "Plant 4", and the Torrens real property (the "Minnesota Proceeds");

**WHEREAS,** Wilmington is the trustee, collateral agent, paying agent, registrar and calculation agent under that certain indenture, dated as of January 30, 2017 (together with all related loan and security documents, the "Indenture"), by and among the Debtor, each of the guarantors named therein, and Wilmington, as trustee, collateral agent, paying agent, registrar and calculation agent, pursuant to which the Debtor issued its Floating Rate Senior Secured Amortizing PIK Toggle Notes (together with an PIK Notes (as defined in the Indenture) issued from time to time as permitted under the Indenture, the "Notes"), in the original, aggregate principal amount of $22,500,000;

**WHEREAS,** Wilmington holds a Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated July 19, 2017, executed by the Debtor, as Mortgagor, to Wilmington, as Mortgagee, and recorded on July 21, 2017, with the Office of the St. Louis County Registrar of Titles, as Document No. 987511.0 for real property as described therein (the "St. Louis County Mortgage");

**WHEREAS,** Wilmington holds a Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated August 11, 2017, executed by the Debtor, as Mortgagor, to Wilmington, as Mortgagee, and recorded on August 24, 2017, with the Office of the Itasca County Registrar of Title, as Document No. T000063622 for real property described therein (the "Itasca County Mortgage");

WHEREAS, in connection with the St. Louis County Mortgage and the Itasca County Mortgage, Wilmington filed a UCC Financing Statement with the Virginia Secretary of State's Office on February 3, 2017, as Document No. 1702033951-3 and with the Minnesota Secretary of State's Office on February 3, 2017, as Document No. 932569300034;

**WHEREAS,** Wilmington filed a claim in the bankruptcy case (Claim No. 21) asserting a secured claim in an amount not less than $15,314,457.64 (the "Wilmington Secured Claim"); and

**WHEREAS,** on August 23, 2019, the Trustee and Wilmington participated in a mediation before Judge Michael E. Ridgway and thereafter resolved the claims against one another in connection with the Adversary Proceeding, Wilmington's interest in the proceeds related to the Jefferies Fee Funds and Wilmington's interest in the Minnesota Proceeds.

**NOW THEREFORE,** in order to avoid further litigation and to resolve the issues among them, the Parties hereby agree as follows:

1. <u>Bankruptcy Court Approval</u>. The Trustee has filed a notice of settlement or compromise with the bankruptcy court for entry of an order approving the settlement. The Parties acknowledge that the settlement is subject to approval by the bankruptcy court. If the bankruptcy court does not approve the settlement by entry of a final, non-appealable order (the "Order"), this Agreement shall be null and void and of no force and effect against any of the Parties.

2. <u>Settlement</u>. In order to settle: (a) the Parties' claims against each other in the Adversary Proceeding; (b) Wilmington's interest in the Indiana Proceeds, (c) Wilmington's interest in the Jefferies Fee Funds; (d) Wilmington's interest in the Minnesota Proceeds; and (e) Wilmington's claims including the Wilmington Secured Claim, in part, Wilmington and the Trustee agree as follows:

(a) Within 5 days after entry of the Order, the Trustee will disburse $6,725,000.00 to Wilmington in connection with the Indiana Proceeds pursuant to wire instructions provided to the Trustee by Wilmington;

(b) Within 5 days after entry of the Order, the Trustee will disburse $350,942.33 to Wilmington in connection with the Jefferies Fee Funds pursuant to wire instructions provided to the Trustee by Wilmington;

(c) Wilmington will receive a total of $7,075,942.33, as detailed in sections (a) and (b) above, pursuant to the Wilmington Secured Claim, and the Wilmington Secured Claim shall be reduced accordingly;

(d) Wilmington will maintain a deficiency unsecured claim in the bankruptcy case, which unsecured claim shall be deemed to be an allowed claim for all purposes of this bankruptcy case, provided however that such claim shall be reduced by the amount, if any, actually received by Wilmington pursuant to its properly perfected security interest in the remaining property of the Debtor.

(e) For the avoidance of doubt, Wilmington shall not be entitled to recover from the estate on account of such claim an amount in excess of the Wilmington Secured Claim, minus any amounts received by Wilmington from a guarantor of Wilmington's claim, it being understood by the parties that Wilmington may be entitled to recover additional amounts to which it is entitled

under the Indenture from a guarantor of Wilmington's claim, including, but not limited to amounts related to accrued, but unpaid interest and certain fees.

(f)     Wilmington will retain the Wilmington Secured Claim and liens, with the same dignity, priority or extent that it has in the DIP Account, the Professional Fee Account and Payroll Account, provided that such liens shall not attach to any property sold or to be sold as a part of the sale of certain of the Debtor's real and personal property located in Minnesota and commonly known as Plant 1, Plant 2, Plant 4 and Jessie Load Out, the Torrens Minnesota real property and any proceeds thereof;

(g)     Subject to Wilmington's receipt of the amounts set forth in 2(a) and 2(b) above, Wilmington and the Trustee shall enter into a "Participation of Note and Mortgages" in the form attached hereto as Exhibit A pursuant to which Wilmington will grant a participation to the Trustee (the "Participation of Note and Mortgages"), for the benefit of the estate, in (i) the St. Louis County Mortgage and the Itasca County Mortgage in connection with the Minnesota Torrens real property, including the personal property assets associated therewith and (ii) its rights under the Wilmington Secured Claim solely to the maximum extent of the proceeds of the sale of the property secured by the St. Louis County Mortgage and the Itasca County Mortgage, which amount may only be collected from the sale proceeds attributable to the Minnesota Torrens property, including the personal property assets associated therewith. The participation to the Trustee of that portion of the amount of the Wilmington Secured Claim reflected above shall not reduce Wilmington's deficiency unsecured claim;

(h)     Subject to Wilmington's receipt of the amounts set forth in 2(a) and 2(b) above, Wilmington will be deemed to have released its lien in the remaining $350,000.00 that the Trustee is holding in a segregated account in connection with the Jefferies Fee Funds; and

(i)     Each of the Trustee and Wilmington will exchange the releases described in paragraph 4 of this Agreement.

(j)     For the avoidance of doubt, nothing contained in this Agreement shall impair, impact, or prejudice the unrelated unsecured claim filed by Wilmington Savings Fund Society, FSB as Indenture Trustee under the Fixed Rate Junior Secured Notes Indenture, dated as of December 22, 2017, by and among Mesabi Metallics Company LLC, as issuer, ERP Iron Ore, LLC as Guarantor, and Wilmington Savings Fund Society, FSB, as Trustee, Collateral Agent, Paying Agent and Registrar (Claim No. 25).

3.     <u>Dismissal of the Adversary Proceeding</u>. Promptly following entry of the Order, the Trustee will file a stipulation of dismissal between Wilmington and the Trustee in the form attached hereto as Exhibit B, that dismisses all claims against one another, with prejudice, and with each party to pay its own costs and attorneys' fees.

4.     <u>Mutual Releases</u>.

(a)     *Trustee and Estate's Release of Wilmington*. Subject to the terms of this Agreement, and subject to (i) Wilmington's receipt of the amounts set forth in 2(a) and 2(b), and (ii) the Trustee's receipt of the fully executed Participation of Note and Mortgages, the Trustee and the estate irrevocably and fully release and forever discharge Wilmington of and from any and all actions, manner of actions, causes of action, suits, proceedings, debts, contract claims, liabilities, monies, reimbursements, judgments, covenants, claims, complaints, controversies, damages, costs and expenses (including attorneys' fees and costs actually incurred), and demands of any kind, including, but not limited to any such claims for contribution or claims under sections 506(c), 547, 548 or 549 of the Bankruptcy Code, whether known or unknown, direct or indirect, liquidated or unliquidated, in law or equity, contract or tort, that the Trustee and the estate may now have, ever

had, or ever may have arising from or relating to the Wilmington Secured Claim, Wilmington's deficiency claim, the Adversary Proceeding or the bankruptcy case, including the Indiana Proceeds, Minnesota Proceeds, and the Jefferies Fee Funds. For the sake of clarity, Wilmington will maintain a deficiency unsecured claim in the bankruptcy case, subject to the limitations sets forth in 2(d) above. Wilmington shall also retain its secured claim, with the same dignity, priority or extent that it has in the DIP Account, the Professional Fee Account and Payroll Account.

(b) *Wilmington's Release of the Trustee and the Estate.* Subject to the terms of this Agreement, Wilmington irrevocably and fully releases and forever discharges the Trustee and the estate of and from any and all actions, manner of actions, causes of action, suits, proceedings, debts, contract claims, liabilities, monies, reimbursements, judgments, covenants, claims, complaints, controversies, damages, costs and expenses (including attorneys' fees and costs actually incurred), and demands of any kind, including, but not limited to any such claims for contribution, whether known or unknown, direct or indirect, liquidated or unliquidated, in law or equity, contract or tort, that Wilmington may now have, ever had, or ever may have arising from or relating to the Wilmington Secured Claim, Wilmington's deficiency claim, the Adversary Proceeding or the bankruptcy case, including the Indiana Proceeds, Minnesota Proceeds, and the Jefferies Fee Funds. For the sake of clarity, Wilmington will maintain a deficiency unsecured claim in the bankruptcy case, subject to the limitations set forth in 2(d) above. Wilmington shall also retain its secured claim, with the same dignity, priority or extent that it has in the DIP Account, the Professional Fee Account and Payroll Account.

5. <u>Cooperation</u>. Wilmington shall take all steps reasonably necessary to carry out the intent of this Agreement, including without limitation, assigning the Mortgages to the Trustee, if necessary, upon her request.

6.    <u>Voluntary Act</u>. Each Party acknowledges and represents that it is represented by a licensed attorney or has had the opportunity to consult with an attorney of its choice with respect to this Agreement. Each Party represents and declares that in executing this Agreement it has relied solely upon its own judgment, belief and knowledge, and the judgment, belief, and knowledge of an attorney of its choice concerning the nature, extent and duration of its rights and claims, and that it has not been influenced to any extent whatsoever in executing this Agreement by any representations or statements by any Party that are not expressly contained or referred to herein.

7.    <u>Construction</u>. Because each Party's attorney has reviewed this Agreement, or has had the opportunity for an attorney of its own choosing to review this Agreement, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

8.    <u>No Admission of Liability</u>. Neither this Agreement, any provision in this Agreement, any document referred to in this Agreement nor any action taken to carry out this Agreement is or may be construed as or may be used against any of the Parties or third parties as an admission or concession on any point of fact or law, of any alleged fault, wrongdoing or liability whatsoever.

9.    <u>Minnesota Law</u>. This Agreement shall be governed by, construed and enforced in accordance with Minnesota law.

10.    <u>No Assignment</u>. The Parties represent and warrant that they have not transferred or assigned or otherwise sold any portion of their claims, interests, defenses or causes of action of any nature whatsoever that each Party is releasing or assigning hereunder and that each such Party is the sole owner of all such respective claims, interests, defenses or causes of action.

11.    <u>Execution in Counterparts</u>. This Agreement may be executed in two or more counterparts, all of which taken together shall constitute one instrument. This Agreement may be

executed by exchange of facsimile or electronic copies of original executed signatures and each such copy shall be deemed to be an original executed signature.

12.     <u>Further Assurances and Additional Documents</u>.  Wilmington, at the request of the Trustee, at any time and from time to time following the execution of this Agreement, shall promptly execute and deliver, or cause to be executed and delivered, to the Trustee all such further documents and instruments and take all such further action as may be reasonably necessary or appropriate to confirm or carry out the terms of this Agreement, including the transfer of a fraction of the Wilmington Secured Claim as contemplated herein.  Likewise, the Trustee, at the request of Wilmington, at any time and from time to time following the execution of this Agreement, shall promptly execute and deliver, or cause to be executed and delivered, to Wilmington all such further documents and instruments and take all such further action as may be reasonably necessary or appropriate to confirm or carry out the terms of this Agreement.

13.     <u>Entire Agreement</u>. This Agreement, together with the notice of settlement, the Order, the stipulation of dismissal and the Participation of Note and Mortgages, sets forth the complete agreement of the Parties with respect to the subject matter hereof and may not be modified, waived or changed, except by a writing signed by the Party to be bound thereby. This Agreement is binding upon the Parties and their respective successors and assigns.

*[remainder of page intentionally left blank – signature page to follow]*

**WHEREFORE**, each of the Parties hereto executes and delivers this Agreement as of the date(s) set forth below.

Date: October 24, 2019

_____

Nauni Manty, in her capacity as trustee
of the bankruptcy estate of ERP Iron Ore,
LLC

Date: _____

_____

Wilmington Savings Fund Society, FSB,
solely in its capacity as Indenture Trustee for
the Floating Rate Senior Secured Amortizing
PIK Toggle Notes Due 2019 and not its
individual
capacity      Geoffrey J. Lewis
By:            Vice President
Its:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UMB Bank, national association, AS TRUSTEE
               Plaintiff,

   - against -

BLUESTONE COKE, LLC f/k/a
ERP COMPLIANT COKE, LLC,
THOMAS MATTHEW CLARKE,
and ANA MERCEDES CLARKE

               Defendants.

:
:
:
:
:
:
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT UNDER CPLR § 3213**

## TABLE OF CONTENTS

SECTION             HEADING             PAGE

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .........................................................................................................1

       I.      THE NOTES AND GUARANTEE AGREEMENT ..............................................................1

       II.     DEFAULT UNDER THE INDENTURE, NOTES, AND GUARANTEE AGREEMENT .............4

ARGUMENT ..........................................................................................................................7

       I.      UNDER CPLR § 3213, PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT
            FOR NONPAYMENT OF THE NOTES UNDER THE GUARANTEE AGREEMENT ...............7

CONCLUSION.........................................................................................................................8

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Cooperative Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485 (2015).........7

*Maglich v. Saxe, Bacon & Bolan, P.C.*, 468 N.Y.S.2d 618 (1st Dept. 1983)................................7

*Parry v. Goodson*, 452 N.Y.S.2d 635 (1982) ..............................................................................7

*SCP (Bermuda) Inc. v. Bermudatel Ltd.*, 638 N.Y.S.2d 2 (1st Dept. 1996) ...................................8


**Statutes**

11 U.S.C. § 303 ...........................................................................................................................4

CPLR § 3213 ...................................................................................................................1, 7, 8

N.Y. Gen. Oblig. Law § 1401 .......................................................................................................7

N.Y. Gen. Oblig. Law § 1402 .......................................................................................................7

## PRELIMINARY STATEMENT

Plaintiff UMB Bank, National Association (*"UMB"*) brings this action in its capacity as successor Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the Floating Rate Senior Secured Amortizing PIK Toggle Notes Indenture, dated as of January 11, 2017 (the *"Indenture"*) to recover sums owed by the defendants Bluestone Coke, LLC f/k/a ERP Compliant Coke, LLC (*"ERP Compliant Coke"*), Thomas Matthew Clarke (*"Thomas"*), and Ana Mercedes Clarke (*"Ana"*) (together with ERP Compliant Coke and Thomas, collectively, the *"Defendants"*). The obligations arise under (1) the Floating Rate Senior Secured Amortizing PIK Toggle Notes due December 31, 2019 in the aggregate principal amount of $22,500,000 issued pursuant to the Indenture (the *"Notes"*); (2) the Guarantee Agreement dated as of January 11, 2017 (the *"Guarantee Agreement"*) under which Thomas and Ana each guaranteed the Notes; and (3) the Indenture, under which ERP Compliant Coke guaranteed the Notes. The issuer of the Notes failed to honor its obligation to repay Plaintiff the principal, interest, and legal fees now due and owing. As the Notes, Indenture, and the Guarantee Agreement are instruments for the payment of money only, Plaintiff is entitled to summary judgment against the Defendants under CPLR § 3213.

## STATEMENT OF FACTS

### I.     THE NOTES AND GUARANTEE AGREEMENT

On January 30, 2017, ERP Iron Ore, LLC (*"ERP Iron"*) entered into the Indenture with Wilmington Savings Fund Society, FSB (*"WSFS"*), which, at the time, served as Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the Indenture. Affidavit of Gordon Gendler (*"Gendler Aff."*) ¶ 3, attached hereto as Exhibit 1. A true and correct copy of the Indenture is attached to the Gendler Affidavit as Exhibit A. On that same date, ERP Iron Ore and WSFS executed the Notes, true and correct copies of which are attached to the Gendler Affidavit as Group Exhibit B. The Notes are governed by the terms and conditions of the

INDEX NO. 650854/2020
NYSCEF DOC. NO. 10

RECEIVED NYSCEF: 02/06/2020

Indenture, including, but not limited to, the default provisions applicable upon default under the

Notes. Gendler Aff, Ex. B, p. 7, §§4, 11.

On November 29, 2019, WSFS was removed and the Plaintiff was appointed as successor

Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the Indenture and

other related documents, and the Plaintiff accepted such appointment. Gendler Aff. ¶ 4. A true

and correct copy of the Instrument of Removal, Appointment and Acceptance is attached to the

Gendler Affidavit as Exhibit C.

Pursuant to Article 11 of the Indenture, ERP Complaint Coke:

> **[J]ointly and severally irrevocably and unconditionally guarantees**, on a senior secured basis, to each Holder and to the Trustee and its successors and assigns, in its capacity as Trustee and in each other capacity in which the Trustee serves as an Agent, irrespective of the validity and enforceability of th[e] Indenture, the Notes or the Obligations of the Issuer hereunder or under any other Notes Document, that: (1) the principal, premium and Additional Amounts, if any, and interest on the Notes shall be promptly paid in full when due, whether at Stated Maturity, by acceleration, redemption or otherwise, and interest on the overdue principal and interest on the Notes, if any, if lawful, and all other Obligations of the Issuer to the Holders or the Trustee hereunder or under the Notes Documents shall be promptly paid in full or performed, all in accordance with the terms hereof and thereof; and (2) in case of any extension of time of payment or renewal of any Notes or any of such other obligations, that same shall be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at Stated Maturity, by acceleration or otherwise collectively, the "Guaranteed Obligations". Failing payment by the Issuer when due of any amount so guaranteed or any performance so guaranteed for whatever reason, the Guarantors shall be jointly and severally obligated to pay. Each Guarantor agrees that this is a guarantee of payment and not a guarantee of collection.

Gendler Aff. Ex. A at § 11.01(a) (emphasis added).

Further, under the Indenture, ERP Compliant Coke agreed that its:

> . . . Obligations [t]hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes or this

> Indenture or any other Notes Document, the absence of any action to enforce the same, any waiver or consent by any Holder with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor. Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuer, protest, notice and all demands whatsoever and covenants that this Note Guarantee shall not be discharged except by complete performance of the Obligations contained in the Notes, this Indenture and each other Notes Document, or [if a Guarantor has been released pursuant to the terms of the Indenture.

Gendler Aff. Ex. A at § 11.01(b).

Concurrently with the Indenture, Thomas and Ana executed the Guarantee Agreement as Guarantors. Gendler Aff. ¶ 5. A true and correct copy of the Guarantee Agreement is attached as Exhibit D to the Gendler Affidavit. The Guarantee Agreement was executed pursuant to and subject to the Indenture. Gendler Aff. Ex. A at § 11.01.

Under the Guarantee Agreement, Thomas and Ana agreed:

> **[J]ointly and severally, irrevocably and unconditionally guarantees** on a senior unsecured basis to each Holder and to the Trustee and to each of their successors and assigns, irrespective of the validity and enforceability of the Indenture, the Notes or any other Issuer Obligations thereunder that the principal, premium, if any, and interest on the Notes shall be promptly paid in full when due, whether as Stated Maturity, by acceleration, redemption, or otherwise, and interest on the overdue principal and interest on the Notes, if any, if lawful, and all other Issuer Obligations to the Holders, the Trustee and Collateral Agent under the Indenture or the Notes shall be promptly paid in full or performed.

Gendler Aff. Ex. D at § 2.1(a) (emphasis added). Thomas and Ana further agreed that:

> [T]heir Guarantor Obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes or the Indenture, the absence of any action to enforce the same, any waiver or consent by any Holder with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which

- 3 -

> might otherwise constitute a legal or equitable discharge or defense
> of a Guarantor.

Gendler Aff. Ex. D at § 2.1(b). Thomas and Ana also agreed to waive:

> [D]iligence, presentment, demand of payment, filing of claims with
> a court in the event of insolvency or bankruptcy of the Issuer, any
> right to require a proceeding first against the Issuer, protest, notice
> and all demands whatsoever and covenants that the Guarantor
> Obligations shall not be discharged except by complete performance
> of the Obligations contained in the Notes [and the Indenture].

Gendler Aff. Ex. D at §2.1(b).

In addition, each Defendant agreed to guarantee, jointly and severally, "all costs and
expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee, the
Collateral Agent, or any Holder in enforcing any rights under [the Guarantee Agreement] or the
Indenture." Gendler Aff. Ex. D at § 2.1(c) (Thomas and Ana); Gendler Aff. Ex. A at § 11.01(c)
(ERP Compliant Coke).

Pursuant to the Guarantee Agreement, Thomas agreed to be an Unlimited Guarantor (as
defined in the Guarantee Agreement). Gendler Aff. Ex. D. The parties, however, agreed that Ana
was a "Limited Guarantor" and that her guaranty was limited to the value of her interest in the
"Guarantee Shares" as of the date of the Guarantee Agreement. Gendler Aff. Ex. D at § 2.2(b).
The "Guarantor Shares" include Ana's 38.5 percent ownership in each of Seneca Coal Resources,
LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited (the *"Capital Stock"*).
Gendler Aff. Ex. D at Schedule 2.

## II.  DEFAULT UNDER THE INDENTURE, NOTES, AND GUARANTEE AGREEMENT

On May 25, 2018, certain creditors filed an involuntary petition under 11 U.S.C. § 303(a)
of the U.S. Bankruptcy Code against ERP Iron, commencing a bankruptcy case in the U.S.
Bankruptcy Court for the District of Minnesota styled as *In re ERP Iron Ore, LLC*, Case No. 18-

50378 (the *"Bankruptcy Case"*). That case is ongoing as of the date of the filing of this Complaint. Gendler Aff. ¶ 7.

On July 17, 2018, an Event of Default under the Indenture occurred pursuant to Section 6.01(a)(9)(i)(B) of the Indenture when ERP Iron consented to an order for relief in the Bankruptcy Case. Gendler Aff. ¶ 8. On that same day, all principal and accrued and unpaid interest on the Notes was accelerated and became immediately due and payable under Section 6.02(a)(2) of the Indenture. Gendler Aff. ¶ 9. Upon acceleration of all principal and accrued and unpaid interest on the Notes on July 17, 2018, a 180-day standstill period regarding collection from ERP Compliant Coke began running pursuant to Sections 6.02(b) and (c) of the Indenture. Gendler Aff. ¶ 10. WSFS as trustee under the Indenture did not receive a Redemption Failure Notice (as defined in the Indenture) within ten business days following the expiration of the standstill period, as required by the Indenture. Gendler Aff. ¶ 11; Ex. A § 6.02(b). Thus, pursuant to the terms of the Indenture as well as the passage of time, the 180-day standstill period has expired. Gendler Aff. ¶ 11.

Accordingly, the Trustee, Collateral Agent, and holders of the Notes were each then empowered to pursue any available remedy to collect payment of principal, premium, and interest on the Notes including the payment of attorneys' fees and expenses. Gendler Aff. ¶ 12.

Pursuant to Section 2.1 of the Guarantee Agreement and Section 11.01(a) of the Indenture, each Defendant is currently, jointly and severally liable for immediate payment of all principal and interest due and owing on the Notes and all other Obligations (as defined in the Indenture) and Issuer Obligations (as defined in the Guarantee Agreement), except that Ana's guaranty is limited to the value of the Capital Stock that she held when the parties entered into the Indenture. Gendler Aff. Ex. D.

On June 7, 2019, WSFS delivered a written demand to Defendants seeking collection of all Issuer Obligations that, at the time, totaled no less than $15,207,026.34, consisting of principal and interest and costs and expenses up to and including May 31, 2019. Gendler Aff. ¶ 13. Since then, the amount of Issuer Obligations has continued and will continue to accrue in the form of interest (including interest at the default rate pursuant to Section 2.12(a) of the Indenture), costs and expenses (including the reasonable attorneys' fees and expenses of the trustee and the holders pursuant Section 2.1(c) of the Guarantee and Section 7.07(b) of the Indenture), among other sources of Issuer Obligations. Gendler Aff ¶ 14. A true and correct copy of the written demand is attached to the Gendler Affidavit as Exhibit E. Despite demand, after the date of the written demand, none of the Defendants has made payment under the Guarantee Agreement. Gendler Aff. ¶ 15.

Upon information and belief, on September 24, 2019, ERP Compliant Coke changed its name to Bluestone Coke, LLC. Gendler Aff ¶ 15.

On October 24, 2019, WSFS, as indenture trustee for the Notes, entered into a settlement with the Chapter 7 Trustee, Nauni Manty, appointed in the Bankruptcy Case. Pursuant to that settlement, the Chapter 7 Trustee agreed to disburse $7,075,942.33 to WSFS, which served as trustee at the time of the distribution. Gendler Aff. ¶ 16. A true and correct copy of the settlement agreement is attached to the Gendler Affidavit as Exhibit F. After payment of WSFS's fees and expense to which it was entitled under the Indenture and the retention of a reserve amount in the trust estate, an amount equal to $6,069,803.31 was distributed to the holders of the Notes for payment of principal and interest due on the Notes. Gendler Aff. ¶ 17.

Currently, $10,583,861.76 in principal; plus accrued, but unpaid, interest in the amount of $264,555.38; plus unpaid fees, including attorneys' fees and costs, is outstanding on the Notes and

due under the Indenture and Guarantee Agreement. Gendler Aff. ¶ 18. The amount of unpaid fees

includes an amount equal to at least $376,650.66 attributable to attorneys fees and expenses owed

to certain holders of the Notes, as permitted by the Guarantee Agreement and the Indenture.

Gendler Aff. ¶18; Gendler Aff. Ex. A at § 11.01(c) (ERP Compliant Coke); Ex. D at § 2.1(c)

(Thomas and Ana).

Plaintiff now brings this lawsuit to collect on the obligations owed by Defendants.

Jurisdiction and venue in this Court are proper because Defendants have submitted to jurisdiction

in this Court and because the Notes, Indenture, and Guarantee Agreement are each governed by

New York law. Gendler Aff. Ex. A at 13.06; Ex. B at p. 8, §13; Ex. D. at 8.11 and 8.12. Further,

jurisdiction and venue are appropriate here under N.Y. Gen. Oblig. Law §§ 1401 and 1402 and

given those facts because the transaction at issue exceeds one million dollars.

## ARGUMENT

### I. UNDER CPLR § 3213, PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT FOR NONPAYMENT OF THE NOTES UNDER THE GUARANTEE AGREEMENT

Under CPLR § 3213, a plaintiff may bring a motion for summary judgment in lieu of a

complaint in any action that is based upon an instrument for the payment of money only. *Maglich*

*v. Saxe, Bacon & Bolan, P.C.*, 468 N.Y.S.2d 618, 620 (1st Dept. 1983). Both a promissory note

and an unconditional guaranty of payment are such instruments and are thus enforceable under

CPLR § 3213. *See, e.g., Cooperative Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25

N.Y.3d 485 (2015) (guaranty); *Parry v. Goodson,* 452 N.Y.S.2d 635, 636 (1982) (promissory

note). "CPLR 3213 affords a speedy and efficient remedy to secure a judgment in certain cases

where service of formal pleadings would be unnecessary for the expeditious resolution of the

dispute between the parties." *Maglich*, 468 N.Y.S.2d at 620. The procedure for accelerated

judgment under CPLR § 3213 is appropriate where plaintiff establishes a *prima facie* case by virtue

of an unconditional promise to pay in a note or guaranty and a failure to make payments thereunder. *SCP (Bermuda) Inc. v. Bermudatel Ltd.*, 638 N.Y.S.2d 2, 3 (1st Dept. 1996).

Plaintiff is entitled to summary judgment under CPLR § 3213 as to the Guarantee Agreement and the Indenture because the Defendants executed the Guarantee Agreement, there are no conditions to payment, and the underling obligations are due and owing. Gendler Aff. ¶¶ 3-18. The Notes and Indenture are in default, and under the terms of the Guarantee Agreement, the Defendants are therefore liable but have refused to submit payment. *See* Gendler Aff. Ex. E.

Thus, the Plaintiff is entitled to summary judgment against the Defendants, jointly and severally, in the amount of $11,225.067.80 in principal, accrued interest, and unpaid fees and costs as of February 5, 2020, plus further accruing interest (including interest at the default rate pursuant to Section 2.12(a) of the Indenture), together with all other and further fees and costs associated with collection, including attorneys' fees and costs of the trustee and the holders (pursuant Section 2.1(c) of the Guarantee and Section 7.07(b) of the Indenture). Gendler Aff. ¶ 18.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant it summary judgment against Defendants ERP Compliant Coke, LLC, Thomas Clarke, and Ana Clarke, jointly and severally, for the balance owed under the Indenture, Notes, and Guarantee Agreement, which is $11,225,067.80 as of February 5, 2020 plus further accruing interest, and all other and further attorneys' fees and costs of the trustee and the holders, until Plaintiff receives the full amount owed under the Notes, the Indenture and the Guarantee Agreement, and any such other and further relief as the Court may deem just and proper.

DATED:  February 6, 2020

Respectfully Submitted,

By: _____

Joseph P. Lombardo
Michael Friedman
CHAPMAN AND CUTLER LLP
*Counsel for Plaintiff UMB Bank,*
*National Association, as Trustee*
1270 Avenue of the Americas
New York, NY 10020
(212) 655-6000