**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UMB BANK, NATIONAL ASSOCIATION, AS TRUSTEE, | Case No. 1:20-cv-2043 |
| Plaintiff, | |
| v. | **AFFIDAVIT OF THOMAS M. CLARKE** |
| BLUESTONE COKE, LLC F/K/A ERP COMPLIANT COKE, LLC, | |
| THOMAS M. CLARKE | |
| and | |
| ANA M. CLARKE, | |
| Defendants. | |

1.      I am Thomas M. Clarke.  At all times relevant to this civil action, I have been a resident of the Commonwealth of Virginia.

2.      I make this Affidavit in support of the Motion in Opposition to Motion for Summary Judgment filed by the Plaintiff in this civil action.  Except as otherwise stated herein, the facts stated herein are based upon my personal knowledge.  If called upon to testify, I testify to the facts stated in this Affidavit.

**A.  Limited Guaranty.**

3.      The obligations of Defendant Ana M. Clarke (the "Limited Guarantor") are limited to the value of certain securities owned by the Limited Guarantor as of the date of the Guaranty Agreement.  The Guaranty Agreement, at Section 2.2(b) states as follows:

"(b)    Notwithstanding anything contained in this Agreement or the Contracts, the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall be limited to the value (as certified pursuant to the certificate delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee

Shares" as of the date hereof.  The Limited Guarantor shall not have any obligation or liability to pay in excess of such value under any circumstance."

**See Exhibit A – Guarantee Agreement.**

4.     A footnote to Guaranty Agreement Section 2.2(b) states as follows:

"Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed."

**See Exhibit A – Guarantee Agreement.**

5.     The Plaintiff neither produced a copy of the certificate of the Guarantors described in Section 2.2(b) of the Guaranty Agreement (the "Guarantor Certificate") as an exhibit to its motion or memorandum of law nor offered any explanation for its failure to produce the Guarantor Certificate.  The footnote to Guaranty Agreement Section 2.2(b) is a summary of the contents of the Guarantor Certificate, not a reproduction or copy of, or quotation from, the Guarantor Certificate.

6.     Under the language of the Guaranty Agreement, the statements and information contained in the Guarantor Certificate are necessary to determine the extent, if any, of the Limited Guarantor's liability under Section 2.2(b) of the Guaranty Agreement.  **See Exhibit A – Guarantee Agreement.**

7.     On January 30, 2017, the date of the Guaranty Agreement, Defendant Ana M. Clarke indirectly owned a 38.5% interest in each of Seneca Coal Resources, LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited (together, the "Guaranty Share Entities"). On January 30, 2017, Defendant Thomas M. Clarke did not own, directly or indirectly, any interest in any of the Guaranty Share Entities, but did serve as the Treasurer and a Manager of each of the Guaranty Share Entities. A separate investor group, unrelated to the Clarke Defendants (the

"Majority Owner"), indirectly owned a 43.5% interest in each of the Guaranty Share Entities.  Yet another separate investor group, unrelated to both the Clarke Defendants and each other (the "Minority Owners"), indirectly owned a 18.0% interest in each of the Guaranty Share Entities. **See Exhibit B – Organizational Charts.**

8.     The securities in question (the "Guaranty Shares") consist of a 38.5% interest in each of the Guaranty Share Entities.  The Guaranty Share Entities in turn own a total of ten subsidiary entities.  All of the entities are engaged in the mining, processing, sale and transportation of coal, with related environmental compliance and regulatory obligations.  The coal mines are located in at least six different states and one Canadian province.  The mines produce different grades of coal, used in different industrial processes.  The mines are all in different phases of their economically useful life, ranging from exploratory and development, to active, to closed, to in reclamation. **See Exhibit B – Organizational Charts.**

9.     On January 30, 2017, Defendant Ana M. Clarke was then involved as a member in the governance of the Guaranty Share Entities, but was not involved in the operation of any of the coal mines or in the financial management of any of the business entities comprising the Guaranty Share Entities.  Defendant Ana M. Clarke's experience with the coal assets commenced on or about October, 2015.  Prior to October, 2015, Defendant Ana M. Clarke served as a director and officer of Kissito Healthcare, Inc., a United States based nursing home company, and Kissito Healthcare International, Inc., a relief organization operating in certain east African countries. Defendant Ana M. Clarke's duties with such entities included participation in the governance of both entities, overseeing quality assurance in the US based nursing homes and field work in overseeing the various health clinics and famine relief operations in certain east African countries.

10.     On January 30, 2017, Defendant Thomas M. Clarke was then involved in overseeing the financial management the Guaranty Share Entities and the general management of the Guaranty Share Entities but was not involved in the operation of any of the coal mines. Defendant Thomas M. Clarke's experience with the coal assets commenced on or about October, 2015.  Prior to October, 2015, Defendant Thomas M. Clarke was an owner and/or an executive in various types of health care organizations, including hospitals and nursing homes.  Defendant Thomas M. Clarke founded Kissito Healthcare, Inc. and Kissito Healthcare International, Inc. Defendant Thomas M. Clarke served as a director and president of both organizations.  In such capacity, Defendant Thomas M. Clarke was generally responsible for the management of both the domestic nursing home operations and the overseas health care operations and famine relief operations.  Defendant Thomas M. Clarke is a board member of the Lee County (Virginia) Hospital Authority, a governmental unit which owns an acute-care hospital in Pennington Gap, Lee County, Virginia.  As a member of the governing board, Defendant Thomas M. Clarke assisted the Authority in evaluating options, potential business partners and business plans for re-opening the hospital.  Lee County, Virginia is a rural, mountainous community with only one hospital. Provision of hospital services are critical to the wellbeing of the community.

11.     With respect to the operation of the coal assets, the management team of the Majority Owner and certain of the Minority Owners have extensive training and experience with mining operations and related operations, including coal processing, environmental compliance, coal sale and transportation.  The Clarke Defendants relied upon the expertise and experience of such persons as the Clarke Defendants were learning the coal business.

### B. Amount Due Under the Guaranty Agreement.

12.      The scope of the Guarantor's liability under the Guaranty Agreement is stated

Section 2.1(a) of the Guaranty Agreement. That section, in relevant part, states as follows:

> "Each of the Guarantors hereby, jointly and severally, irrevocably and
> unconditionally guarantees on a senior unsecured basis to each Holder and to the
> Trustee and to each of their successors and assigns, irrespective of the validity and
> enforceability of the Indenture, the Notes or any other Issuer Obligations
> thereunder, that: (1) the principal, premium, if any, and interest on the Notes shall
> be promptly paid in full when due, whether at Stated Maturity, by acceleration,
> redemption or otherwise, and interest on the overdue principal and interest on the
> Notes, if any, if lawful, and all other Issuer Obligations to the Holders, the Trustee
> and Collateral Agent under the Indenture or the Notes shall be promptly paid in full
> or performed, all in accordance with the terms thereof . . .."

**See Exhibit A – Guarantee Agreement.**

13.      In the Plaintiff's Affidavit, the Plaintiff alleges that as of February 5, 2020,

$10,583,861.76 in principal; plus accrued, but unpaid, interest in the amount of $264,555.38; plus

unpaid fees, including attorneys' fees and costs, is outstanding on the Notes and due under the

Indenture and Guarantee Agreement.  **See Gendler Affidavit, Paragraph 18.**

14.      The Plaintiff's Affidavit includes some general verbiage as to how the Plaintiff

determined the amount due, but does not contain a worksheet or other disclosure in sufficient detail

to verify the accuracy of the amount alleged to be due under the Notes, the Indenture and Guarantee

Agreement.

15.      On or about October 24, 2019, the Chapter 7 Trustee disbursed to WSFS, as

Indenture Trustee, $7,075,942.33 from proceeds of the sale of substantially all of the collateral for

the Notes.  WSFS, as Indenture Trustee, applied $6,006,803.31 to amounts due under the Notes.

**See Gendler Affidavit, Paragraphs 16 and 17.**

16.      WSFS, as Indenture Trustee, retained $1,006,139.02 to pay fees and expenses

(including attorney fees) previously incurred and to a reserve amount in the trust estate.  No detail

is provided for either the fees and expenses previously incurred or for the amount or purpose of the reserve. **See Gendler Affidavit, Paragraphs 16 and 17.**

17. Section 7.07(a) of the Indenture, in relevant part, provides as follows:

The Issuer shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it, in its capacity as Trustee and as an Agent, in addition to the compensation for its services. Such expenses shall include the reasonable compensation, disbursements and expenses of the respective agents and counsel of the Trustee and the Collateral Agent.

**See Exhibit C – FLOATING RATE SENIOR SECURED AMORTIZING PIK TOGGLE NOTES INDENTURE.**

18. To the knowledge of the Clarke Defendants, the Indenture Trustee never served a request for reimbursement on either ERPI or the Clarke Defendants. To the knowledge of the Clarke Defendants, the Indenture Trustee never provided to either ERPI or the Clarke Defendants sufficient information concerning its disbursements and expenses to evaluate the reasonableness thereof.

19. Section 7.01(e) of the Indenture, in relevant part, provides as follows:

The Trustee shall be under no obligation to exercise any of the rights or powers under this Indenture, Collateral Documents, the Notes and the Note Guarantees at the request or direction of any of the Holders or expend or risk its own funds or otherwise incur financial liability in the performance of its duties hereunder or under any of the Notes Documents unless such Holders have offered to the Trustee indemnity or security reasonably satisfactory to it against any loss, liability or expense.

**See Exhibit C – FLOATING RATE SENIOR SECURED AMORTIZING PIK TOGGLE NOTES INDENTURE.**

20. To the knowledge of the Clarke Defendants, the Indenture Trustee never provided to either ERPI or the Clarke Defendants sufficient information concerning the purposes or amount of the reserve to evaluate whether the reserve is permitted under the Indenture or the reasonableness thereof.

6

I hereby affirm, under penalty of perjury that the facts stated in this Affidavit are true and correct to the best of my knowledge and belief.

_____
Thomas M. Clarke

Sworn before me this __8__ day of June, 2020.

[SEAL]

_Jennifer Elaine Bell_
Notary Public

My Commission expires: 10/31/2020



7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 8, 2020 a copy of foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants. Interested parties may access this filing through PACER.

Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com
Virginia Bar Number:  90482
Maryland CPF Number:  8501010159

*Counsel for the Clarke Defendants*