UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UMB BANK, NATIONAL ASSOCIATION, AS TRUSTEE,<br><br>                                   Plaintiff,<br><br>v.<br><br>BLUESTONE COKE, LLC F/K/A ERP COMPLIANT COKE, LLC,<br><br>THOMAS M. CLARKE<br><br>and<br><br>ANA M. CLARKE,<br><br>                                   Defendants. | Case No. 1:20-cv-2043 (LJL)<br><br>**DEFENDANTS THOMAS M. CLARKE AND ANA M. CLARKE'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS [DOC 33] AND STATEMENT OF ADDITIONAL MATERIAL FACTS UNDER LOCAL CIVIL RULE 56.1(B)** |

Defendants Thomas M. Clarke and Ana M. Clarke (the "Clarke Defendants"), by their counsel Timothy E. Dixon, Esquire, submit the following (I) Response to Plaintiff's Statement of Material Facts and (II) Clarke Defendants' Statement of Additional Material Facts Under Local Rule 56.1(b).

**I. RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL ACTS**
(Numbered paragraphs under Section I are full text quotations from the Plaintiff's Statement of Material Facts, with corresponding numbering.)

1. On January 30, 2017, ERP Iron Ore, LLC entered into a Floating Rate Senior Secured Amortizing PIK Toggle Notes Indenture, dated as of January 11, 2017 (the *"Indenture"*) with Wilmington Savings Fund Society, FSB (*"WSFS"*), which, at the time, served as Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the Indenture. *See* Ex. 1 hereto, the Affidavit of Gordon Gendler (*"Gendler Aff."*) ¶ 3, ECF. No. 1-2 pp. 6-102; Gendler Aff. Ex. A; ECF No. 1-2 p. 11 through ECF No. 1-3 p. 34 (copy of the Indenture).

> **Clarke Defendants' Response:** Admitted, except that (i) the date of the Indenture is January 30, 2017, not January 11, 2017 and (ii) the Clarke Defendants decline to respond to the cross reference to the docket or the Gender Aff. in this paragraph or elsewhere.

2. Under the Indenture certain Floating Rate Senior Secured Amortizing PIK Toggle Notes due December 31, 2019 in the aggregate principal amount of $22,500,000 (the *"Notes"*) were issued. The Notes are governed by the terms and conditions of the Indenture, including, but not limited to, the default provisions applicable upon default under the Notes. Gendler Aff. ¶ 3; Gendler Aff. Ex. B, ECF No. 1-3 pp. 36-78 at p. 7, §§ 4, 11 (copies of the Notes).

> **Clarke Defendants' Response:** The first sentence of the above paragraph is admitted. The remainder of the allegations in Paragraph 2 are legal in nature and do not require the Clarke Defendants to admit or deny such allegations. On that basis, the Clarke Defendants deny such allegations.

3. On November 29, 2019, WSFS was removed and the Plaintiff was appointed as successor Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the Indenture and other related documents, and Plaintiff accepted such appointment. Gendler Aff. 4; Gendler Aff. Ex. C, ECF No. 1-4 pp. 2-28 (copy of the Instrument of Removal, Appointment and Acceptance).

> **Clarke Defendants' Response:** The Clarke Defendants were served with copies of documents purporting to remove and replace the Trustee under the Indenture. Those documents speak for themselves.

4. Concurrently with the Indenture, Thomas Clarke (*"Thomas"*) and Ana Clarke (*"Ana"*) executed a Guarantee Agreement (the *"Guarantee Agreement"*). Gendler Aff. ¶ 5; Gendler Aff. Ex. D, ECF No. 1-4 pp. 29-54.

2

**Clarke Defendants' Response:** Admitted.

5. The Guarantee Agreement was executed pursuant to and subject to the Indenture, which also provides for a guarantee of these obligations by defendant Bluestone Coke, LLC f/k/a ERP Compliant Coke (*"Bluestone"*). Gendler Aff. Ex. A at § 11.01.

**Clarke Defendants' Response:** The Indenture speaks for itself. The Clarke Defendants decline to admit or deny the accuracy of any summary of the terms of the Indenture.

6. Under the Guarantee Agreement, each Defendant promises to "jointly and severally, irrevocably and unconditionally guarantee [] on a senior unsecured basis to each Holder and to the Trustee . . . the Notes or any other Issuer Obligations . . . shall be promptly paid in full when due." Gendler Aff. Ex. D at § 2.1(a).

**Clarke Defendants' Response:** The Clarke Defendants admit that the Guarantee Agreement contains the language quoted paragraph 8.

7. The parties, however, agreed that Ana was a "Limited Guarantor" and that her guaranty was limited to the value of her interest in the "Guarantee Shares" as of the date of the Guarantee Agreement. Gendler Aff. Ex. D at § 2.2(b). The "Guarantor Shares" include Ana's percent ownership in each of Seneca Coal Resources, LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited (the *"Capital Stock"*). Gendler Aff. Ex. D at Schedule 2.

**Clarke Defendants' Response:** The Guarantee Agreement speaks for itself. The Clarke Defendants decline to admit or deny the accuracy of any summary of the terms of the Guarantee Agreement.

8. Under the Guarantee Agreement, each Defendant further waived "diligence, presentment, demand" and "any right to require a proceeding first against the Issuer, protest, notice, and all demands whatsoever." Gendler Aff. Ex. D at §2.1(b).

>**Clarke Defendants' Response:** The Clarke Defendants admit that the Guarantee Agreement contains the language quoted paragraph 8.

9. In addition, each Defendant agreed to guarantee, jointly and severally, "all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee, the Collateral Agent, or any Holder in enforcing any rights under [the Guarantee Agreement] or the Indenture." Gendler Aff. Ex. D at § 2.1(c) (Thomas and Ana); Gendler Aff. Ex. A at § 11.01(c) (Bluestone).

>**Clarke Defendants' Response:** The Clarke Defendants admit that the Guarantee Agreement contains the language quoted paragraph 9.

10. On May 25, 2018, certain creditors filed an involuntary petition under 11 U.S.C. §303(a) of the United States Bankruptcy Code against ERP Iron Ore, LLC, commencing a bankruptcy case in the District of Minnesota styled as *In re ERP Iron Ore, LLC*, Case No. 18-50378 (the *"Bankruptcy Case"*). Gendler Aff. ¶ 7.

>**Clarke Defendants' Response:** Admitted.

11. On July 17, 2018, an Event of Default under the Indenture occurred pursuant to Section 6.01(a)(9)(i)(B) of the Indenture when ERP Iron Ore, LLC consented to an order for relief in the Bankruptcy Case. Gendler Aff. ¶ 8.

>**Clarke Defendants' Response:** The allegations in Paragraph 11 are legal in nature and do not require the Clarke Defendants to admit or deny such allegations. On that basis, the Clarke Defendants deny such allegations.

12. On that same day, all principal and accrued and unpaid interest on the Notes was accelerated and became immediately due and payable under Section 6.02(a)(2) of the Indenture. Gendler Aff. ¶ 9.

4

**Clarke Defendants' Response:** The allegations in Paragraph 12 are legal in nature and do not require the Clarke Defendants to admit or deny such allegations. On that basis, the Clarke Defendants deny such allegations.

13.     Upon acceleration of all principal and accrued and unpaid interest on the Notes on July 17, 2018, a 180-day standstill period regarding collection from Bluestone began running pursuant to Sections 6.02(b) and (c) of the Indenture. Gendler Aff. ¶ 10.

**Clarke Defendants' Response:** The allegations in Paragraph 13 are legal in nature and do not require the Clarke Defendants to admit or deny such allegations. On that basis, the Clarke Defendants deny such allegations.

14.     WSFS as trustee under the Indenture did not receive a Redemption Failure Notice within ten business days following the expiration of the standstill period, as required by the Indenture. Gendler Aff. ¶ 11; Ex. A § 6.02(b).

**Clarke Defendants' Response:** The Clarke Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 14. Accordingly, such allegations are denied.

15.     Thus, pursuant to the terms of the Indenture as well as the passage of time, the 180-day standstill period has expired. Gendler Aff. ¶ 11.

**Clarke Defendants' Response:** The allegations in Paragraph 15 are legal in nature and do not require the Clarke Defendants to admit or deny such allegations. On that basis, the Clarke Defendants deny such allegations.

16.     Accordingly, the Trustee, Collateral Agent, and holders of the Notes were each then empowered to pursue any available remedy to collect payment of principal, premium, and interest on the Notes including the payment of attorneys' fees and expenses. Gendler Aff. ¶ 12.

**Clarke Defendants' Response:** The allegations in Paragraph 16 are legal in nature and do not require the Clarke Defendants to admit or deny such allegations. On that basis, the Clarke Defendants deny such allegations.

17. On June 7, 2019, WSFS delivered a written demand to Defendants seeking collection of all Issuer Obligations that, at the time, totaled no less than $15,207,026.34, consisting of principal and interest and costs and expenses up to and including May 31, 2019. Gendler Aff. ¶ 13; Gendler Aff. Ex. E, ECF No. 1-4 pp. 55-58 (copy of the written demand).

> **Clarke Defendants' Response:** The Clarke Defendants admit that they received the written demand. The Clarke Defendants deny that on June 7, 2019 the outstanding balance of all Issuer Obligations, at the time, totaled no less than $15,207,026.34.

18. Since then, the amount of Issuer Obligations has continued and will continue to accrue in the form of interest (including interest at the default rate pursuant to Section 2.12(a) of the Indenture), costs and expenses (including the reasonable attorneys' fees and expenses of the Trustee and the Holders pursuant Section 2.1(c) of the Guarantee and Section 7.07(b) of the Indenture), among other sources of Issuer Obligations. Gendler Aff ¶ 14.

> **Clarke Defendants' Response:** The allegations in Paragraph 18 are legal in nature and do not require the Clarke Defendants to admit or deny such allegations. On that basis, the Clarke Defendants deny such allegations.

19. Despite demand, after the date of the written demand, none of the Defendants have made payment under either the Indenture or the Guarantee Agreement. Gendler Aff. ¶ 15.

> **Clarke Defendants' Response:** The Clarke Defendants admit that no payments were made on the Indenture or the Guarantee Agreement since June 7, 2019, other than the funds received from the Chapter 7 Trustee under the Settlement Agreement.

20. On October 24, 2019, WSFS, as indenture trustee for the Notes, entered into a settlement with the Chapter 7 Trustee, Nauni Manty, appointed in the Bankruptcy Case. Gendler Aff. ¶ 16.

> **Clarke Defendants' Response:** The Clarke Defendants admit that the Chapter 7 Trustee docketed by ECF a Notice of Settlement or Compromise dated September 12, 2019 (the

6

"Notice of Settlement") relating to the settlement referenced in paragraph 20 on the PACER docket of the US Bankruptcy Court for the District of Minnesota.

21.     Pursuant to that settlement, the Chapter 7 Trustee agreed to disburse $7,075,942.33. Gendler Aff. ¶ 16; Gendler Aff. Ex. F, ECF No. 1-4 pp. 60-69 (copy of the Settlement Agreement).

**Clarke Defendants' Response:**   The Clarke Defendants admit that the Notice of Settlement stated that the amount of the settlement was $7,075,942.33.

22.     None of the Defendants objected to or disputed the settlement payment from the Chapter 7 Trustee. *See Progress Rail Leasing Corp. v. White County, Indiana*, Case No. 18-05034 (Bankr. Minn.) (the adversary case).

**Clarke Defendants' Response:**   Admitted.  The Clarke Defendants were under no obligation to object to the settlement.

23.     After payment of WSFS's fees and expenses to which it was entitled under the Indenture and the retention of a reserve amount in the trust estate, an amount equal to $6,069,803.31 was distributed to the holders of the Notes for payment of principal and interest due on the Notes on November 15, 2019.  Gendler Aff. ¶ 17.

**Clarke Defendants' Response:**  The Clarke Defendants deny that the Trustee was entitled to pay itself for fees and expenses in the amount so paid.  The Clarke Defendants deny that the Trustee was entitled to retain a reserve amount in the amount so retained.

24.     Accordingly, as of February 5, 2020, $10,583,861.76 in principal; plus accrued, but unpaid, interest in the amount of $264,555.38; plus unpaid fees, including attorneys' fees and costs, is outstanding on the Notes and due under the Indenture and Guarantee Agreement, which amount of unpaid fees includes an amount equal to at least $374,650.66 attributable to attorneys' fees and expenses owed to certain holders of the Notes.  Gendler Aff. ¶ 18.

**Clarke Defendants' Response:**  The Clarke Defendants deny that $10,583,861.76 in principal; plus accrued, but unpaid, interest in the amount of $264,555.38 remains outstanding.  The Clarke Defendants deny that at least $374,650.66 attributable to attorneys' fees and expenses is owed to certain holders of the Notes.

25. Plaintiff and its predecessor trustee, WSFS, performed under the Indenture and the Guarantee Agreement as the Notes were issued and administered according to the terms of those agreements. Gendler Aff. ¶¶ 3; 8-11; 14.

**Clarke Defendants' Response:**  Denied.

26. On February 5, 2020 Plaintiff filed its Motion for Summary Judgment in Lieu of Complaint under CPLR 3213 in the Supreme Court of the State of New York, New York County. ECF No. 1-2 at p. 2-3.

**Clarke Defendants' Response:**  Admitted.

27. Bluestone filed a Notice of Removal to this Court on March 3, 2020. ECF No. 1.

**Clarke Defendants' Response:**  Admitted.

28. Each Defendant consented to removal. *See* ECF No. 1 (Bluestone); ECF No. 18 (Thomas and Ana).

**Clarke Defendants' Response:**  Admitted.

29. Plaintiff is a national banking association and is a citizen of Missouri.

**Clarke Defendants' Response:**  Admitted.

30. Defendant Bluestone is a Delaware limited liability company with a principal place of business in Birmingham, Alabama. ECF. No. 1-5 p. 5 at ¶ 23.

**Clarke Defendants' Response:**  Admitted with respect to the state of organization of Defendant Bluestone.  The Clarke Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 30 with respect to the principal place of business of Defendant Bluestone.  Accordingly, such allegations are denied.

31. Defendants and Ana and Thomas are citizens of Virginia. ECF No. 15 at ¶¶ 1-3.

**Clarke Defendants' Response:** Admitted.

32. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

**Clarke Defendants' Response:** Admitted.

33. This Court has personal jurisdiction over the Defendants because jurisdiction in New York is conferred under N.Y. GEN. OBLIG. LAW § 5-1402 as the Notes, Indenture, and Guarantee Agreement are each governed by New York law pursuant to N.Y. GEN. OBLIG. LAW §5-1401, the amount owed is over a million dollars, and each Defendant submitted to the jurisdiction of New York state courts and federal courts sitting in the Borough of Manhattan. *See* Gendler Aff. Ex. A at § 13.06 (Indenture governed by New York law); Ex. B at § 13 (Notes governed by New York law); Ex. D at §§ 8.11 and 8.12 (Guarantee Agreement governed by New York law and submission to New York state and federal courts' jurisdiction by all defendants).

**Clarke Defendants' Response:** The Clarke Defendants admit that this Court has personal jurisdiction over the Clarke Defendants by reason of consent contained in the Guaranty Agreement. The Clarke Defendants decline to admit or deny whether this Court has personal jurisdiction over Defendant Bluestone.

### II. CLARKE DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS UNDER LOCAL CIVIL RULE 56.1(B)

#### A. Limited Guaranty.

1. The obligations of Defendant Ana M. Clarke (the "Limited Guarantor") are limited to the value of certain securities owned by the Limited Guarantor as of the date of the Guaranty Agreement. The Guaranty Agreement, at Section 2.2(b) states as follows:

> "(b)  Notwithstanding anything contained in this Agreement or the Contracts, the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall be limited to the value (as certified pursuant to the certificate

9

delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee Shares" as of the date hereof.  The Limited Guarantor shall not have any obligation or liability to pay in excess of such value under any circumstance."

**See Exhibit A to Clarke Affidavit – Guarantee Agreement.**

2.      A footnote to Guaranty Agreement Section 2.2(b) states as follows:

"Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed."

**See Exhibit A to Clarke Affidavit – Guarantee Agreement.**

3.      The Plaintiff neither produced a copy of the certificate of the Guarantors described in Section 2.2(b) of the Guaranty Agreement (the "Guarantor Certificate") as an exhibit to its motion or memorandum of law nor offered any explanation for its failure to produce the Guarantor Certificate.  The footnote to Guaranty Agreement Section 2.2(b) is a summary of the contents of the Guarantor Certificate, not a reproduction or copy of, or quotation from, the Guarantor Certificate.  **See Clarke Affidavit, Paragraph 5.**

4.      Under the language of the Guaranty Agreement, the statements and information contained in the Guarantor Certificate are necessary to determine the extent, if any, of the Limited Guarantor's liability under Section 2.2(b) of the Guaranty Agreement.  **See Exhibit A to Clarke Affidavit – Guarantee Agreement.**

5.      On January 30, 2017, the date of the Guaranty Agreement, Defendant Ana M. Clarke indirectly owned a 38.5% interest in each of Seneca Coal Resources, LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited (together, the "Guaranty Share Entities"). On January 30, 2017, Defendant Thomas M. Clarke did not own, directly or indirectly, any interest in any of the Guaranty Share Entities, but did serve as the Treasurer and a Manager of each of the

Guaranty Share Entities. A separate investor group, unrelated to the Clarke Defendants (the "Majority Owner"), indirectly owned a 43.5% interest in each of the Guaranty Share Entities. Yet another separate investor group, unrelated to both the Clarke Defendants and each other (the "Minority Owners"), indirectly owned a 18.0% interest in each of the Guaranty Share Entities. **See Exhibit B to Clarke Affidavit – Organizational Charts.**

6.  The securities in question (the "Guaranty Shares") consist of a 38.5% interest in each of the Guaranty Share Entities. The Guaranty Share Entities in turn own a total of ten subsidiary entities. All of the entities are engaged in the mining, processing, sale and transportation of coal, with related environmental compliance and regulatory obligations. The coal mines are located in at least six different states and one Canadian province. The mines produce different grades of coal, used in different industrial processes. The mines are all in different phases of their economically useful life, ranging from exploratory and development, to active, to closed, to in reclamation. **See Exhibit B to Clarke Affidavit – Organizational Charts.**

7.  On January 30, 2017, Defendant Ana M. Clarke was then involved as a member in the governance of the Guaranty Share Entities, but was not involved in the operation of any of the coal mines or in the financial management of any of the business entities comprising the Guaranty Share Entities. Defendant Ana M. Clarke's experience with the coal assets commenced on or about October, 2015. Prior to October, 2015, Defendant Ana M. Clarke served as a director and officer of Kissito Healthcare, Inc., a United States based nursing home company, and Kissito Healthcare International, Inc., a relief organization operating in certain east African countries. Defendant Ana M. Clarke's duties with such entities included participation in the governance of both entities, overseeing quality assurance in the US based nursing homes and field work in

overseeing the various health clinics and famine relief operations in certain east African countries. **See Clarke Affidavit, Paragraph 9.**

8.  On January 30, 2017, Defendant Thomas M. Clarke was then involved in overseeing the financial management the Guaranty Share Entities and the general management of the Guaranty Share Entities but was not involved in the operation of any of the coal mines. Defendant Thomas M. Clarke's experience with the coal assets commenced on or about October, 2015. Prior to October, 2015, Defendant Thomas M. Clarke was an owner and/or an executive in various types of health care organizations, including hospitals and nursing homes. Defendant Thomas M. Clarke founded Kissito Healthcare, Inc. and Kissito Healthcare International, Inc. Defendant Thomas M. Clarke served as a director and president of both organizations. In such capacity, Defendant Thomas M. Clarke was generally responsible for the management of both the domestic nursing home operations and the overseas health care operations and famine relief operations. Defendant Thomas M. Clarke is a board member of the Lee County (Virginia) Hospital Authority, a governmental unit which owns an acute-care hospital in Pennington Gap, Lee County, Virginia. As a member of the governing board, Defendant Thomas M. Clarke assisted the Authority in evaluating options, potential business partners and business plans for re-opening the hospital. Lee County, Virginia is a rural, mountainous community with only one hospital. Provision of hospital services are critical to the wellbeing of the community. **See Clarke Affidavit, Paragraph 10.**

9.  With respect to the operation of the coal assets, the management team of the Majority Owner and certain of the Minority Owners have extensive training and experience with mining operations and related operations, including coal processing, environmental compliance, coal sale and transportation. The Clarke Defendants relied upon the expertise and experience of

such persons as the Clarke Defendants were learning the coal business.  **See Clarke Affidavit, Paragraph 11.**

### B.  Amount Due Under the Guaranty Agreement.

10.     The scope of the Guarantor's liability under the Guaranty Agreement is stated Section 2.1(a) of the Guaranty Agreement. That section, in relevant part, states as follows:

> "Each of the Guarantors hereby, jointly and severally, irrevocably and unconditionally guarantees on a senior unsecured basis to each Holder and to the Trustee and to each of their successors and assigns, irrespective of the validity and enforceability of the Indenture, the Notes or any other Issuer Obligations thereunder, that: (1) the principal, premium, if any, and interest on the Notes shall be promptly paid in full when due, whether at Stated Maturity, by acceleration, redemption or otherwise, and interest on the overdue principal and interest on the Notes, if any, if lawful, and all other Issuer Obligations to the Holders, the Trustee and Collateral Agent under the Indenture or the Notes shall be promptly paid in full or performed, all in accordance with the terms thereof . . .."

**See Exhibit A to Clarke Affidavit – Guarantee Agreement.**

11.     In the Plaintiff's Affidavit, the Plaintiff alleges that as of February 5, 2020, $10,583,861.76 in principal; plus accrued, but unpaid, interest in the amount of $264,555.38; plus unpaid fees, including attorneys' fees and costs, is outstanding on the Notes and due under the Indenture and Guarantee Agreement.  **See Gendler Affidavit, Paragraph 18.**

12.     The Plaintiff's Affidavit includes some general verbiage as to how the Plaintiff determined the amount due, but does not contain a worksheet or other disclosure in sufficient detail to verify the accuracy of the amount alleged to be due under the Notes, the Indenture and Guarantee Agreement.  **See Clarke Affidavit, Paragraph 14.**

13.     On or about October 24, 2019, the Chapter 7 Trustee disbursed to WSFS, as Indenture Trustee, $7,075,942.33 from proceeds of the sale of substantially all of the collateral for the Notes.  WSFS, as Indenture Trustee, applied $6,006,803.31 to amounts due under the Notes.  **See Gendler Affidavit, Paragraphs 16 and 17.**

13

14. WSFS, as Indenture Trustee, retained $1,006,139.02 to pay fees and expenses (including attorney fees) previously incurred and to a reserve amount in the trust estate. No detail is provided for either the fees and expenses previously incurred or for the amount or purpose of the reserve. **See Gendler Affidavit, Paragraphs 16 and 17.**

15. Section 7.07(a) of the Indenture, in relevant part, provides as follows:

> The Issuer shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it, in its capacity as Trustee and as an Agent, in addition to the compensation for its services. Such expenses shall include the reasonable compensation, disbursements and expenses of the respective agents and counsel of the Trustee and the Collateral Agent.

**See Exhibit C to Clarke Affidavit – FLOATING RATE SENIOR SECURED AMORTIZING PIK TOGGLE NOTES INDENTURE.**

16. To the knowledge of the Clarke Defendants, the Indenture Trustee never served a request for reimbursement on either ERPI or the Clarke Defendants. To the knowledge of the Clarke Defendants, the Indenture Trustee never provided to either ERPI or the Clarke Defendants sufficient information concerning its disbursements and expenses to evaluate the reasonableness thereof. **See Clarke Affidavit, Paragraph 18.**

17. Section 7.01(e) of the Indenture, in relevant part, provides as follows:

> The Trustee shall be under no obligation to exercise any of the rights or powers under this Indenture, Collateral Documents, the Notes and the Note Guarantees at the request or direction of any of the Holders or expend or risk its own funds or otherwise incur financial liability in the performance of its duties hereunder or under any of the Notes Documents unless such Holders have offered to the Trustee indemnity or security reasonably satisfactory to it against any loss, liability or expense.

**See Exhibit C to Clarke Affidavit – FLOATING RATE SENIOR SECURED AMORTIZING PIK TOGGLE NOTES INDENTURE.**

18. To the knowledge of the Clarke Defendants, the Indenture Trustee never provided to either ERPI or the Clarke Defendants sufficient information concerning the purposes or amount

of the reserve to evaluate whether the reserve is permitted under the Indenture or the reasonableness thereof.  **See Clarke Affidavit, Paragraph 20.**

Respectfully submitted this 8th day of June, 2020.

*[signature]*

Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com
Virginia Bar Number:  90482
Maryland CPF Number:  8501010159

*Counsel for the Clarke Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 8, 2020 a copy of foregoing was filed through the Court's ECF system and will be sent electronically to the registered participants. Interested parties may access this filing through PACER.

*[signature]*

Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com
Virginia Bar Number: 90482
Maryland CPF Number: 8501010159

***Counsel for the Clarke Defendants***