**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UMB BANK, NATIONAL ASSOCIATION, AS TRUSTEE,<br><br>                        Plaintiff,<br><br>      v.<br><br>BLUESTONE COKE, LLC F/K/A ERP COMPLIANT COKE, LLC,<br><br>THOMAS M. CLARKE<br><br>and<br><br>ANA M. CLARKE,<br><br>                        Defendants. | Case No. 1:20-cv-2043<br><br><br><br>**MEMORANDUM OF LAW** |

**CLARKE DEFENDANTS' MEMORANDUM OF LAW IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**June 8, 2020**

Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com
Virginia Bar Number:  90482
Maryland CPF Number:  8501010159

***Counsel for the Clarke Defendants***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

CERTAIN MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

    Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

    Limited Liability of Defendant Ana Clarke . . . . . . . . . . . . . . . . . . . . . .   8

    Damages Under the Guarantee Agreement . . . . . . . . . . . . . . . . . . . . . .   11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

# TABLE OF AUTHORITIES

| Statutes: | Page |
|---|---|
| None | |
| | |
| **Rules:** | |
| Federal Rule of Evidence Rule 701 | 10 |
| Federal Rules of Evidence Rules 702 | 10 |
| Federal Rules of Evidence Rule 801(d)(2) | 9 |
| Federal Rules of Evidence Rule 1002 | 9 |
| Federal Rule of Evidence Rule 1004 | 9 |
| | |
| **Federal Cases:** | |
| *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199 (3rd 2009) | 9 |
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) | 7 |
| *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir. 1995) | 6 |
| *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985) | 7 |
| *Frymire-Brinati v. KPMG Peat Marwick,* 2 F.3d 183 (7th Cir. 1993) | 11 |
| *In re Re-Bo Mfg. Co.*, 90 F. Supp. 388 (US Dist. Ct. SDNY 1950) | 10 |
| *L&B 57th St., Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 92 (2d Cir. 1998) | 12 |
| *LaCombe v. A-T-O, Inc.*, 679 F.2d 431 (5th Cir. 1982) | 10 |
| *Nationwide Life Ins. Co. v. Bankers Leasing Association, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999) | 7 |
| *U.S. v. Holley*, 463 F.2d 634 (3rd Cir. 1972) | 9 |
| *United States v. One Tintoretto Painting…,* 691 F.2d 603, 606 (2d Cir. 1982) | 7 |
| *Vockie v. General Motors Corp., Chevrolet Division*, 66 F.R.D. 57 (US Dist. Ct. ED Pa.1975) | 9 |
| | |
| **New York Cases:** | |
| *Citibank v. Plapinger*, 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985) | 12 |
| *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 36 N.E.3d 80, 15 N.Y.S.3d 277 (2015) | 12 |
| *Hooper Assoc. v. AGS Computers*, 74 N.Y.2d 487, 548 N.E.2d 903, 549 N.Y.S.2d 365 (1989) | 13 |

## I.  PRELIMINARY STATEMENT

This action was commenced in the Supreme Court of New York for New York County as a Motion for Summary Judgment in Lieu of Complaint under CPLR Section 3213.  Defendant Bluestone Coke, LLC (formerly known as ERP Compliant Coke, LLC) filed a Notice of Removal in this Court, with the consent of Defendants Thomas M. Clarke and Ana M. Clarke (the "Clarke Defendants").  The Plaintiff elected to proceed with the Motion for Summary Judgment, without filing a complaint, in this Court.

Genuine questions of material fact exist as to the extent of the liability of Defendant Ana M. Clarke (the "Limited Guarantor") and as to the Clarke Defendants.  Accordingly, the Plaintiff's Motion for Summary Judgment must be DENIED.

## II.  CERTAIN MATERIAL FACTS

### A.  Limited Liability of Defendant Ana Clarke.

1.      The obligations of Defendant Ana M. Clarke (the "Limited Guarantor") are limited to the value of certain securities owned by the Limited Guarantor as of the date of the Guarantee Agreement.  The Guarantee Agreement, at Section 2.2(b) states as follows:

> "(b)   Notwithstanding anything contained in this Agreement or the Contracts, the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall be limited to the value (as certified pursuant to the certificate delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee Shares" as of the date hereof.  The Limited Guarantor shall not have any obligation or liability to pay in excess of such value under any circumstance."

**See Affidavit of Thomas M. Clarke, Exhibit A – Guarantee Agreement.**

2.      A footnote to Guarantee Agreement Section 2.2(b) states as follows:

"Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed."

**See Affidavit of Thomas M. Clarke, Exhibit A – Guarantee Agreement.**

3.      The Plaintiff neither produced a copy of the certificate of the Guarantors described in Section 2.2(b) of the Guarantee Agreement (the "Guarantor Certificate") as an exhibit to its motion or memorandum of law nor offered any explanation for its failure to produce the Guarantor Certificate.  The footnote to Guarantee Agreement Section 2.2(b) is a summary of the contents of the Guarantor Certificate, not a reproduction or copy of, or quotation from, the Guarantor Certificate.  **See Affidavit of Thomas M. Clarke, Paragraph 5.**

4.      Under the language of the Guarantee Agreement, the statements and information contained in the Guarantor Certificate are necessary to determine the extent, if any, of the Limited Guarantor's liability under Section 2.2(b) of the Guarantee Agreement.  **See Affidavit of Thomas M. Clarke, Exhibit A – Guarantee Agreement.**

5.      On January 30, 2017, the date of the Guarantee Agreement, Defendant Ana M. Clarke indirectly owned a 38.5% interest in each of Seneca Coal Resources, LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited (together, the "Guaranty Share Entities"). On January 30, 2017, Defendant Thomas M. Clarke did not own, directly or indirectly, any interest in any of the Guaranty Share Entities, but did serve as the Treasurer and a Manager of each of the Guaranty Share Entities. A separate investor group, unrelated to the Clarke Defendants (the "Majority Owner"), indirectly owned a 43.5% interest in each of the Guaranty Share Entities.  Yet another separate investor group, unrelated to both the Clarke Defendants and each other (the "Minority Owners"), indirectly owned a 18.0% interest in each of the Guaranty Share Entities. **See Affidavit of Thomas M. Clarke, Exhibit B – Organizational Charts.**

6.      The securities in question (the "Guaranty Shares") consist of a 38.5% interest in each of the Guaranty Share Entities.  The Guaranty Share Entities in turn own a total of ten

subsidiary entities. All of the entities are engaged in the mining, processing, sale and transportation of coal, with related environmental compliance and regulatory obligations. The coal mines are located in at least six different states and one Canadian province. The mines produce different grades of coal, used in different industrial processes. The mines are all in different phases of their economically useful life, ranging from exploratory and development, to active, to closed, to in reclamation. **See Affidavit of Thomas M. Clarke, Exhibit B – Organizational Charts.**

7.      On January 30, 2017, Defendant Ana M. Clarke was then involved as a member in the governance of the Guaranty Share Entities, but was not involved in the operation of any of the coal mines or in the financial management of any of the business entities comprising the Guaranty Share Entities. Defendant Ana M. Clarke's experience with the coal assets commenced on or about October, 2015. Prior to October, 2015, Defendant Ana M. Clarke served as a director and officer of Kissito Healthcare, Inc., a United States based nursing home company, and Kissito Healthcare International, Inc., a relief organization operating in certain east African countries. Defendant Ana M. Clarke's duties with such entities included participation in the governance of both entities, overseeing quality assurance in the US based nursing homes and field work in overseeing the various health clinics and famine relief operations in certain east African countries. **See Affidavit of Thomas M. Clarke, Paragraph 9.**

8.      On January 30, 2017, Defendant Thomas M. Clarke was then involved in overseeing the financial management the Guaranty Share Entities and the general management of the Guaranty Share Entities but was not involved in the operation of any of the coal mines. Defendant Thomas M. Clarke's experience with the coal assets commenced on or about October, 2015. Prior to October, 2015, Defendant Thomas M. Clarke was an owner and/or an executive in various types of health care organizations, including hospitals and nursing homes. Defendant

3

Thomas M. Clarke founded Kissito Healthcare, Inc. and Kissito Healthcare International, Inc. Defendant Thomas M. Clarke served as a director and president of both organizations. In such capacity, Defendant Thomas M. Clarke was generally responsible for the management of both the domestic nursing home operations and the overseas health care operations and famine relief operations. Defendant Thomas M. Clarke is a board member of the Lee County (Virginia) Hospital Authority, a governmental unit which owns an acute-care hospital in Pennington Gap, Lee County, Virginia. As a member of the governing board, Defendant Thomas M. Clarke assisted the Authority in evaluating options, potential business partners and business plans for re-opening the hospital. Lee County, Virginia is a rural, mountainous community with only one hospital. Provision of hospital services are critical to the wellbeing of the community. **See Affidavit of Thomas M. Clarke, Paragraph 10.**

9.      With respect to the operation of the coal assets, the management team of the Majority Owner and certain of the Minority Owners have extensive training and experience with mining operations and related operations, including coal processing, environmental compliance, coal sale and transportation. The Clarke Defendants relied upon the expertise and experience of such persons as the Clarke Defendants were learning the coal business. **See Affidavit of Thomas M. Clarke, Paragraph 11.**

## B. Damages Under the Guarantee Agreement.

10.      The scope of the Guarantor's liability under the Guarantee Agreement is stated Section 2.1(a) of the Guarantee Agreement. That section, in relevant part, states as follows:

> "Each of the Guarantors hereby, jointly and severally, irrevocably and unconditionally guarantees on a senior unsecured basis to each Holder and to the Trustee and to each of their successors and assigns, irrespective of the validity and enforceability of the Indenture, the Notes or any other Issuer Obligations thereunder, that: (1) the principal, premium, if any, and interest on the Notes shall be promptly paid in full when due, whether at Stated Maturity, by acceleration,

redemption or otherwise, and interest on the overdue principal and interest on the Notes, if any, if lawful, and all other Issuer Obligations to the Holders, the Trustee and Collateral Agent under the Indenture or the Notes shall be promptly paid in full or performed, all in accordance with the terms thereof . . .."

**See Affidavit of Thomas M. Clarke, Exhibit A – Guarantee Agreement.**

11.    In the Plaintiff's Affidavit, the Plaintiff alleges that as of February 5, 2020, $10,583,861.76 in principal; plus accrued, but unpaid, interest in the amount of $264,555.38; plus unpaid fees, including attorneys' fees and costs, is outstanding on the Notes and due under the Indenture and Guarantee Agreement.  **See Gendler Affidavit, Paragraph 18.**

12.    The Plaintiff's Affidavit includes some general verbiage as to how the Plaintiff determined the amount due, but does not contain a worksheet or other disclosure in sufficient detail to verify the accuracy of the amount alleged to be due under the Notes, the Indenture and Guarantee Agreement.  **See Affidavit of Thomas M. Clarke, Paragraph 14.**

13.    On or about October 24, 2019, the Chapter 7 Trustee disbursed to WSFS, as Indenture Trustee, $7,075,942.33 from proceeds of the sale of substantially all of the collateral for the Notes.  WSFS, as Indenture Trustee, applied $6,006,803.31 to amounts due under the Notes.  **See Gendler Affidavit, Paragraphs 16 and 17.**

14.    WSFS, as Indenture Trustee, retained $1,006,139.02 to pay fees and expenses (including attorney fees) previously incurred and to a reserve amount in the trust estate.  No detail is provided for either the fees and expenses previously incurred or for the amount or purpose of the reserve.  **See Gendler Affidavit, Paragraphs 16 and 17.**

15.    Section 7.07(a) of the Indenture, in relevant part, provides as follows:

The Issuer shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it, in its capacity as Trustee and as an Agent, in addition to the compensation for its services. Such expenses shall include the reasonable compensation, disbursements and expenses of the respective agents and counsel of the Trustee and the Collateral Agent.

**See Affidavit of Thomas M. Clarke, Exhibit C – FLOATING RATE SENIOR SECURED AMORTIZING PIK TOGGLE NOTES INDENTURE.**

16.     To the knowledge of the Clarke Defendants, the Indenture Trustee never served a request for reimbursement on either ERPI or the Clarke Defendants.  To the knowledge of the Clarke Defendants, the Indenture Trustee never provided to either ERPI or the Clarke Defendants sufficient information concerning its disbursements and expenses to evaluate the reasonableness thereof.  **See Affidavit of Thomas M. Clarke, Paragraph 18.**

17.     Section 7.01(e) of the Indenture, in relevant part, provides as follows:

> The Trustee shall be under no obligation to exercise any of the rights or powers under this Indenture, Collateral Documents, the Notes and the Note Guarantees at the request or direction of any of the Holders or expend or risk its own funds or otherwise incur financial liability in the performance of its duties hereunder or under any of the Notes Documents unless such Holders have offered to the Trustee indemnity or security reasonably satisfactory to it against any loss, liability or expense.

**See Affidavit of Thomas M. Clarke, Exhibit C – FLOATING RATE SENIOR SECURED AMORTIZING PIK TOGGLE NOTES INDENTURE.**

18.     To the knowledge of the Clarke Defendants, the Indenture Trustee never provided to either ERPI or the Clarke Defendants sufficient information concerning the purposes or amount of the reserve to evaluate whether the reserve is permitted under the Indenture or the reasonableness thereof.  **See Affidavit of Thomas M. Clarke, Paragraph 20.**

### III.  ARGUMENT

#### A.  Argument – Summary Judgment Standard.

19.     Citing *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir. 1995), the Second Circuit explained the standard applicable to motions for summary judgment:

> A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to

> which there is no such issue warrant judgment for the moving party as a matter of law. The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.

*Nationwide Life Ins. Co. v. Bankers Leasing Association, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999) (citations omitted). The Second Circuit further emphasized the "drastic" nature of summary judgment and the "heavy burden" plaintiffs carry to show no factual disputes:

> We have long recognized that summary judgment is a "drastic device, since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." Accordingly, the moving party bears a heavy burden of demonstrating the absence of any material issues of fact.  If,  in this generous light, a material issue is found to exist, summary judgment is improper, and the case must proceed to trial.

*Id.* (citing *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* 484 U.S. 918, 108 S. Ct. 269, 98 L.Ed.2d 226 (1987)) (citations omitted). The Second Circuit concluded:

> The cases hold also, that in ruling on a motion for summary judgment, all doubts as to the existence of a "genuine issue as to any material fact" must be resolved against the moving party. . .. The case cannot be taken from the trier of facts simply because "the lawyers for the respective parties, by the cross-motions, superinduced the idea that no factual questions were involved."

*Nationwide Life Ins.,* 182 F.3d at 160-61 (citing *Empire Elecs. Co. v. United States,* 311 F.2d 175, 180 (2d Cir. 1962)).

20.     Finally, in reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. Uncertainty regarding the true state of any material fact will defeat a summary judgment motion. *United States v. One Tintoretto Painting…,* 691 F.2d 603, 606 (2d Cir. 1982).

### B.  Argument – Limited Liability of Defendant Ana Clarke.

21.    A genuine question of material fact exists as to the extent of the liability of

Defendant Ana M. Clarke (the "Limited Guarantor").

22.    Section 2.2(b) of the Guarantee Agreement states as follows:

> Notwithstanding anything contained in this Agreement or the Contracts, the
> Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall
> be limited to the value (as certified pursuant to the certificate delivered to the
> Trustee) of the Limited Guarantor's interest in the "Guarantee Shares" as of the
> date hereof. The Limited Guarantor shall not have any obligation or liability to pay
> in excess of such value under any circumstance.

23.    The Plaintiff failed to produce the certificate referenced in Section 2.2(b) (the

"Valuation Certificate").  The failure to produce the Valuation Certificate, in and of itself, creates

a genuine issue of material fact to be tried.

24.    From the text of Section 2.2(b), it is apparent that there is a limitation of the liability

of the Limited Guarantor.  However, without the Valuation Certificate, there is no basis for this

Court to determine the amount of such limitation.

25.    A footnote to Section 2.2(b) of the Guarantee Agreement states as follows:

> Each of the Guarantors party hereto has executed and delivered a certificate to the
> Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof
> the value of the Guarantee Shares significantly exceeds the aggregate principal
> amount of Notes issued under the Indenture on the date on which such Indenture
> was executed.

26.    The footnote is a glaring contradiction in terms, rendering the liability limitation as

mere surplusage.  Under the terms of Section 2.2(b) of the Guarantee Agreement, the limitation is

equal to the valuation, as of a fixed point in time, of three securities issued by three different

issuers, with the valuation date being January 30, 2017.  The limitation provision is pointless if the

amount to which liability is limited "significantly exceeds the aggregate principal amount of Notes

issued under the Indenture on the date on which such Indenture was executed."  Such a limitation

would be effective only if Notes immediately went into default and remained in default for an extended time.

27.     The footnote is not admissible as an admission under Federal Rules of Evidence Rule 801(d)(2).  The identity of the declarant of the footnote is unclear.  The footnote is an opinion, not a statement of fact.  "An admission is a voluntary acknowledgement made by a party of the existence of the truth of certain *facts* which are inconsistent with his claims in an action."  *Vockie v. General Motors Corp., Chevrolet Division*, 66 F.R.D. 57 (US Dist. Ct. ED Pa.1975) (emphasis added).

28.     The text of the footnote is not admissible as evidence to prove the contents of the certificate under Federal Rules of Evidence Rule 1002, which states as follows:

> An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.

29.     The footnote purports to be a summary of the Valuation Certificate, not a reproduction or quotation.  As such, the footnote is not admissible to prove the content of the Valuation Certificate.  Whenever it is the purpose of a party to establish the terms of a writing, an evidentiary rule requires the production of the documentary original unless such production is not feasible.  *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199 (3rd 2009), *U.S. v. Holley*, 463 F.2d 634 (3rd Cir. 1972).

30.     The Plaintiff has not explained why they failed to produce the Valuation Certificate.  Even if the footnote may qualify as secondary evidence of the Valuation Certificate, the footnote would not be admissible until such time as the Plaintiff provides an explanation for its failure to produce the Valuation Certificate which satisfies the requirements of Federal Rule of Evidence Rule 1004.  It is unlikely that such an explanation could be provided within the context of a summary judgment motion.

31.     The text of Section 2.2(b) of the Guarantee Agreement does not specify the identity of the person providing the Valuation Certificate.  If the Valuation Certificate were available, the Valuation Certificate would be admissible in this Court only if the Valuation Certificate were provided by a person competent to do so under Federal Rules of Evidence Rules 701 and 702.

32.     The securities in question (the "Guaranty Shares") consist of a 38.5% interest in each of Seneca Coal Resources, LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited (together, the "Guaranty Share Entities").  The Guaranty Share Entities in turn own a total of ten subsidiary entities.  All of the entities are engaged in the mining, processing, sale and transportation of coal, with related environmental compliance and regulatory obligations. The coal mines are located in at least six different states and one Canadian province.  The mines produce different grades of coal, used in different industrial processes.  The mines are all in different phases of their economically useful life, ranging from exploratory and development, to active, to closed, to in reclamation.

33.     Neither of the Clarke Defendants would be qualified to render a valuation opinion as to the Guaranty Shares under the standards of Federal Rules of Evidence Rule 702.  Certain cases hold that the owner of property is qualified by his or her ownership alone to testify as to its value.  *LaCombe v. A-T-O, Inc.*, 679 F.2d 431 (5th Cir. 1982), *In re Re-Bo Mfg. Co.*, 90 F. Supp. 388 (US Dist. Ct. SDNY 1950).  However, in those cases, the assets being valued were physical assets, such as a residential property or business inventory and raw materials, not securities.  As of January 30, 2017, the Guaranty Shares were owned solely by Defendant Ana M. Clarke.  The ownership rule, at most, would qualify Defendant Ana M. Clarke, but not Defendant Thomas M. Clarke.

34.     Valuation of securities is a complex matter, which is outside the scope of lay testimony permitted under Federal Rule of Evidence Rule 701. *cf. Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183 (7th Cir. 1993).  It is unlikely that the qualification of experts could be handled within the context of a summary judgment proceeding.

35.     Accordingly, a genuine question of material fact exists as to the extent of the liability of Defendant Ana M. Clarke under the Guarantee Agreement.

### C.  Argument – Damages Under the Guarantee Agreement.

36.     The Clarke Defendants are unable to verify or substantiate the amount which the Plaintiff claims is due under the Indenture, the Notes and the Guarantee Agreement.  In general terms, the amount claimed as damages in the Plaintiff's Motion for Summary Judgment consists of three components:  (i) principal, interest and financing charges or credits under the Indenture and Notes, (ii) fees and expenses of the Plaintiff in an unspecified amount claimed to be incurred in enforcing the Indenture, the Notes and the Guarantee Agreement and (iii) a reserve in an unspecified amount, established for an unspecified purpose or purposes.  Insufficient information is provided in the Plaintiff's filings to verify the accuracy of the amount claimed.

37.     Based on the foregoing the Clarke Defendants assert that a genuine question of material fact exists as to the Plaintiff's claim for enforcement of the Guarantee Agreement.

38.     Section 2.1(a) of the Guarantee Agreement, in relevant part, states as follows:

"Each of the Guarantors hereby, jointly and severally, irrevocably and unconditionally guarantees on a senior unsecured basis to each Holder and to the Trustee and to each of their successors and assigns, irrespective of the validity and enforceability of the Indenture, the Notes or any other Issuer Obligations thereunder, that: (1) the principal, premium, if any, and interest on the Notes shall be promptly paid in full when due, whether at Stated Maturity, by acceleration, redemption or otherwise, and interest on the overdue principal and interest on the Notes, if any, if lawful, and all other Issuer Obligations to the Holders, the Trustee and Collateral Agent under the Indenture or the Notes shall be promptly paid in full or performed, all in accordance with the terms thereof . . .."

11

39.     The New York State Court of Appeals has held that the phrase "irrevocably and unconditionally guarantees" or similar language acts to preclude guarantors from asserting a broad range of defenses. *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 36 N.E.3d 80, 15 N.Y.S.3d 277 (2015), *Citibank v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985).   Even when a guaranty contains the phrase "irrevocably and unconditionally guarantees" or similar language, the courts have held that blanket waivers are not a waiver of every defense to a damages claim, and do not foreclose a challenge to the calculation of the amount owed. *L&B 57th St., Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 92 (2d Cir. 1998).

40.     In order to have a meaningful right to challenge the calculation of the amount owed, the Clarke Defendants must have a right to require the Plaintiff to provide supporting documentation in sufficient detail to permit the Clarke Defendants to test the accuracy and the qualification of the amount which the Plaintiff claims to be due under the Indenture, the Notes and the Guarantee Agreement.   Until the Plaintiff supplies such information, preferably through a discovery process, a genuine question of material fact exists as to the Plaintiff's claim for enforcement of the Guarantee Agreement.

41.     The Clarke Defendants concede that the Plaintiff, as Indenture Trustee, is entitled to reimbursement for its reasonable expenses and payment of its reasonable compensation following a proper demand for such amounts.   Other than instituting this civil action, to the knowledge of the Clarke Defendants, the Plaintiff, as Indenture Trustee, never made any such demand on ERPI or the Clarke Defendants.

42.     The Clarke Defendants are entirely without information as to the amount of compensation for its services which the Plaintiff has previously been paid and the services for

which the Plaintiff is demanding to be paid.  Accordingly, the Clarke Defendants are unable to evaluate the reasonableness or qualification of such compensation.

43.     The Clarke Defendants are entirely without information as to the amount which the Plaintiff and its predecessor Trustee under the Indenture paid for legal services in the past, the amount of legal fees for which the Plaintiff is now demanding payment and the legal services provided.

44.     The New York State Court of Appeals has urged caution and strict construction in interpreting attorney fee cost shifting provisions.

> Words in a contract are to be construed to achieve the apparent purpose of the parties. Although the words might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view. This is particularly true with indemnity contracts. When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.

*Hooper Assoc. v. AGS Computers*, 74 N.Y.2d 487, 548 N.E.2d 903, 549 N.Y.S.2d 365 (1989).

45.     In the case at bar, the Clarke Defendants are unable to conduct any analysis of the costs due to a lack of information.

46.     The Clarke Defendants are aware that the Noteholders formed an ad hoc committee to represent the interests of the Noteholders in the ERPI bankruptcy proceeding and that the ad hoc committee retained legal counsel.  The Clarke Defendants deny that the ad hoc committee or its counsel are entitled to any compensation or reimbursement for expenses under the Indenture or the Notes.  The Clarke Defendants are further concerned that the interaction of the Plaintiff and/or its predecessor Trustee under the Indenture with the ad hoc committee and its counsel resulted in duplication of work, the provision of services which are not within the scope of the Trustee's duties under the Indenture, the provision of services by the Trustee for which it is not entitled to

compensation under the Indenture and/or incurrence of legal expenses which are unreasonable or unnecessary.

47.     The Clarke Defendants are entitled to conduct discovery to determine if (i) the ad hoc committee or its counsel received anything of value under the Indenture, directly or indirectly, other than payments of principal and interest on the Notes and/or (ii) the interaction of the Plaintiff and/or its predecessor Trustee under the Indenture with the ad hoc committee resulted in fees and expenses which are not justified.

48.     Based on the foregoing the Clarke Defendants assert that a genuine question of material fact exists as to the Plaintiff's claim for enforcement of the Guarantee Agreement.

## IV. CONCLUSION

For the reasons stated in this Memorandum, the Clarke Defendants respectfully request that this Court DENY the Plaintiff's Motion for Summary Judgment.

Respectfully submitted this 8th day of June, 2020.

Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com
Virginia Bar Number:  90482
Maryland CPF Number:  8501010159

***Counsel for the Clarke Defendants***

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 8, 2020 a copy of foregoing document was

filed through the Court's ECF system and will be sent electronically to the registered participants.

Interested parties may access this filing through PACER.


Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com
Virginia Bar Number:  90482
Maryland CPF Number:  8501010159

***Counsel for the Clarke Defendants***