**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UMB BANK, NATIONAL ASSOCIATION, AS TRUSTEE,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BLUESTONE COKE, LLC F/K/A ERP COMPLIANT COKE, LLC,<br><br>THOMAS M. CLARKE<br><br>and<br><br>ANA M. CLARKE,<br><br>　　　　　　　　　　Defendants. | Case No. 1:20-cv-2043<br><br><br>**MEMORANDUM OF LAW** |

**MEMORANDUM OF LAW IN SUPPORT OF CLARKE DEFENDANT'S MOTION FOR DETERMINATION OF LIABILITY UNDER THE GUARANTY OR, ALTERNATIVELY, REQUEST FOR AN EVIDENTIARY HEARING**

**May 17, 2021**

Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com

*Counsel for the Clarke Defendants*

# TABLE OF AUTHORITIES

| **Statutes:** | **Page** |
|---|---|
| None | |
| | |
| **Rules:** | |
| Federal Rule of Evidence Rule 701 | 8 |
| Federal Rules of Evidence Rules 702 | 8 |
| Federal Rules of Evidence Rule 801(d)(2) | 7 |
| Federal Rules of Evidence Rule 1002 | 7 |
| Federal Rule of Evidence Rule 1004 | 7 |
| | |
| **Federal Cases:** | |
| *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199 (3rd 2009) | 7 |
| *Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183 (7th Cir. 1993) | 8 |
| *In re Re-Bo Mfg. Co.*, 90 F. Supp. 388 (US Dist. Ct. SDNY 1950) | 8 |
| *Israel v. Chabra*, 537 F.3d 86 (2nd Cir. 2008) | 1, 5 |
| *LaCombe v. A-T-O, Inc.*, 679 F.2d 431 (5th Cir. 1982) | 8 |
| *Vockie v. General Motors Corp., Chevrolet Division*, 66 F.R.D. 57 (US Dist. Ct. ED Pa.1975) | 7 |
| | |
| **New York Cases:** | |
| *76-82 St. Marks, LLC v. Gluck*, 48 N.Y.S.3d 210, 147 A.D.3d 1011 (2017) | 1, 5 |

# I. PRELIMINARY STATEMENT

This action was commenced in the Supreme Court of New York for New York County as a Motion for Summary Judgment in Lieu of Complaint under CPLR Section 3213. Defendant Bluestone Coke, LLC (formerly known as ERP Compliant Coke, LLC) filed a Notice of Removal in this Court, with the consent of Defendants Thomas M. Clarke and Ana M. Clarke (the "Clarke Defendants"). The Plaintiff elected to proceed with the Motion for Summary Judgment, without filing a complaint, in this Court.

The Plaintiff bears the burden of proof as to the liability of Defendant Ana M. Clarke (the "Limited Guarantor"). The Plaintiff has the burden of proving the existence, terms, and validity of the guaranty. Absent evidence of the complete terms of the Guaranty, the Plaintiff has failed to establish its prima facie case. *76-82 St. Marks, LLC v. Gluck*, 48 N.Y.S.3d 210, 147 A.D.3d 1011 (2017). The Plaintiff failed to produce the certificate limiting the liability of the Limited Guarantor. Accordingly, the Plaintiff to prove to the extent of the liability of the Limited Guarantor. Further, production of the certificate limiting the liability of the Limited Guarantor is a condition precedent to the liability of the Limited Guarantor. *Israel v. Chabra*, 537 F.3d 86 (2nd Cir. 2008). The Plaintiff failed to comply with the condition precedent. Accordingly, the liability of the Limited Guarantor under the Guarantee Agreement is ZERO.

# II. FACTS.

1. The obligations of Defendant Ana M. Clarke (the "Limited Guarantor") are limited to the value of certain securities owned by the Limited Guarantor as of the date of the Guarantee Agreement. The Guarantee Agreement, at Section 2.2(b) states as follows:

> "(b) Notwithstanding anything contained in this Agreement or the Contracts, the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall be limited to the value (as certified pursuant to the certificate delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee

Shares" as of the date hereof. The Limited Guarantor shall not have any obligation or liability to pay in excess of such value under any circumstance."

**See Affidavit of Thomas M. Clarke, Exhibit A – Guarantee Agreement.**

2. A footnote to Guarantee Agreement Section 2.2(b) states as follows:

"Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed."

**See Affidavit of Thomas M. Clarke, Exhibit A – Guarantee Agreement.**

3. The Plaintiff neither produced a copy of the certificate of the Guarantors described in Section 2.2(b) of the Guarantee Agreement (the "Guarantor Certificate") as an exhibit to its motion or memorandum of law nor offered any explanation for its failure to produce the Guarantor Certificate. The footnote to Guarantee Agreement Section 2.2(b) is a summary of the contents of the Guarantor Certificate, not a reproduction or copy of, or quotation from, the Guarantor Certificate. **See Affidavit of Thomas M. Clarke, Paragraph 5.**

4. Under the language of the Guarantee Agreement, the statements and information contained in the Guarantor Certificate are necessary to determine the extent, if any, of the Limited Guarantor's liability under Section 2.2(b) of the Guarantee Agreement. **See Affidavit of Thomas M. Clarke, Exhibit A – Guarantee Agreement.**

5. On January 30, 2017, the date of the Guarantee Agreement, Defendant Ana M. Clarke indirectly owned a 38.5% interest in each of Seneca Coal Resources, LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited (together, the "Guaranty Share Entities"). On January 30, 2017, Defendant Thomas M. Clarke did not own, directly or indirectly, any interest in any of the Guaranty Share Entities, but did serve as the Treasurer and a Manager of each of the Guaranty Share Entities. A separate investor group, unrelated to the Clarke Defendants (the

"Majority Owner"), indirectly owned a 43.5% interest in each of the Guaranty Share Entities. Yet another separate investor group, unrelated to both the Clarke Defendants and each other (the "Minority Owners"), indirectly owned a 18.0% interest in each of the Guaranty Share Entities. **See Affidavit of Thomas M. Clarke, Exhibit B – Organizational Charts.**

6. The securities in question (the "Guaranty Shares") consist of a 38.5% interest in each of the Guaranty Share Entities. The Guaranty Share Entities in turn own a total of ten subsidiary entities. All of the entities are engaged in the mining, processing, sale and transportation of coal, with related environmental compliance and regulatory obligations. The coal mines are located in at least six different states and one Canadian province. The mines produce different grades of coal, used in different industrial processes. The mines are all in different phases of their economically useful life, ranging from exploratory and development, to active, to closed, to in reclamation. **See Affidavit of Thomas M. Clarke, Exhibit B – Organizational Charts.**

7. On January 30, 2017, Defendant Ana M. Clarke was then involved as a member in the governance of the Guaranty Share Entities but was not involved in the operation of any of the coal mines or in the financial management of any of the business entities comprising the Guaranty Share Entities. Defendant Ana M. Clarke's experience with the coal assets commenced on or about October 2015. Prior to October 2015, Defendant Ana M. Clarke served as a director and officer of Kissito Healthcare, Inc., a United States based nursing home company, and Kissito Healthcare International, Inc., a relief organization operating in certain east African countries. Defendant Ana M. Clarke's duties with such entities included participation in the governance of both entities, overseeing quality assurance in the US based nursing homes and field work in overseeing the various health clinics and famine relief operations in certain east African countries. **See Affidavit of Thomas M. Clarke, Paragraph 9.**

8. On January 30, 2017, Defendant Thomas M. Clarke was then involved in overseeing the financial management the Guaranty Share Entities and the general management of the Guaranty Share Entities but was not involved in the operation of any of the coal mines. Defendant Thomas M. Clarke's experience with the coal assets commenced on or about October 2015. Prior to October 2015, Defendant Thomas M. Clarke was an owner and/or an executive in various types of health care organizations, including hospitals and nursing homes. Defendant Thomas M. Clarke founded Kissito Healthcare, Inc. and Kissito Healthcare International, Inc. Defendant Thomas M. Clarke served as a director and president of both organizations. In such capacity, Defendant Thomas M. Clarke was generally responsible for the management of both the domestic nursing home operations and the overseas health care operations and famine relief operations. Defendant Thomas M. Clarke is a board member of the Lee County (Virginia) Hospital Authority, a governmental unit which owns an acute-care hospital in Pennington Gap, Lee County, Virginia. As a member of the governing board, Defendant Thomas M. Clarke assisted the Authority in evaluating options, potential business partners and business plans for re-opening the hospital. Lee County, Virginia is a rural, mountainous community with only one hospital. Provision of hospital services are critical to the wellbeing of the community. **See Affidavit of Thomas M. Clarke, Paragraph 10.**

9. With respect to the operation of the coal assets, the management team of the Majority Owner and certain of the Minority Owners have extensive training and experience with mining operations and related operations, including coal processing, environmental compliance, coal sale and transportation. The Clarke Defendants relied upon the expertise and experience of such persons as the Clarke Defendants were learning the coal business. **See Affidavit of Thomas M. Clarke, Paragraph 11.**

## III. ARGUMENT – LIMITED LIABILITY OF DEFENDANT ANA CLARKE.

10. The Plaintiff bears the burden of proof as to the liability of the Limited Guarantor. The Plaintiff has the burden of proving the existence, terms, and validity of the guaranty. Absent evidence of the complete terms of the Guaranty, the Plaintiff has failed to establish its prima facie case. *76-82 St. Marks, LLC v. Gluck*, 48 N.Y.S.3d 210, 147 A.D.3d 1011 (2017). The Plaintiff failed to produce the certificate limiting the liability of the Limited Guarantor. Accordingly, the Plaintiff to prove to the extent of the liability of the Limited Guarantor.

11. Production of the certificate limiting the liability of the Limited Guarantor is a condition precedent to the liability of the Limited Guarantor. *Israel v. Chabra*, 537 F.3d 86 (2nd Cir. 2008). Section 2.2(b) of the Guarantee Agreement states that "the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement **shall be limited** to the value (as certified pursuant to the certificate delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee Shares" as of the date hereof." (emphasis added). The phrase "shall be limited" indicates an intent that production of the Valuation Certificate is a condition precedent to determining the liability of the Limited Guarantor under the Guaranty. The Plaintiff failed to comply with the condition precedent.

12. Section 2.2(b) of the Guarantee Agreement states as follows:

> Notwithstanding anything contained in this Agreement or the Contracts, the Guarantor Obligations of the Limited Guarantor pursuant to this Agreement shall be limited to the value (as certified pursuant to the certificate delivered to the Trustee) of the Limited Guarantor's interest in the "Guarantee Shares" as of the date hereof. The Limited Guarantor shall not have any obligation or liability to pay in excess of such value under any circumstance.

13. The Plaintiff failed to produce the certificate referenced in Section 2.2(b) (the "Valuation Certificate"). The failure to produce the Valuation Certificate, in and of itself, constitutes a failure on the part of the Plaintiff to bear its burden of proof.

14. From the text of Section 2.2(b), it is apparent that there is a limitation of the liability of the Limited Guarantor. However, without the Valuation Certificate, there is no basis for this Court to determine the amount of such limitation.

15. A footnote to Section 2.2(b) of the Guarantee Agreement states as follows:

> Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee, on behalf of the Holders of the Notes certifying that as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed.

16. The footnote includes both a statement of fact ("Each of the Guarantors party hereto has executed and delivered a certificate to the Trustee") and a summary of the contents of the Valuation Certificate ("as of the date hereof the value of the Guarantee Shares significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed"). The portion of the footnote which is a statement of fact tends to prove that the Plaintiff in fact has the Valuation Certificate but has neglected to produce it.

17. The portion of the footnote which purports to summarize of the contents of the Valuation Certificate is a glaring contradiction in terms, rendering the liability limitation as mere surplusage. Under the terms of Section 2.2(b) of the Guarantee Agreement, the limitation is equal to the valuation, as of a fixed point in time, of three securities issued by three different issuers, with the valuation date being January 30, 2017. The limitation provision is pointless if the amount to which liability is limited "significantly exceeds the aggregate principal amount of Notes issued under the Indenture on the date on which such Indenture was executed." Such a limitation would be effective only if Notes immediately went into default and remained in default for an extended time.

18. The portion of the footnote which purports to summarize of the contents of the Valuation Certificate is not admissible as an admission under Federal Rules of Evidence Rule 801(d)(2). Such portion of the footnote is an opinion, not a statement of fact. "An admission is a voluntary acknowledgement made by a party of the existence of the truth of certain *facts* which are inconsistent with his claims in an action." *Vockie v. General Motors Corp., Chevrolet Division*, 66 F.R.D. 57 (US Dist. Ct. ED Pa.1975) (emphasis added).

19. The portion of the footnote which purports to summarize of the contents of the Valuation Certificate is not admissible as evidence to prove the contents of the Valuation Certificate under Federal Rules of Evidence Rule 1002, which states as follows:

> An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.

20. The footnote purports to summarize of the contents of the Valuation Certificate is not a reproduction or quotation of the Valuation Certificate. As such, the footnote is not admissible to prove the content of the Valuation Certificate. Whenever it is the purpose of a party to establish the terms of a writing, Federal Rules of Evidence Rule 1002 requires the production of the documentary original unless such production is not feasible. *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199 (3rd 2009), *U.S. v. Holley*, 463 F.2d 634 (3rd Cir. 1972).

21. The Plaintiff has not explained why they failed to produce the Valuation Certificate. Even if the footnote may qualify as secondary evidence of the Valuation Certificate, the footnote would not be admissible until such time as the Plaintiff provides an explanation for its failure to produce the Valuation Certificate which satisfies the requirements of Federal Rule of Evidence Rule 1004.

22. The text of Section 2.2(b) of the Guarantee Agreement does not specify the identity of the person providing the Valuation Certificate. If the Valuation Certificate were available, the

7

Valuation Certificate would be admissible in this Court only if the Valuation Certificate were provided by a person competent to do so under Federal Rules of Evidence Rules 701 and 702.

23. The securities in question (the "Guaranty Shares") consist of a 38.5% interest in each of Seneca Coal Resources, LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited (together, the "Guaranty Share Entities"). The Guaranty Share Entities in turn own a total of ten subsidiary entities. All of the entities are engaged in the mining, processing, sale and transportation of coal, with related environmental compliance and regulatory obligations. The coal mines are located in at least six different states and one Canadian province. The mines produce different grades of coal, used in different industrial processes. The mines are all in different phases of their economically useful life, ranging from exploratory and development, to active, to closed, to in reclamation.

24. Neither of the Clarke Defendants would be qualified to render a valuation opinion as to the Guaranty Shares under the standards of Federal Rules of Evidence Rule 702. Certain cases hold that the owner of property is qualified by his or her ownership alone to testify as to its value. *LaCombe v. A-T-O, Inc.*, 679 F.2d 431 (5th Cir. 1982), *In re Re-Bo Mfg. Co.*, 90 F. Supp. 388 (US Dist. Ct. SDNY 1950). However, in those cases, the assets being valued were physical assets, such as a residential property or business inventory and raw materials, not securities. As of January 30, 2017, the Guaranty Shares were owned solely by Defendant Ana M. Clarke. The ownership rule, at most, would qualify Defendant Ana M. Clarke, but not Defendant Thomas M. Clarke.

25. Valuation of securities is a complex matter, which is outside the scope of lay testimony permitted under Federal Rule of Evidence Rule 701. *cf. Frymire-Brinati v. KPMG Peat Marwick*, 2 F.3d 183 (7th Cir. 1993).

## IV. CONCLUSION

For the reasons stated in this Memorandum, the Clarke Defendants respectfully request that this Court determine the liability of the Limited Guarantor under the Guaranty to be ZERO or, in the alternative, schedule an evidentiary hearing to determine the amount of the liability of the Limited Guarantor under the Guaranty.

Respectfully submitted this 17th day of May, 2021.

Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com

*Counsel for the Clarke Defendants*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on May 17, 2021 a copy of foregoing was filed through the Court's ECF system and will be sent electronically to the registered participants. Interested parties may access this filing through PACER.

Timothy E. Dixon, Esquire
9801 Michaels Way
Ellicott City, Maryland 21042
(410)608-9599 (voice)
(443)836-9161 (fax)
timothy.dixon@clarkeinvestments.com