UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                        :
UMB BANK, NATIONAL ASSOCIATION, *as trustee*            :
                                                        :
                              Plaintiff,                :
                                                        :
                                                        :                20-cv-2043 (LJL)
              -v-                                        :
                                                        :                OPINION AND ORDER
BLUESTONE COKE, LLC F/K/A ERP COMPLIANT                  :
COKE, LLC, THOMAS M. CLARKE, and ANA M.                 :
CLARKE,                                                  :
                                                        :
                              Defendants.                :
                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/2/2021____

LEWIS J. LIMAN, United States District Judge:

Plaintiff UMB Bank, National Association, as Trustee ("Plaintiff" or "UMB Bank")

moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment as to damages.

The motion is granted.

## BACKGROUND

On November 16, 2020, the Court granted UMB Bank summary judgment with respect to

liability. Dkt. No. 46. Familiarity with the Court's prior opinion and order is assumed. The

following facts are taken from the Court's prior summary judgment opinion, *id*., and from

Plaintiff's Rule 56.1 Statement and are undisputed for purposes of this motion.

In January 2017, non-party ERP Iron Ore, LLC ("ERP Iron Ore") issued a series of

Floating Rate Senior Secured Amortizing PIK toggle notes pursuant to an indenture, dated as of

January 11, 2017 (the "Indenture"). Wilmington Savings Fund Society, FSB ("WSFS") was

appointed Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the

Indenture. Dkt. No. 57 ¶ 1. Pursuant to the Indenture, ERP Iron Ore issued Notes in the

aggregate principal amount of $22,500,000.

Defendant Bluestone Coke, operating under the name ERP Compliant Coke at the time, guaranteed ERP Iron Ore's obligations under the Indenture.  Dkt No. 33-1 at 3, 81, 106.  In addition, concurrently with the Indenture, Thomas Clarke and Ana Clarke (collectively with Bluestone Coke, "Defendants") executed a Guarantee Agreement (the "Guarantee Agreement") pursuant to which each of the Guarantors (including Bluestone Coke) promised to "jointly and severally, irrevocably and unconditionally guarantee[] on a senior secured basis to each Holder and to the Trustee . . . that the principal, premium, if any, and interest on the Notes shall be promptly paid in full when due."  Dkt No. 33-1; 33-2 at 57.  Pursuant to Section 2.1 of the Guarantee Agreement and Sections 6.08, 6.13, 7.07, and 11.01(a) of the Indenture, each Defendant is responsible for payment of all principal, interest, and all other Obligations (as defined in the Indenture) and Issuer Obligations (as defined in the Guarantee Agreement), which includes Trustee and Noteholder fees and costs, as well as prepayment of those fees and costs. Dkt. No. 57 ¶ 5.  In particular, each Defendant agreed to guarantee, jointly and severally, "all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee, the Collateral Agent, or any Holder in enforcing any rights under [the Guarantee Agreement] or the Indenture."  Dkt. No. 33-2 at 56-57 (Thomas and Ana Clarke); *see also* Dkt. No. 33-1 at 81 (Bluestone Coke "agrees to pay any and all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee, any Agent or any Holder in enforcing any rights under this Section 11.01").  Ana Clarke was a "Limited Guarantor"; her guarantee was limited to the value of her interest in what the parties termed the "Guarantee Shares" as of the date of the Guarantee Agreement.  Dkt. No. 33-2 at 59.[1]   The obligations of Bluestone Coke and Thomas

---

[1] The "Guarantee Shares" include Ana Clarke's present ownership in each of Seneca Coal Resources, LLC, Seminole Coal Resources, LLC and Conuma Coal Resources Limited.  *Id.* at 55, 74.

Clarke were subject to no such limitation.

On May 25, 2018, certain creditors who held the Notes filed an involuntary petition under 11 U.S.C. § 303(a) of the United States Bankruptcy Code against ERP Iron Ore, commencing a bankruptcy case in the United States District Court for the District of Minnesota. *In re ERP Iron Ore, LLC*, No. 18-50378 (Bankr. D. Minn. May 25, 2018) ("Bankruptcy Action"). On July 17, 2018, an Event of Default occurred pursuant to Section 6.01(a)(9)(i)(B) of the Indenture when ERP Iron Ore consented to an order for relief in the Bankruptcy Action. Dkt. No. 57 ¶ 3. On that date, all principal and accrued and unpaid interest on the Notes were accelerated and became immediately due and payable under Section 6.02(a)(2) of the Indenture. Dkt. No. 57 ¶ 4.

On June 7, 2019, WSFS delivered a written demand to Defendants seeking collection of all Issuer Obligations that, at the time, totaled no less than $15,207,026.34, consisting of principal, interest, and costs and expenses up to and including May 31, 2019. Dkt. No. 57 ¶ 6.

As of November 6, 2019, $14,838,963 in principal and $1,814,702.07 in accrued but unpaid interest was due and owing, along with fees and costs incurred by the Trustee and its counsel and agents. Dkt. No. 57 ¶ 7.

On that same day, the Chapter 7 trustee in the Bankruptcy Action wired $7,075,942.33 to WSFS pursuant to the terms of an October 24, 2019 settlement agreement between WSFS, as indenture Trustee of the Notes, and the Chapter 7 Trustee. Dkt. No. 57 ¶ 8. Thus, at that time, WSFS held a balance of $7,172,611.82, which included the settlement funds and $96,669.49 from a final interest payment. Dkt. No. 57 ¶ 9.

On November 12, 2019, WSFS distributed $6,069,803.31 to the Depository Trust Company ("DTC") for the benefit of the Noteholders. WSFS applied, per the Indenture and Notes, $1,102,808.51 to WSFS's accrued but unpaid fees and costs, $4,255,101.24 to principal,

and $1,814,702.07 to accrued but unpaid interest.  Dkt. No. 57 ¶10.  The fees and costs paid by

WSFS from the settlement were for its fees, the fees and costs of its attorneys in the Bankruptcy

Action, and a $500,000 prepayment of Trustee or Noteholder fees and costs as a litigation fee

holdback.  Dkt. No. 57 ¶ 11.

On November 29, 2019, WSFS was removed and UMB Bank was appointed as successor

Trustee, Collateral Agent, Paying Agent, Registrar, and Calculation Agent under the Indenture.

It accepted that appointment effective January 13, 2020.  Dkt. No. 57 ¶12.  Upon its acceptance

of the transfer in January 2020, the Trustee showed an amount of $10,583,861.76 that was due

and owing, consisting of principal, plus unpaid fees and costs incurred by the Noteholders in the

amount of $372,650.66.  Dkt. No. 57 ¶¶ 13, 17.  Also in January 2020, WSFS transferred to

UMB Bank the prepayment litigation holdback balance which was then $447,269.25.  Since that

time UMB Bank has paid its fees and costs, including attorneys' fees and costs, from that

amount; the current balance is $95,239.29.  Dkt. No. 57 ¶ 14.  Interest has continued to accrue at

the default rate pursuant to Section 2.12(a) of the Indenture.  Based on the calculation from UMB

Bank's internal system, which it has used for many years and found to be reliable and correct in

its calculation, as of May 25, 2021, a total of $10,583,861.76 in principal and $1,749,665.34 in

interest is due.  Dkt. No. 57 ¶¶ 15-16.

As of May 25, 2021, the total amount due and owing under the Notes, Indenture, and

Guarantee Agreement is $12,706,177.10, consisting of $10,583,861.76 in principal,

$1,749,665.34 in interest, and $374,650.00 in Noteholder accrued but unpaid fees and costs.

Dkt. No. 57 ¶ 19.

## PROCEDURAL HISTORY

UMB Bank commenced this action in New York State Supreme Court on February 6,

2020 by filing a Motion for Summary Judgment in Lieu of Complaint under C.P.L.R. § 3213 (the

"Motion"). On March 6, 2020, Defendant Bluestone Coke removed the Motion to this Court. Dkt. No. 1. On March 31, 2020, this Court ordered UMB Bank to advise "(1) whether it elects to have the Court consider the Motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 in addition to it being treated as a complaint; and (2) if so, whether it elects to have the Gendler Affidavit treated as its Rule 56.1 statement." Dkt. No. 28. On April 2, 2020, UMB Bank notified this Court that it opted to have the Motion treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and that it would be filing a Rule 56.1 Statement of Material Facts. Dkt. No. 29. On April 23, 2020, UMB Bank filed its Rule 56.1 statement along with the affidavit of Gordon Gendler ("Gendler"). Dkt. No. 33. On June 8, 2020, Defendants Thomas Clarke and Ana Clarke filed a memorandum of law in opposition to the motion along with a supporting affidavit and declaration. Dkt. Nos. 36, 37, 38. On June 9, 2020, Bluestone Coke filed its own memorandum of law in opposition to summary judgment. Dkt. No. 40.

On November 16, 2020, the Court granted UMB summary judgment with respect to liability concluding that each of Bluestone Coke, Thomas Clarke and Ana Clarke were liable for the outstanding principal, interest, and reasonable costs and expenses under the Notes (except Ana Clarke was liable only up to the amount of her limited guarantee). Dkt. No. 46. Defendants requested discovery with respect to the amounts due and owing and, on December 22, 2020, the Court signed a Case Management Plan and Scheduling Order permitting Defendants, as well as Plaintiff, to take discovery limited to damages. Dkt. No. 48. On May 5, 2021, the Court entered an order reflecting that the Defendants' liability under the Indenture and Guarantee had been established and that the parties had consented that, if they were unable to resolve the case on their own, the Court would resolve the amount of damages on papers

submitted by the parties, without the need for testimony or trial.  Dkt. No. 51.  On May 25, 2021, UMB Bank filed its motion for summary judgment on damages.  Dkt. No. 55.  On June 1, 2021, Bluestone Coke filed its opposition to summary judgment on damages.  Dkt. No. 51.  On June 7, 2021, UMB Bank filed its reply brief.  Dkt. No. 62.  Also, on May 31, 2021, the Clarkes—who had filed a motion for summary judgment to determine the amount of damages, Dkt No. 52,— filed a motion to withdraw their prior motion.  Dkt. No. 60.  On July 29, 2021, UMB Bank filed a supplemental brief in further support of its request for attorney's fees.  Dkt. No. 64.

### LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).

In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  It may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits

supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir.

1996) (internal citation omitted).  Rather, to survive a summary judgment motion, the opposing

party must establish a genuine issue of fact by "citing to particular parts of materials in the

record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as

to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  If "the party opposing

summary judgment propounds a reasonable conflicting interpretation of a material disputed

fact," summary judgment shall be denied.  *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9-10 (2d

Cir. 1983).  Where each party moves for summary judgment, "each party's motion must be

examined on its own merits, and in each case all reasonable inferences must be drawn against the

party whose motion is under consideration."  *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121

(2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

The Southern District's Local Civil Rule 56.1 sets forth specific requirements about how

the facts relied upon by the moving party and disputed by the opposing party are to be presented.

Any party moving for summary judgment must "annex[ ] to the notice of motion a separate,

short and concise statement, in numbered paragraphs, of the material facts as to which the

moving party contends there is no genuine issue to be tried."  L.R. 56.1(a).  Local Rule 56.1(b),

in turn, requires the party opposing the motion to "include a correspondingly numbered

paragraph responding to each numbered paragraph in the statement of the moving party, and if

necessary, additional paragraphs containing a separate, short and concise statement of additional

material facts as to which it is contended that there exists a genuine issue to be tried."  L.R.

56.1(b).  All statements in a Local Rule 56.1 submission "must be followed by citation to

evidence which would be admissible."  L.R. 56.1(d).  "Each numbered paragraph in the

statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L.R. 56.1(c); *see Boatright v. U.S. Bancorp*, 2020 WL 7388661, at *11 (S.D.N.Y. Dec. 16, 2020).

A Local Rule 56.1 statement "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001)); *see Weider Health and Fitness v. AusTex Oil Limited*, 2018 WL 8579820, at *2 (S.D.N.Y. 2018) (same). "Where . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently." *Holtz*, 258 F.3d at 74. However, a party who declines to respond to a Rule 56.1 statement in the proper form gives up its entitlement to have the Court search the record to find facts calling the undisputed fact into question. *Id.* at 73 ("a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements.") (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule.") (quoting *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d 504, 507 (S.D.N.Y. 2014)). Although a court has broad discretion to overlook a failure to comply with Local Rule 56.1, it is not required to do so. Dkt. No. 46 at 7. "[T]he court can also disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement." *Weider Health*, 2018 WL 8579820, at *2.

## DISCUSSION

Thomas and Ana Clarke have withdrawn their objections to the grant of summary judgment and do not object either to the amount that is due and owing or the methodology used to compute that amount.  Dkt. No. 60.  Accordingly, judgment will be entered against them for $10,583,861 in principal, $374,650.00 in Noteholder accrued but unpaid fees and costs, and the $1,749,665.34 in interest as of May 25, 2021, plus any interest that has accrued under the Guarantee since that date until the date of this Order.  Bluestone Coke also does not object to the award of principal and interest and judgment will be entered against it for $10,583,861 in principal and the $1,749,665.34 in interest as of May 25, 2021, plus any interest that has accrued under the Guarantee since that date until the date of this Order.

Bluestone Coke's objection is limited to the award that is intended to compensate the Noteholders for the accrued but unpaid fees and costs.  It argues that the Court cannot determine the reasonableness of the $372,650.66 fees and costs because, while the relevant invoices have been attached to the declaration of Joseph Lombardo, they are heavily redacted and do not show the nature of the work done by each attorney in the matter.  Dkt. No. 61.[2]  It further argues that while there is a declaration from a representative of one of the law firms providing services (Chapman and Cutler LLP or "Chapman") declaring that its fees are reasonable, there is no comparable declaration sworn by a representative of the second firm providing services, Cozen O'Connor.  Dkt. No. 61.  Bluestone Coke relies on *Hack v. Stang*, 2015 WL 5139128, at *9-10 (S.D.N.Y. Sept. 1, 2015) and *Tabatznik v. Turner*, 2016 WL 1267792 (S.D.N.Y. Mar. 30, 2016)

---

[2] Bluestone Coke also notes that the only support for the $352,029.26 in attorneys' fees paid out of the prepayment litigation holdback balance since UMB became Trustee is the declaration of a representative of the Trustee, Mr. Gendler, but those fees are not being sought by UMB Bank and are not at issue on this motion.  In any event, Mr. Gendler's declaration supports the reasonableness of hose fees.

for the proposition that UMB Bank was required to submit contemporaneous detailed time records and an attorney affidavit that the requested rates were in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

The objection lacks merit and UMB Bank is entitled to summary judgment. Under both the Indenture and the Guarantee, the Trustee has a contractual right to be indemnified for attorneys' fees and expenses. Section 7.07(b) of the Indenture provides:

> (b) The Issuer and the Guarantors, jointly and severally, shall indemnify the Trustee, in its capacity as Trustee and as an Agent, for, and hold the Trustee and any predecessor harmless against, any and all loss, damage, claims, liability or expense (including attorneys' fees and expenses) incurred by it in connection with the acceptance or administration of this trust and the performance of its duties hereunder (including the costs and expenses of enforcing this Indenture against the Issuer or any Guarantor (including this Section 7.07)) or defending itself against any claim whether asserted by any Holder, the Issuer or any Guarantor, or liability in connection with the acceptance, exercise or performance of any of its powers or duties hereunder).

Dkt. No. 33-1 at 80. Section 8.4(a) of the Guarantee provides:

> Each Guarantor agrees to pay or reimburse each Holder and the Trustee for all its reasonable costs and expenses incurred in collecting against such Guarantor under the guarantee contained in Section 2 or otherwise enforcing or preserving any rights under this Agreement and the other Notes Documents to which such Guarantor is a party, including, without limitation, the reasonable fees and disbursements of counsel (including the allocated fees and expenses of in-house counsel) to each Holder and of counsel to the Trustee.

Dkt. No. 33-2 at 66. Section 8.4(c) of the Guarantee provides:

> Each Guarantor agrees to pay, and to save the Trustee and the Holders harmless from, any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance and administration of this Agreement to the extent the Issuer would be required to do so pursuant to Section 7.07 of the Indenture.

*Id.*

Case 1:20-cv-02043-LJL   Document 66   Filed 08/02/21   Page 11 of 17


A court in this District has held that there is an implied term under New York law that where a contract awards a party the right to attorneys' fees and costs, such fees and costs "must be reasonable." *Hack*, 2015 WL 5139128, at *8; *see also Coniglio v. Regan*, 588 N.Y.S.2d 888, 889 (2d Dep't 1992) ("Attorneys' fees unilaterally fixed by contract are no less subject to the test of reasonableness than are attorneys' fees which are awarded by the court.").[3]  Under New York law, a party seeking a fee "bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent." *Crowhurst v. Szczucki*, 2019 WL 6122645, at *4 (S.D.N.Y.  Nov. 19, 2019) (report and recommendation) (quoting *Flemming v. Barnwell Nursing Home & Health Facilities, Inc.*, 865 N.Y.S.2d 706, 708 (3d Dep't 2008), *aff'd*, 938 N.E.2d 937 (N.Y. 2010)).  "In addition, under New York Law, '[i]t is settled that the award of fees must be predicated upon a 'proper and sufficient affidavit of services.'" *Id.* (quoting *Bankers Fed. Sav. Bank FSB v. Off W. Broadway Devs.*, 638 N.Y.S.2d 72, 74 (1st Dep't 1996)) (internal quotations and citations omitted).[4]

---

[3] The parties do not dispute that such implied term applies here.  Accordingly, the Court has no occasion to decide whether such a limitation applies where a contract "neither qualifies the attorney's fees recoverable as 'reasonable' nor fixes fees at a certain percentage of its value." *Banca Della Svizzera Italiana v. Cohen*, 756 F. Supp. 805, 807 (S.D.N.Y. 1991).

[4] Bluestone Coke argues that UMB Bank is required to submit contemporaneous time records to support its request that it be reimbursed for the accrued fees and costs, relying on *Hack,* 2015 WL 5139128, at *10.  The argument is moot, because UMB Bank now submits contemporaneous records, but it also lacks merit.  While the *Hack* court found that the contemporaneous time records there were sufficient to support the reasonableness of the attorneys' fees requested, it did not hold that they were necessary in a diversity case where the right to fees turned upon contract.  In fact, while *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983), holds that a fee request under a federal statute must be "submitted with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done," the Circuit has since made clear that that rule does not apply in diversity cases where the right to a fee turns on state statutory or common law.  *See Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 147-48 (2d Cir. 2014) ("in cases in which the right to attorneys' fees is governed by state law, New York's more liberal rule allowing reconstructed records should apply"); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) (holding that the "contemporaneous records" requirement did not

---

Moreover, the question of the reasonableness of fees in a contract case is one of fact, no different than any other questions of fact addressed by a court on summary judgment.  In this District, the moving party must support it with a proper 56.1 statement and the opponent can dispute it with a proper counterstatement, supported by fact.  The proponent's mere assertion that fees are reasonable does not relieve the court of the obligation to review the underlying record to assure that the assertion is supported by the record.  But, assuming the assertion is supported, the opposing party cannot defeat summary judgment by incanting the words "genuine issue of fact." It must identify facts that create a genuine issue.

UMB Bank asserts in its Local Rule 56.1 statement that "[p]rior to the settlement payment and transfer to the successor Trustee Noteholders incurred $372,650.66 in reasonable and proper fees and costs to which they are entitled to payment under Section 2.1(c) of the

---

apply to fee requests under New York General Business Law § 349 because where "[s]tate law creates the substantive right to attorney's fees, [the] right . . . cannot be deprived by applying the contemporaneous time records rule adopted in this Circuit" and "New York courts have specifically rejected the 'hard and fast rule that reconstructed time records can never serve as a basis for compensation' in favor of wider trial court discretion in evaluating fee petitions") (quoting *In re Karp* 537 N.Y.S.2d 510, 515 (1st Dep't 1989)) (internal citations omitted); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250 (2d Cir. 1987) (affirming award of reduced fees on state law claim notwithstanding failure to present contemporaneous records); *see also Banca Della Svizzera Italiana*, 756 F. Supp. at 808-09 (where jurisdiction "is based on diversity, and the award sought is based on contract and not pursuant to federal statute, the requirements set forth in [*Carey*] are not relevant . . ."); *Major League Baseball Props., Inc. v. Corporacion de Television y Microonda Rafa, S.A.*, 2021 WL 56904, at *4 (S.D.N.Y.  Jan. 7, 2021) ("The Second Circuit has recognized . . . that the [contemporaneous records] rule does not apply where fees are sought under New York law"); *CIT Bank., N.A. v. Fox*, 2019 WL 6134154 (N.D.N.Y. Nov. 19, 2019) ("in cases in which the right to attorneys' fees is governed by state law, New York's more liberal rule allowing reconstructed records should apply.") (quoting *Lopalo*, 767 F.3d at 147-48); *Nationstar Mortg. LLC v. Dolan*, 2019 WL 1970522, at *3 (N.D.N.Y. May 3, 2019) ("Upon closer examination, the Court finds that . . . the rule set forth in *New York State Ass'n for Retarded Children, Inc. v. Carey* . . . is expressly based on, and therefore properly construed as limited to, circumstances in which the attorney's fees were awarded pursuant to federal statute rather than through a state law mechanism such as a contract."); *Crowhurst*, 2019 WL 6122645, at *4.

Guarantee and Sections 6.13 and 7.07(b) of the Indenture.  Dkt. No. 75 ¶ 17.  That assertion is supported by admissible evidence in the record.  UMB Bank has submitted the declaration of Joseph Lombardo.  Lombardo is an attorney with Chapman and Cutler, LLP, counsel for UMB Bank as Trustee.  Dkt. No. 59 ¶¶ 1, 3.  Prior to representing the Trustee, Chapman represented the Noteholders in this case and in the Bankruptcy Action and Lombardo had responsibility for the services rendered to UMB Bank as Trustee in this case and was one of the Chapman lawyers who provided services to the Noteholders.  *Id.* ¶ 3.  He declares that "[f]or services and disbursements incurred in connection with the representation of the noteholders by Chapman, the noteholders were or became obligated to pay attorneys' fees in the total amount of $372,650.66." *Id.* ¶ 8.  $342,472.96 of that sum reflected sums due for work performed by Chapman and an additional $30,177.70 in disbursements by Chapman for work performed by Cozen O'Connor as local counsel providing services at the direction of Chapman.  The Lombardo declaration supports the reasonableness of the fees.  Chapman attorneys were charged at a rate of between $300 and $1,030 per hour depending on the age and experience of the attorney.  Those rates were reasonable for the services rendered, in connection with "a highly contested and complex bankruptcy and commercial litigation among sophisticated commercial actors on a multi-million dollar loan obligation." *Id.* ¶¶ 4, 6.  Cozen O'Connor lawyers charged a rate of $235 per hour which was reasonable and customary for the type of work it performed.  *Id.* ¶ 7.

The request for reimbursement and the assertion that the fees and costs are reasonable is also supported by a declaration from Gordon Gendler, Senior Vice President of UMB Bank, which owes its duties to the Noteholders.  He declares that the trustee's business records show that there was due and owing $372,650.66 in unpaid fees and costs incurred by the Noteholders as of the date of UMB Bank's acceptance of the transfer in January 2020, Dkt. No. 58 ¶ 14.  He

also declares that he has revised unredacted copies of attorney invoices representing the $372,650.66 in fees and costs incurred by the Noteholders prior to the settlement payment and transfer to UMB Bank and that they are proper and correct.  *Id.* ¶ 19.  He notes that he is a licensed attorney who has worked as an attorney and default specialist for many years and taught commercial law courses, that he is familiar with the billing rates and practices of many different law firms, and that the invoices and attached rates and activities listed therein are "reasonable and similar to other peer firms working on a large bankruptcy and a lawsuit like the present matter."  *Id.* ¶ 19.  He notes that "'Noteholder' counsel, among other things, represented the Noteholders' interests in the Bankruptcy Action, filed necessary claims, analyzed potential claims an prepared fielding for, among other things, this lawsuit, negotiated with the Chapter 7 Trustee, negotiated the settlement, and negotiated and executed the trustee transfer."  *Id.* ¶ 19.

UMB Bank's initial submission did not attach detail from which the Court could analyze whether the hours worked by counsel were reasonable and proper.  Mr. Lombardo's declaration attached the invoice, dated November 18, 2019, delivered by Chapman to the Trustee and maintained by Chapman as a business record and which reflected the names of attorneys, their rates, and the time expended.  *Id.* ¶ 8, Ex. A.  It also attached an invoice from Cozen O'Connor reflecting a total amount due of $30,177.70, but that invoice did not reflect the nature of the work performed by Cozen O'Connor or the hours it took to perform the work.  *Id.*, Ex. A.  UMB Bank asserted that it had "redacted invoices to protect privilege," Dkt. No. 62 ¶ 12, but the redactions themselves swept far more broadly than was necessary to protect privilege.

Accordingly, on July 13, 2021, the Court issued an Order directing UMB Bank to make a submission "containing time records or other documentation sufficient for the Court to review the reasonableness of the fees and costs and redacting only that information which would reveal

14

attorney-work product or attorney-client communications." Dkt No. 63 at 1. The Court made clear that the records need not be contemporaneous.

On July 19, 2021, UMB Bank submitted a statement of Mr. Lombardo and the invoices and billing statements of Chapman and Cozen O'Connor with fewer redactions. Dkt. No. 64. Mr. Lombardo explains that the legal fees described in the invoices "reflect a total of 539.7 hours of attorney and paraprofessional time (net of write offs) spent and recorded in performing services for the Noteholders and the Trustee," spanning the time during the Bankruptcy Proceeding to the instant litigation. Dkt. No. 64 ¶¶ 5-6. He further explains that the invoices reflect time billed for proposals and sales of collateral out of the bankruptcy estate; various legal issues surrounding the real estate collateral pledged for repayment of the bonds; negotiation and subsequent termination of a standstill agreement; diligence regarding perfection and preservation of collateral; motion practice and hearings related to both the Bankruptcy Action as well as adversary actions attacking the Trustee's first priority lien on collateral and proceeds of collateral; the negotiation of a settlement of those same adversary proceeding claims; correspondence with the Trustee, Noteholders, and other stakeholders related to these issues; the replacement of the predecessor Trustee; and additional legal expenses for the research, drafting and prosecution of the summary judgment motion on liability. *Id.* ¶¶ 6-8. He notes, and the Court can independently confirm, that the Noteholders and current Trustee faced "highly litigious adversaries, including the instant defendants, requiring the expenditure of time and effort sufficient to safeguard the Trustee's and Noteholders' rights to be repaid on a multi-million dollar obligation." *Id.* ¶ 10. Bluestone Coke declined to submit a supplemental opposition, challenging the reasonableness of the fees and expenses. Dkt. No. 65.

The Court has reviewed the underlying invoices and time records which are only very

lightly redacted.  Those records fully support the reasonableness of the fees and costs expended and Defendants—by not taking discovery and not even requesting unredacted records—have given up any right to challenge whether the time recorded was actually spent on the task reflected.  Accordingly, UMB Bank has established its right to reimbursement of the $372,650.66 in unpaid fees and costs incurred by the Noteholders.  *See O&Y (U.S.) Fin. Co. v. Chase Fam. Ltd. P'Ship No. 3*, 1994 WL 512532, at *5 (S.D.N.Y. Sept. 20, 1994) (rejecting challenge to time records); *Banca Della Svizzera Italiana*, 756 F. Supp. at 808 ("BSI's attorneys sufficiently documented their hours by setting forth an account of all the hours billed and a summary description of how those hours were spent, thereby exceeding the standards of *Mohawk–Schoharie*, 419 N.Y.S.2d at 196.").

One final matter must be addressed.  Bluestone Coke argues that it should not have to pay the fees charged by Cozen O'Connor because there is no attorney affidavit from Cozen O'Connor attesting to the reasonableness of its fees.  It relies on a statement in passing from *Tabatznik v. Turner*, 2016 WL 1267792, at *16 (S.D.N.Y. Mar. 30, 2016), which—in determining that plaintiff had failed to provide evidence of a prevailing market rate sufficient to support a fee award—quoted from the Supreme Court's decision in *Blum v. Stenson*, 465 U.S. 886 (1984).  In a footnote in *Blum*, quoted in *Tabatznik*, the Court stated that "courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates" and added that the burden was on the fee applicant "to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  465 U.S. at 895 n.11 (emphasis added).  Bluestone Coke takes *Blum* and, in turn, *Tabatznik*, out of context.  *Blum* involved a fee request pursuant to federal statute, 42 U.S.C.

16

§ 1988, and the Court emphasized that the determination of a reasonable fee in that context "is made by the court in an entirely different setting" than a fee not determined by statute, where "the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses."  465 U.S. at 895 n.11.  The fee request in *Tabatznik* failed because counsel provided no independent evidence of the reasonableness of his fees, not because there was no attorney affidavit.  2016 WL 1267792, at *16.  The Second Circuit has held that the stringent standards applicable to fee requests under federal statute give way in diversity cases to the state court rule that "favor[s] . . . wider trial court discretion in evaluating fee petitions." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) (quoting *In re Karp*, 537 N.Y.S.2d at 515).  Here, leaving aside the open question whether the fee request would fail under a federal statute for absence of a declaration of Cozen O'Connor, the reasonableness of the Cozen O'Connor rates is established by the declarations of the Trustee and of Chapman who took on liability for those rates, both of whom are experienced on rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, and both of whom attest to the reasonableness of the Cozen O'Connor rates.

## CONCLUSION

For the reasons stated, UMB Bank's motion for summary judgment on damages is GRANTED.  UMB Bank shall submit a proposed judgment within seven days of the date of this Order.

SO ORDERED.

Dated: August 2, 2021
　　New York, New York
　　　　　　　　　　　　　　　　　　　　LEWIS J. LIMAN
　　　　　　　　　　　　　　　　　　　　United States District Judge

17